**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

AFTER II MOVIE, LLC, et al.,            )
                                        )
                    Plaintiffs,         )       Case No. 1:21-cv-01901-DDD-MEH
                                        )
        vs.                             )
                                        )
WIDEOPENWEST FINANCE, LLC.,             )
                                        )
                    Defendant.          )
                                        )

**DEFENDANT WIDEOPENWEST FINANCE, LLC'S
<u>MOTION TO DISMISS THE AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................. iii

I.     INTRODUCTION ................................................................................................... 1

II.    FACTUAL BACKGROUND .................................................................................. 2

       A.     Maverickeye UG ......................................................................................... 3

       B.     Senthil Segaran .......................................................................................... 4

       C.     WOW's DMCA Policy and Program ........................................................ 5

III.   LEGAL STANDARD .............................................................................................. 5

IV.    THE COMPLAINT FAILS TO STATE A CLAIM FOR SECONDARY COPYRIGHT
       INFRINGEMENT .................................................................................................. 6

       A.     Plaintiffs Do Not Plausibly Allege that Any WOW Subscriber Committed
              Direct Infringement .................................................................................... 6

              1.     Plaintiffs do not adequately identify any direct infringer ............................ 7

              2.     Plaintiffs do not plausibly allege infringement of their reproduction
                     rights ............................................................................................... 8

       B.     Plaintiffs Do Not Plausibly Allege that WOW Committed Contributory
              Infringement ............................................................................................... 8

              1.     Plaintiffs do not plausibly allege that WOW had knowledge of
                     specific instances of direct infringement ..................................................... 9

              2.     Plaintiffs do not plausibly allege any conduct by WOW that
                     supports contributory liability ............................................................... 9

       C.     Plaintiffs Do Not Plausibly Allege that WOW Committed Vicarious
              Infringement .............................................................................................. 11

V.     THE COMPLAINT FAILS TO STATE A CLAIM FOR SECONDARY LIABILITY
       UNDER § 1202 OF THE DMCA ........................................................................ 13

       A.     Section 1202 Does Not Provide for Secondary Liability ......................... 13

       B.     Plaintiffs Do Not Plausibly Allege that WOW Engaged in Any Conduct
              Supporting Secondary Liability. .............................................................. 14

C.     Plaintiffs Do Not Plausibly Allege the Existence of Any Relevant CMI ..............15

D.     Plaintiffs Do Not Plausibly Allege that Any CMI Was False or Altered ..............15

E.     Plaintiffs Do Not Plausibly Allege that Any WOW Subscriber Violated Section 1202......................................................................................................16

VI.     THE COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF ......... 16

VII.     CONCLUSION................................................................................................ 17

CERTIFICATE OF COMPLIANCE ........................................................................... 19

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ..............................................................6, 9

*After II Movie, LLC, et al. v. Grande Commc'ns Networks, LLC*,
    No. 1:21-cv-709 (W.D. Tex.)..............................................................4

*After II Movie, LLC, et al. v. RCN Telecom Services, LLC, et al.*,
    No. 3:21-cv-15310 (D.N.J.) ..............................................................4

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................6

*Boim v. Holy Land Found. For Relief & Dev.*,
    549 F.3d 685 (7th Cir. 2008) ..............................................................13

*Burnett v. Mortg. Elec. Registration Sys., Inc.*,
    706 F.3d 1231 (10th Cir. 2013) ..............................................................6

*Cannoid, LLC v. Entourage Nutritional Distributors, LLC*,
    No. 1:16-cv-2848, 2017 WL 11547021 (D. Colo. June 7, 2017) .............................6

*Cobbler Nevada, LLC v. Gonzales*,
    901 F.3d 1142 (9th Cir. 2018) ..............................................................7, 11, 16

*Cobbler Nevada, LLC v. Gonzales*,
    No. 3:15-cv-866, 2016 WL 3392368 (D. Or. June 8, 2016)..................................7

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ..............................................................8

*Dalkita, Inc. v. Devin Mills Consulting, LLC*,
    No. 1:18-cv-01398, 2019 WL 1242432 (D. Colo. Mar. 18, 2019)............................17

*Doe v. GTE Corp.*,
    347 F.3d 655 (7th Cir. 2003) ..............................................................13, 14

*Ellison v. Robertson*,
    357 F.3d 1072 (9th Cir. 2004) ..............................................................11, 12

*Fathers & Daughters Nev., LLC v. Zhang,*
No. 3:16-cv-1443, 2018 WL 3023089 (D. Or. June 18, 2018)...............................................2

*Forest Guardians v. Forsgren,*
478 F.3d 1149 (10th Cir. 2007) ..............................................................................6

*Harrington v. Pinterest, Inc.,*
No. 5:20-cv-5290, 2021 WL 4033031 (N.D. Cal. Sept. 3, 2021)..........................16

*La Resolana Architects, PA v. Reno, Inc.,*
555 F.3d 1171 (10th Cir. 2009) ..............................................................................9

*Luvdarts LLC v. AT&T Mobility, LLC,*
No. 2:10-cv-05442, 2011 WL 997199 (C.D. Cal. Mar. 17, 2011) ........................10

*Malibu Media LLC v. Duncan,*
No. 4:19-cv-2314, 2020 WL 567105 (S.D. Tex. Feb. 4, 2020)..............................7

*Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.,*
545 U.S. 913 (2005)........................................................................................10, 11

*Mills v. Netflix, Inc.,*
No. 2:19-cv-7618, 2020 WL 548558 (C.D. Cal. Feb. 3, 2020) .............................16

*Packingham v. North Carolina,*
137 S. Ct. 1730 (2017)............................................................................................1

*Perfect 10, Inc. v. CCBill LLC,*
488 F.3d 1102 (9th Cir. 2007) ..........................................................................11, 12

*Pierce v. Lifezette, Inc.,*
No. 1:20-cv-693, 2021 WL 2557241 (D.D.C. June 2, 2021) ...........................14, 16

*Pinter v. Dahl,*
486 U.S. 622 (1988)..............................................................................................13

*Plan Pros, Inc. v. Torczon,*
No. 8:08-cv-136, 2010 WL 11523879 (D. Neb. Nov. 17, 2010)............................10

*Powers v. Caroline's Treasures Inc.,*
382 F. Supp. 3d 8984 (D. Ariz. 2019) .................................................................15

*Religious Tech. Ctr. v. Netcom On-Line Cmmc'n Servs., Inc.,*
907 F. Supp. 1361 (N.D. Cal. 1995) .......................................................................9

*Romstad v. City of Colorado Springs,*
650 F. App'x 576 (10th Cir. 2016) ........................................................................16

*Shell v. Am. Family Rights Ass'n*,
    899 F. Supp. 2d 1035 (D. Colo. 2012) ........................................................8, 9, 11

*Smith v. BarnesandNoble.com*,
    LLC, 143 F. Supp. 3d 115 (S.D.N.Y. 2015) ..............................................11

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................................11

*Stevens v. Corelogic, Inc.*,
    899 F.3d 666 (9th Cir. 2018) .....................................................................16

*Tarantino v. Gawker Media, LLC*,
    No. 2:14-cv-603, 2014 WL 2434647 (C.D. Cal. Apr. 22, 2014) ...............10

*UMG Recordings, Inc. et al. v. Bright House Networks, LLC*,
    No. 8:19-cv-710, 2020 WL 3957675 (M.D. Fla. July 8, 2020) ............12, 13

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
    No. 1:12-cv-2240, 2013 WL 4052024 (D. Colo. Aug. 12, 2013) .........10, 11

*Warner Records Inc. v. Charter Commc'ns, Inc.*,
    454 F. Supp. 3d 1069 (D. Colo. 2020) ......................................................13

*Warner Records Inc. v. Charter Communications, Inc.*,
    No. 1:19-cv-00874-RBJ-MEH ....................................................................1

**Statutes**

17 U.S.C. § 106(1) ..............................................................................................7, 8

17 U.S.C. §502 ........................................................................................................16

17 U.S.C. §507 ........................................................................................................10

17 U.S.C. §512(a) & §512(i)(1)(A) .........................................................................5

17 U.S.C. 1202(c) ...................................................................................................13

17 U.S.C. §512(j) ....................................................................................................16

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .............................................................1, 5

WideOpenWest Finance LLC ("WOW") moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiffs' Amended Complaint (ECF No. 25, hereinafter "Am. Compl.").

## I.   INTRODUCTION

Plaintiffs After II Movie, LLC, et al., purport to own the copyrights to certain motion pictures, primarily direct-to-video action and horror movies like "Day of the Dead: Bloodline," "Extremely Wicked, Shockingly Vile and Evil," and "Lady Bloodfight." *See* Am. Compl. ¶¶ 7–34 & Ex. 1 thereto (ECF No. 25, 25-1). Defendant WOW is an internet service provider headquartered in Colorado.

In their Counts I and II, Plaintiffs seek to hold WOW secondarily liable for alleged acts of direct copyright infringement by subscribers of WOW's internet service. Specifically, Plaintiffs claim that WOW is liable because it did not terminate the internet access of subscribers that Plaintiffs' agent, Maverickeye UG, accused of sharing copyrighted content over the internet.[1] Thus, conceptually, this case is like another case before this Court, *Warner Records Inc. v. Charter Communications, Inc.*, No. 1:19-cv-00874-RBJ-MEH, in which the major U.S. record labels accuse Charter Communications of secondary copyright infringement. In fact, however, this case is **very** different.

Plaintiffs and Maverickeye are part of a well-known web of copyright trolls. *See generally* Ex. A (Feb. 23, 2018 Decl. of J. Christopher Lynch) (investigating the relationships between certain Plaintiffs, Maverickeye, Maverickeye's alter egos GuardaLey and Crystal Bay, and other copyright trolls). Until now, Plaintiffs' *modus operandi* has been to file John Doe lawsuits in the hope of securing quick settlements and to dismiss them at the slightest resistance.

---

[1] It is difficult to square Plaintiffs' liability theory with the Supreme Court's recognition that internet access is a right protected by the First Amendment. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737–38 (2017). In *Packingham*, the Court found that a law preventing convicted sex offenders from accessing social media websites violates the First Amendment. *See id.*

1

*See* Ex. B (Jan. 8, 2018 Order in *Venice PI, LLC v. O'Leary, et al.*) at 2 & n.1 (collecting cases). Plaintiffs are rarely successful in contested cases. *See, e.g.*, *Fathers & Daughters Nev., LLC v. Zhang*, No. 3:16-cv-1443, 2018 WL 3023089, at *4–*5 (D. Or. June 18, 2018) (awarding attorneys' fees to accused infringer where discovery revealed that the plaintiff, an affiliate of Plaintiffs here, did not own the asserted copyright). Additionally, courts and litigants have persuasively accused Maverickeye of serious wrongdoing, such as submitting fraudulent "expert" declarations from fictitious persons, violating state law by engaging in unlicensed surveillance, and even conspiring with copyright owners to offer copyrighted content over BitTorrent and then sue anyone who tries to download it. *See* Ex. B at 2–3 & n.2; Ex. C (June 13, 2014 Decl. of J. Christopher Lynch) at 29.

Under the circumstances, then, it is no surprise that Plaintiffs have not stated viable secondary copyright infringement claims against WOW. As detailed below, Plaintiffs do not allege ***facts*** showing that any WOW subscriber committed direct copyright infringement; that WOW had knowledge of the specific alleged infringements at issue; or that WOW encouraged, induced, or profited from any alleged direct infringement. Plaintiffs' Count III (seeking injunctive relief) and new Count IV (alleging that WOW is secondarily liable for alleged violations of an obscure provision of the Digital Millennium Copyright Act) are likewise fatally flawed.

The Court should dismiss Plaintiffs' Amended Complaint for failure to state a claim.

## II.    FACTUAL BACKGROUND

WOW is an internet service provider ("ISP") in the business of providing internet connectivity to subscribers. Am. Compl. ¶ 38 (ECF No. 25). WOW has about as much control over how its customers use the internet as the power company—it controls access and nothing more.

To this point, it is important to recognize what Plaintiffs do ***not*** allege.  Plaintiffs do not allege that WOW hosts websites, stores data for customers, or distributes online content, software, or tools.  Plaintiffs do not allege that WOW monitors or controls the content that its subscribers access or which websites they visit, or that WOW otherwise plays any role in shaping how, when, or why they use the internet.  Plaintiffs do not allege that WOW has any ability to determine what files are stored on the computers and devices people use on its network, or whether there are any file-sharing programs running on those devices.

Nevertheless, Plaintiffs allege that WOW is secondarily liable for copyright infringement and DMCA violations allegedly committed by its subscribers, because WOW did not terminate their internet access after receiving emails accusing them of copyright infringement.  *See, e.g.*, *id.*, ¶ 141.

## A.      Maverickeye UG

According to Plaintiffs, they engaged Maverickeye, a third party based in Germany, to monitor BitTorrent activity for infringement of their copyrighted works.  *Id.*, ¶89.  Plaintiffs allege that Maverickeye would then send "Notices of Infringement"—emails—to WOW regarding instances of copyright infringement by WOW's subscribers.  *Id.*, ¶ 122–123.

The example email attached to Plaintiffs' Complaint as Exhibit 3, like the other emails Plaintiffs intend to rely on, contains nothing more than a conclusory allegation of copyright infringement against an IP address.  *See* ECF No. 25-3 ("The unauthorized download and distribution of this file by your IP address constitutes copyright infringement.").  The email does not discuss, reference, or attach any supporting evidence.  Plaintiffs do not and cannot allege that WOW has any ability to verify allegations like these.

In terms of what Maverickeye did to identify the alleged infringements, Plaintiffs lard their Complaint with jargon to obscure the absence of facts.  For example, Plaintiffs allege that

Maverickeye "isolated the transactions and the IP addresses associated therewith for the files identified by the SHA-1 hash value of the Unique Hash Number."  Am. Compl. ¶ 91.  However, Plaintiffs allege no *facts* regarding how Maverickeye detected actual instances of direct copyright infringement, or regarding what forensic record of direct copyright infringement Maverickeye obtained or preserved.  *See, e.g.*, *id.*, ¶¶ 89–95.  In substance, Plaintiffs allege little more than "Maverickeye detected infringement."  *See id.*

### B.    Senthil Segaran

According to Plaintiffs, Senthil Segaran, a resident of the United Kingdom or India, operates (or operated) the torrent website "YTS."  *See* Am. Compl. ¶ 96; Ex. 2 to Am. Compl., at 18 (ECF No. 25-2).  In support of their Amended Complaint, Plaintiffs attach a "Certificate of Authenticity" ostensibly signed by Segaran over a year ago, in which he purports to attest to the authenticity of unspecified records "attached hereto."  Ex. 2 at 18.  Assuming the date is accurate and the signature is authentic, Segaran executed the certificate not long after entering into *pro se* consent judgments with certain Plaintiffs and their affiliates, to resolve their copyright infringement lawsuits against him.[2]

It is troubling that Plaintiffs have submitted the exact same "Certificate of Authenticity" from Mr. Segaran in other recent litigations, concerning entirely different sets of documents.  *See* ECF No. 1-2, *After II Movie, LLC, et al. v. Grande Commc'ns Networks, LLC*, No. 1:21-cv-709 (W.D. Tex.); ECF No. 4, *After II Movie, LLC, et al. v. RCN Telecom Services, LLC, et al.*, No. 3:21-cv-15310 (D.N.J.).

---

[2] ECF No. 25, No. 1:19-cv-413 (D. Haw.); ECF No. 77, No. 1:19-cv-169 (D. Haw.).

In any event, Plaintiffs contend that the records submitted with Segaran's certificate are "records of activity of registered user accounts" on the YTS website.  Am. Compl. ¶ 96.  WOW is unaware of any credible record of website activity that looks like this:

```
I Feel Pretty (2018), hash F63F5737AA36AC1D23B92B4E14957F3B79E507C1, 720p, 934.61 MB

 **********************One Entire Page of Redactions**********************

14. -----------------------------

email: troy.wilson@gmail.com
last used ip: 75.118.149.167
date downloaded: 2019-03-13 18:50:29
IP Address city: Des Plaines, state: Illinois, zip code: 60016
```

Ex. 2 at 1–2.  Despite the heavy redactions in Exhibit 2, Plaintiffs did not attempt to file an unredacted copy under seal and did not otherwise provide an unredacted copy to WOW.

### C.     WOW's DMCA Policy and Program

For the entire period relevant to this case, WOW has had in place a safe harbor policy pursuant to the Digital Millennium Copyright Act ("DMCA"), under which WOW terminates the accounts of accused copyright infringers in appropriate circumstances.  *See* 17 U.S.C. §512(a) & §512(i)(1)(A).  Plaintiffs' allegations to the contrary (*e.g.*, Am. Compl. ¶¶ 149, 173, 178) are demonstrably false.  As counsel for WOW explained to Plaintiffs in previous correspondence: "WOW has implemented a robust DMCA safe harbor policy under which WOW notifies customers of copyright infringement allegations, and if the allegations continue, suspends and then permanently terminates their internet service."  Ex. 5 to Am. Compl. (ECF No. 25-5).  Since 2018, WOW has permanently terminated hundreds of subscriber accounts pursuant to this policy.

## III.   LEGAL STANDARD

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's factual allegations must be enough "to raise a right to relief above the speculative

level." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & n.3 (2007)).  The court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).  A pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

In addition, a plaintiff must set forth a plausible claim for relief, a possible claim for relief is not enough.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*.  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Cannoid, LLC v. Entourage Nutritional Distributors, LLC*, No. 1:16-cv-2848, 2017 WL 11547021, at *3 (D. Colo. June 7, 2017).

## IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR SECONDARY COPYRIGHT INFRINGEMENT

Plaintiffs do not accuse WOW of directly infringing their copyrights.  Instead, they accuse WOW of two types of secondary copyright infringement—contributory (Count I) and vicarious (Count II).  Am. Compl. ¶¶ 183, 187, 218–219.  Plaintiffs do not plausibly allege direct infringement by WOW's subscribers, and their allegations regarding other elements of contributory and vicarious infringement are also deficient.

### A.   Plaintiffs Do Not Plausibly Allege that Any WOW Subscriber Committed Direct Infringement

Secondary infringement does not exist in the absence of direct infringement by a third party.  *See, e.g.*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001).

6

Therefore, to plead a claim for secondary infringement against WOW, Plaintiffs must first allege facts showing direct infringement for which WOW may be secondarily liable.  Here, Plaintiffs attempt to allege that WOW subscribers directly infringed "Plaintiffs' exclusive right to reproduce and distribute" the works at issue.  *See* Am. Compl. ¶ 187; *see also* 17 U.S.C. § 106(1) (reproduction right), (3) (distribution right).

### 1.   Plaintiffs do not adequately identify any direct infringer

Plaintiffs' claims are expressly premised on the notion that WOW is secondarily liable for acts of direct copyright infringement ***by WOW's subscribers***.  Am. Compl. ¶¶ 183, 187, 218-219.  But here, Plaintiffs only identify the alleged direct infringers by IP address; there are no additional allegations demonstrating that the activity at that IP address came from a WOW subscriber, and not some other user of WOW's network.  *See id.*, ¶¶ 91, 94, 102.

Plaintiffs have therefore failed to plausibly allege direct infringement by a WOW subscriber.  *See, e.g.*, *Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018) ("The direct infringement claim fails because Gonzales's status as a registered subscriber of an infringing IP address, standing alone, does not create a reasonable inference that he is also the infringer.  Because multiple devices and individuals may be able to connect via an IP address, simply identifying the IP subscriber solves only part of the puzzle.  A plaintiff must allege something more to create a reasonable inference that a subscriber is also an infringer."); *see also Cobbler Nevada, LLC v. Gonzales*, No. 3:15-cv-866, 2016 WL 3392368, at *1, *3 (D. Or. June 8, 2016) ("While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.") (emphasis in original); *Malibu Media LLC v. Duncan*, No. 4:19-cv-2314, 2020 WL 567105, at *5–*6 (S.D. Tex. Feb. 4, 2020) (collecting cases representing

"the growing weight of authority" that identifying an IP address is insufficient to allege direct infringement).

2. <u>Plaintiffs do not plausibly allege infringement of their reproduction rights</u>

To adequately allege infringement of Plaintiffs' reproduction rights under 17 U.S.C. §106(1), Plaintiffs must allege facts plausibly showing that a WOW subscriber *downloaded* copyrighted material from another BitTorrent user using WOW's network.  *See, e.g.*, *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1034 (9th Cir. 2013) (downloading copyrighted material violates the reproduction right, while uploading copyrighted material violates the distribution right).  Plaintiffs have failed to allege such facts.

Plaintiffs do not allege that Maverickeye detected, or is capable of detecting, a WOW user downloading an allegedly infringing movie file over WOW's network.  Taking Plaintiffs' allegations as true, Maverickeye can only detect distribution of an allegedly infringing file; it does not detect how the BitTorrent user originally obtained the file.  Am. Compl. ¶¶ 92–94.  In other words, Plaintiffs only allege that BitTorrent users allegedly uploaded Plaintiffs' copyrighted works to other BitTorrent users, which is not reproduction under §106(1).  *Id.*, ¶ 93 ("Defendants' subscribers' computers used the identified IP addresses … in order to transmit a full copy, or a portion thereof").  The Court should therefore dismiss Plaintiffs' claims to the extent Plaintiffs allege direct infringement of their reproduction rights.

**B.  Plaintiffs Do Not Plausibly Allege that WOW Committed Contributory Infringement**

Plaintiffs have also failed to plausibly allege the remaining elements of a contributory infringement claim: "knowledge by the defendant of the direct infringement" and "material contribution to the infringement."  *See Shell v. Am. Family Rights Ass'n*, 899 F. Supp. 2d 1035, 1057–58 (D. Colo. 2012) (citations omitted).

1.      Plaintiffs do not plausibly allege that WOW had knowledge of specific instances of direct infringement

Maverickeye's emails to WOW are the sole basis for WOW's alleged "knowledge . . . of the direct infringement." *Id.* at 1057–58; Am. Compl. ¶ 122.

Maverickeye's conclusory emails could not confer knowledge of copyright infringement. Taking Plaintiffs' allegations as true, Maverickeye provided no documentation demonstrating that a user of WOW's network possessed, shared, or even offered to share the allegedly infringing movie file identified in the email; no evidence or information demonstrating that the allegedly infringing file is copyrighted; and no evidence or information that would enable WOW to verify Maverickeye's allegations. *See* Ex. 3 to Am. Compl. (ECF No. 25-3).

Thus, as a matter of law, Plaintiffs' allegations regarding Maverickeye's emails are insufficient to show that WOW had knowledge of any specific instance of direct copyright infringement by a WOW subscriber. *See Napster*, 239 F.3d at 1021 ("[F]or the operator to have sufficient knowledge, the copyright holder must provide the necessary documentation to show there is likely infringement."); *Religious Tech. Ctr. v. Netcom On-Line Cmmc'n Servs., Inc.*, 907 F. Supp. 1361, 1374 (N.D. Cal. 1995) ("Where a [defendant] cannot reasonably verify a claim of infringement . . . the operator's lack of knowledge will be found reasonable and there will be no liability for contributory infringement . . . .").

2.      Plaintiffs do not plausibly allege any conduct by WOW that supports contributory liability

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1181 (10th Cir. 2009) (quoting *Metro-Goldwyn-Mayer Studios v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)).  To sufficiently allege that WOW induced or encouraged contributory infringement, Plaintiffs must allege facts showing that WOW offered its internet service "with the object of promoting its use

to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936–37.

Plaintiffs' sole allegation of an "affirmative step" is that WOW promoted infringement by advertising faster speeds. Am. Compl. ¶¶ 161–168.[3] "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to allege a claim for contributory infringement." *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 1:12-cv-2240, 2013 WL 4052024, at *7 (D. Colo. Aug. 12, 2013) (citing *Grokster, Ltd.*, 545 U.S. at 937); *see also Tarantino v. Gawker Media, LLC*, No. 2:14-cv-603, 2014 WL 2434647, at *3 (C.D. Cal. Apr. 22, 2014) (same). "Rather, liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *Viesti*, 2013 WL 4052024, at *7.

Accordingly, Plaintiffs' claim fails because Plaintiffs have not alleged "active steps taken to encourage direct infringement." *Grokster*, 545 U.S. at 936; *see also Luvdarts LLC v. AT&T Mobility, LLC*, No. 2:10-cv-05442, 2011 WL 997199, at *2 (C.D. Cal. Mar. 17, 2011) (plaintiffs failed to state a claim against wireless carriers because, among other reasons, they did not allege "that Defendants undertook 'any substantial promotional or advertising efforts to encourage infringing activity'").

Plaintiffs have also failed to allege that WOW acted with "culpable intent." *Grokster, Ltd.*, 545 U.S. at 934. Absent evidence of intent, a court is unable to find contributory copyright infringement merely based on a failure to take affirmative steps to prevent infringement. *Plan Pros, Inc. v. Torczon*, No. 8:08-cv-136, 2010 WL 11523879, at *4 (D. Neb. Nov. 17, 2010).

---

[3] Plaintiffs' new allegations in ¶ 168 do not purport to show any conduct by WOW to encourage or promote infringement.

Even if Plaintiffs had adequately alleged intent and inducement or encouragement—which they have not—Plaintiffs have still failed to state a claim because WOW's internet service is capable of "'substantial' or 'commercially significant' noninfringing uses." *Grokster,* 545 U.S. at 942 (Ginsburg, J., concurring).  The sale or distribution of a product used for direct copyright infringement "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes.  Indeed, it need merely be capable of substantial noninfringing uses." *Sony Corp. of Am. v. Universal City Studios, Inc*., 464 U.S. 417, 442 (1984); *see also Smith v. BarnesandNoble.com*, LLC, 143 F. Supp. 3d 115, 124 (S.D.N.Y. 2015) ("The [*Sony*] rule requires a court to determine whether a product or service is *capable* of substantial non-infringing uses, not whether it is currently used in a non-infringing manner."). Here, Plaintiffs cannot dispute that WOW's internet service is capable of substantial noninfringing uses.  *See, e.g.*, *Cobbler Nevada*, 901 F.3d at 1149 ("Providing internet access can hardly be said to be distributing a product or service that is not capable of substantial or commercially significant noninfringing uses.") (internal citations omitted).  Plaintiffs certainly do not allege otherwise.

For all of these reasons, Plaintiffs have failed to state a contributory infringement claim against WOW.

### C.     Plaintiffs Do Not Plausibly Allege that WOW Committed Vicarious Infringement

To state a claim for vicarious copyright infringement, Plaintiffs must plausibly allege that WOW derived a direct, financial benefit from the infringement purportedly conducted by its subscribers.  *See, e.g.*, *Shell*, 899 F. Supp. 2d at 1035; *Viesti*, 2013 WL 4052024, at *6.  Plaintiffs must allege <u>more</u> than the mere receipt of "flat periodic payments for service." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102,

11

1118 (9th Cir. 2007) ("Perfect 10 only alleges that 'CWIE hosts websites for a fee.' This allegation is insufficient to show that the infringing activity was 'a draw' as required by Ellison."). Instead, courts require a claimant to establish that the service provider "attracted or retained subscriptions because of the infringement or lost subscriptions because of [the] eventual obstruction of the infringement." *Ellison*, 357 F.3d at 1079. Thus, the relevant inquiry "is whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Id.*; *see also Perfect 10*, 488 F.3d at 1117–18.

Plaintiffs' allegations do not meet this standard. In fact, Plaintiffs' allegations show that the ability to conduct infringement was *not* a draw for subscribers, as demonstrated by Exhibit 8 to the Amended Complaint, which purports to be a declaration from a WOW subscriber stating "I disposed of a working laptop that was the source of the infringing activity out of fear of my service being terminated." ECF No. 25-8. The only financial benefit that Plaintiffs allege is the receipt of flat fees for internet service—which remains the same whether WOW's subscribers infringe Plaintiffs' copyrights or not. *See* Am. Compl. ¶¶ 162–165. Therefore, the Amended Complaint lacks plausible allegations detailing how WOW profited *directly* from the alleged infringement, which renders any financial benefit from the alleged infringement attenuated or incidental, and not "direct."

In *Bright House*, a recent case with similar allegations of vicarious copyright infringement, the court granted the defendant's motion to dismiss because the plaintiff failed to allege that "the availability of infringing content provides the main customer 'draw' to the service." *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, No. 8:19-cv-710, 2020 WL 3957675, at *4 (M.D. Fla. July 8, 2020) (emphasis added). In so concluding, the *Bright House* declined to follow this Court's previous "expansive interpretation" of the financial benefit

requirement.  *See id.* at *7 (declining to follow *Warner Records Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069 (D. Colo. 2020)).  WOW respectfully submits that the *Bright House* court's reasoning is sound and should be followed in this case.

Because Plaintiffs fail to allege facts showing that WOW directly benefited from the alleged infringement, the Court should dismiss Plaintiffs' vicarious infringement claim.

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR SECONDARY LIABILITY UNDER SECTION 1202 OF THE DMCA

The DMCA, 17 U.S.C. 1202(c), defines "copyright management information" ("CMI") as information "conveyed in connection with" a copyrighted work that identifies title, author, or owner of the work, among other things.  In broad strokes, section 1202 prohibits the intentional dissemination of false CMI and the intentional alteration or removal of CMI.

Plaintiffs' Count IV alleges that WOW is secondarily liable for its subscribers' alleged violations of section 1202.  Plaintiffs' claim is legally and factually flawed in several ways.

### A.   Section 1202 Does Not Provide for Secondary Liability

"Statutory silence on the subject of secondary liability means there is none."  *Boim v. Holy Land Found. For Relief & Dev.*, 549 F.3d 685, 689 (7th Cir. 2008); *see also Doe v. GTE Corp.*, 347 F.3d 655, 658-659 (7th Cir. 2003) ("Normally federal courts refrain from creating secondary liability that is not specified by statute.") (citing *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) ("The fact that Congress chose to impose some forms of secondary liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere.")).  When Congress intends to create secondary liability, "it has little trouble doing so."  *Pinter v. Dahl*, 486 U.S. 622, 650 (1988) (cleaned up).

Section 1202 is silent regarding secondary liability, and WOW is not aware of any case finding a defendant secondarily liable under the statute.  Indeed, allowing secondary liability cannot be reconciled with the requirements of section 1202.  Section 1202 expressly requires double scienter as a predicate for liability (for example, knowingly providing false CMI with the intent to cause infringement), whereas the typical elements of contributory and vicarious liability do not.  *See Pierce v. Lifezette, Inc.*, No. 1:20-cv-693, 2021 WL 2557241, at *5 (D.D.C. June 2, 2021) (discussing the double-scienter requirement).  Thus, the statute cannot be expanded to permit secondary liability.  *See, e.g.*, *GTE Corp.*, 347 F.3d at 659 ("A statute that is this precise about who . . . can be liable, should not be read to create a penumbra of additional but unspecified liability.").  Furthermore, the legislative history of the DMCA makes clear that Congress did not intend to allow for secondary liability.  *See, e.g.*, H.R. Rep. No. 105-551, at 22 (1998) ("Section 1202 imposes liability for specified acts.  It does not address the question of liability for persons who manufacture *or provide services*.") (emphasis added).  Because there is no secondary liability under section 1202, Plaintiffs have failed to state claim.

**B.    Plaintiffs Do Not Plausibly Allege that WOW Engaged in Any Conduct Supporting Secondary Liability.**

Plaintiffs' allegations merely ape the general requirements for contributory and vicarious liability for copyright infringement.  *See* Am. Compl. ¶¶ 218–219.  For example, Plaintiffs allege no *facts* showing that WOW knew any subscriber had violated section 1202; that WOW took any steps to encourage or promote the violation of section 1202; that WOW could supervise or control its subscribers' compliance with section 1202; or that WOW directly profited from its subscribers violating section 1202.  Plaintiffs have therefore failed to state a claim, even if the statute were to permit secondary liability.

### C.    Plaintiffs Do Not Plausibly Allege the Existence of Any Relevant CMI

Plaintiffs' Count IV is based on the alleged distribution or alteration of information in the file names of digital movie files. *See, e.g.*, Am. Compl. ¶ 106–111.  CMI, however, is information that is "conveyed in connection with" legitimate copies of the copyrighted work. §1202(c).  Thus, "[i]n order for a plaintiff to prove a defendant removed her CMI, she must be able to show it was originally 'conveyed in connection with' the protected work." *Powers v. Caroline's Treasures Inc.*, 382 F. Supp. 3d 898, 903–04 (D. Ariz. 2019).

Here, Plaintiffs do not allege that the alleged CMI was originally conveyed by Plaintiffs or anyone acting on their behalf.  In other words, Plaintiffs do not allege that the digital movie files in question were originally legitimate copies (*e.g.*, digital files purchased from a licensed content provider) with CMI provided by Plaintiffs.  In fact, it is equally plausible from Plaintiffs' allegations—if not more so—that the file names were created by whoever initially chose to distribute the file over the internet.  Because Plaintiffs' allegations fail to establish that the information in question is protected CMI, they have failed to state a claim under section 1202.

### D.    Plaintiffs Do Not Plausibly Allege that Any CMI Was False or Altered

Plaintiffs contend that WOW subscribers violated section 1202 by distributing movie files with "added wording" such as the initials RARBG or YTS.  Am. Compl. ¶¶ 107–110.  This alleged conduct does not violate section 1202 because such information is not false CMI and does not constitute an alteration or removal of CMI.  Exhibit 7 to the Amended Complaint (ECF No. 25-7) shows that the title of each movie at issue—the alleged CMI—was still present in each file name.  In other words, Plaintiffs do not allege any falsification, alteration, or removal of alleged CMI—instead, they merely allege the *addition* of other information to the file name. *See, e.g*. Am. Compl. ¶¶ 106–110.  This is not actionable under the plain language of section 1202, and WOW is not aware of any authority suggesting otherwise.

### E.   Plaintiffs Do Not Plausibly Allege that Any WOW Subscriber Violated Section 1202

For the same reasons discussed above in section IV.A.1, Plaintiffs have failed to allege that any WOW subscriber violated section 1202.  Plaintiffs identify certain alleged wrongdoers by IP address, but Plaintiffs offer no allegations indicating that the person who allegedly used that IP address to violate section 1202 is actually a WOW subscriber (as opposed to someone else using the subscriber's internet connection).  Without such allegations, Plaintiffs cannot state a claim.  *See, e.g.*, *Cobbler Nevada*, 901 F.3d at 1145.

Plaintiffs also fail to allege the double scienter required to state a claim under section 1202(a) or (b).  *See Pierce*, 2021 WL 2557241, at *5.  It is insufficient for Plaintiffs to vaguely allege that unspecified WOW subscribers generally intended to induce or facilitate infringement. *See, e.g.*, Am. Compl. ¶¶ 117–119.  Instead, Plaintiffs were obligated to come forward with "specific allegations as to how identifiable infringements will be affected."  *Stevens v. Corelogic, Inc.*, 899 F.3d 666, 673–74 (9th Cir. 2018); *see also Mills v. Netflix, Inc.*, No. 2:19-cv-7618, 2020 WL 548558, at *2 (C.D. Cal. Feb. 3, 2020) (same); *Harrington v. Pinterest, Inc.*, No. 5:20-cv-5290, 2021 WL 4033031, at *6 (N.D. Cal. Sept. 3, 2021) (dismissing section 1202 count because complaint alleged "nothing more than the possibility of encouraging infringement"). Given the absence of any such allegations, Plaintiffs have failed to state a claim.

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR INJUNCTIVE RELIEF

Plaintiffs' Count III is a claim for injunctive relief under 17 U.S.C. §502 and the DMCA, 17 U.S.C. §512(j).  However, the Tenth Circuit Court of Appeals has stated that "[a]n injunction is not an independent cause of action; it is a remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed."  *Romstad v. City of Colorado Springs*, 650 F. App'x 576, 585 (10th Cir. 2016).  The Court should therefore dismiss

16

Count III.[4]  *See, e.g.*, *Dalkita, Inc. v. Devin Mills Consulting, LLC*, No. 1:18-cv-01398, 2019 WL 1242432, at *3 (D. Colo. Mar. 18, 2019).

## VII.   CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) for failure to state a claim.

---

[4] WOW also notes that Plaintiffs have also failed to plead facts sufficient to support injunctive relief; instead, their allegations merely ape the general requirements, such as irreparable harm. *See* Am. Compl. ¶¶ 198–203.  Moreover, there is no authority that authorizes the unprecedented injunctive relief Plaintiffs are seeking, such as requiring WOW to (1) block access to certain websites for all users of its network, (2) terminate every subscriber for whom WOW receives more than three copyright infringement complaints in 72 hours, and (3) disclose to Plaintiffs the identities of subscribers accused of copyright infringement.  *See id.*, ¶ 204 & Prayer for Relief (B-D).

Dated:  October 29, 2021                   Respectfully submitted,


                                           By:  /s/ Zachary C. Howenstine
                                           Richard L. Brophy
                                           Zachary C. Howenstine
                                           Margaret R. Szewczyk
                                           Armstrong Teasdale LLP
                                           7700 Forsyth Blvd., Suite 1800
                                           St. Louis, Missouri 63105
                                           (314) 621–5070 (telephone)
                                           rbrophy@atllp.com
                                           zhowenstine@atllp.com
                                           mszewczyk@atllp.com

                                           *Attorneys for WideOpenWest Finance, LLC*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1), considering also the order granting an increase in word count for this motion (ECF No. 31).

*/s/ Zachary C. Howenstine*