**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. <u>1:21-cv-1901-DDD-MEH</u>

AFTER II MOVIE, LLC, et al.,

      Plaintiffs,

v.

WIDEOPENWEST FINANCE, LLC,

      Defendant.

---

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR FAILURE
TO STATE A CLAIM**

---

20-0231A

# TABLE OF CONTENTS

Page

Table of Authorities………………………………………………………………………….. 4

I.    Introduction……………………………………………………………………… 7

II.   Factual Background…………………………………………………………… 9

III.  Legal Standard………………………………………………………………… 9

IV.   Argument – The FAC Adequately Pleads a Claim for Secondary Copyright
      Infringement……………………………………………………………………… 10

      A.    Disputed – Defendant's Subscribers Directly Infringe Plaintiffs' Exclusive
            Rights……………………………………………………………………….. 10

            1.    Disputed – Plaintiffs have Adequately Identified the Direct
                  Infringers………………………………………………………… 11

            2.    Disputed – Plaintiffs have Sufficiently Alleged that Defendant's
                  Subscribers Directly Infringe Their Exclusive Right of
                  Reproduction…………………………………………………….. 13

      B.    Disputed – Plaintiffs Plausibly Alleged that Defendant Contributed to its
            Subscribers' Direct Infringements………………………………………... 14

            1.    Disputed – Plaintiffs have Adequately Alleged that Defendant had
                  the Requisite Knowledge of Direct Infringement…………………. 15

            2.    Disputed – Plaintiffs have Adequately Alleged Conduct by Defendant
                  that Supports Contributory Liability…………………………… 16

20-0231A

C.     Disputed – Plaintiffs Sufficiently Allege Defendant is Vicariously Liable for its Subscribers' Direct Infringements………………………………………... 18

V.     Argument – The FAC Adequately Pleads a Claim for Secondary Liability for DMCA Violations……………………………………………………………………… 20

A.     Disputed – Section 1202 Provides for Secondary Liability……………….. 20

B.     Disputed – Plaintiffs Plausibly Alleged that Defendant Engaged in Conduct Supporting Secondary Liability for its Subscribers' DMCA Violations…… 21

C.     Disputed – Plaintiffs Plausibly Alleged the Existence of CMI……………. 22

D.     Disputed – Plaintiffs have Plausibly Alleged that CMI was False or Altered………………………………………………………………………… 22

E.     Disputed – Plaintiffs Plausibly Alleged that Defendant's Subscribers Violated Section 1202…………………………………………………….... 23

VI.    Argument – The FAC Adequately Pleads a Claim for Injunctive Relief…………. 24

VII.   Conclusion………………………………………………………………………. 25

20-0231A

## TABLE OF AUTHORITIES

### *Statutes and Rules*

17 U.S.C. § 502…………………………………………………………………………….. 24

17 U.S.C. § 512(j)……………………………………………………………………… 24

17 U.S.C. §1202……………………………………………………………………... 20-23

Fed. R. Civ. Pro. 12(b)(6)…………………………………………………………………... 9

### *Cases*

*AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990 (D.C. Cir. 2014)……………………… 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)………… 9, 11

*Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 U.S. Dist. LEXIS 188894, 2014 WL 11955391, (N.D. Ga. Mar. 7, 2014)……………………. 21

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)……………………………………………………………………………. 9-10, 13

*BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.*, 199 F. Supp. 3d 958 (E.D. Va. 2016)……………………………………………………………………………….. 15

*BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293,  (4th Cir. 2018)…………………………………………………………………………… 18

*Cobbler Nevada LLC v. Gonzales*, 901 F.3d 1142 (9th Cir. 2018)………………….. 11-13

*Dalkita, Inc. v. Devin Mills Consulting, LLC*, Civil Action No. 18-cv-01398-PAB-SKC, 2019 U.S. Dist. LEXIS 43194, (D. Colo. Mar. 18, 2019)…………………………………… 24-25

*Diversey v. Schmidly*, 738 F.3d 1196 (10th Cir. 2013)…………………………………….. 14

*Ellison v. Robertson*, 357 F.3d 1072 (9th Cir. 2004)……………… …………………. 18-19

*Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261 (5th Cir. 2020)…………………………………………………………………………… 22

20-0231A

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)…………………………………………………………………………………….. 10

*Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 832 (10th Cir. 1993)……………….. 10

*Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922 (6th Cir. 2003)…………………………………………………………………………………………….. 20-21

*Jalbert v. Grautski*, 554 F. Supp. 2d 57 (D. Mass. 2008)…………………………………… 16

*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005)…………………………….. 16, 18

*Nutritional Biomimetics, LLC v. Empirical Labs Incorp.*, No. 16-cv-01162-KMT, 2018 WL 2567951 (D. Colo. Apr. 24, 2018)…………………………………………………………………… 14

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)…………………… 17

*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007)……………… 9

*Savant Homes, Inc. v. Collins*, 809 F.3d 1133 (10th Cir. 2016)………………………….. 10

*Sony Music Entm't v. Cox Communs., Inc.*, 426 F. Supp. 3d 217 (E.D. Va. 2019) …………………………………………………………………………………………….. 12-13

*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984)……………. 17-18

*Stockart.com, LLC v. Engle*, Civil Action No. 10-cv-00588-MSK-MEH, 2011 U.S. Dist. LEXIS 20470 (D. Colo. Feb. 18, 2011)………………………………………………… 20-21

*Tomelleri v. Zazzle, Inc.*, 2015 U.S. Dist. LEXIS 165007, 2015 WL 8375083 (D.   Kan. Dec. 9, 2015)……………………………………………………………………………………. 14

*UMG Recordings, Inc. et al. v. Bright House Networks, LLC.*, No. 8:19-cv-710, 2020 WL 3957675 (M.D. Fla. July 8, 2020)……………………………………………………….. 20

*UMG Recordings, Inc. v. Grande Communs. Networks, LLC*, 384 F. Supp. 3d 743 (W.D. Tex. 2019)…………………………………………………………………………… 12, 16, 18

*UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, Civil Action No. 19-17272 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 158269 (D.N.J. Aug. 31, 2020)………………..12, 15-16, 18

5

20-0231A

*Warner Bros. Records, Inc. v. Charter Communs., Inc.,* 454 F. Supp. 3d 1069 (D. Colo. 2019)………………………………………………………………………………… 8, 15-16, 19

### ***Other Authorities***

David Price, *NetNames Piracy Analysis: Sizing the Piracy Universe*, September 2013, pg. 18…………………………………………………………………………………………….. 17

Love Your Tailor, https://www.loveyourtailor.ca/tailor-blog/tailoring-a-pair-of-pants-what-your-tailor-can-do-for-you-a-mens-guide-for-a-perfect-fit/……………………………. 22-23

RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965)……………………………. 17

WideOpenWest, Availability Map, https://www.highspeedinternet.com/providers/wow………………………………….. 11-12

20-0231A

Plaintiffs oppose Defendant's Motion to Dismiss [Doc. #35] ("Mot.").[1]

## I.    INTRODUCTION

Defendant does not deny receiving more than 33,750 Notices from Plaintiffs' agent informing of its subscribers' piracy of Plaintiffs' Works.  Nonetheless, Defendant asserts that "WOW has implemented a robust…policy…notifies customers of …allegations, and if …allegations continue, suspends and then permanently terminates their…service." Mot. at pg. 5.  Defendant's assertion is easily proven wrong by the fact that Plaintiffs' agent sent over 100 Notices concerning just its subscriber at IP address 75.118.244.40 yet Defendant only "suspended" this subscriber's service in March of 2021 *after* it received a letter from Plaintiffs' counsel.  *See* FAC [Doc. #25] at ¶138; Exhibit "5" [Doc. #25-5] (WOW states that "service [for subscriber at IP address 75.118.244.40] was suspended in March 2021.")  While Defendant was implementing its "robust" policy, this subscriber was sharing *London Has Fallen* and *Dallas Buyer's Club* **thousands** of times. *See* FAC at ¶102.  Defendant's assertion is also proven wrong by its own subscribers who admit to piracy and declare that their service was never suspended or terminated. *See* Declarations of KS and SWC [Docs. ##25-8, 25-9].  Defendant's so-called "robust" policy is a bust.

Aware of its busted policy, Defendant begins its motion by denigrating Plaintiffs' Works as "[D]irect-to-video action…movies…". Mot. at pg. 1.  However, many of Plaintiffs' Works had successful theater runs such as *Dallas Buyers Club* which received multiple

---

[1] Defendant failed to meet and confer with Plaintiffs prior to filing the present and prior motions to dismiss as required by the Practice Standards.

20-0231A

Oscar nominations and a best actor Oscar for lead actor Matthew McConaughey.  Next Defendant calls Plaintiffs the pejorative mud-slinging term "copyright trolls"[2] and asserts that Plaintiffs' copyrights should be treated differently from those of the music copyright holders in *Warner Bros. Records, Inc. v. Charter Communs., Inc.,* 454 F. Supp. 3d 1069 (D. Colo. 2019) ["Warner Bros."].  Mot. at pg. 2.  To support this proposition, Defendant does not argue that Plaintiffs made or purchased the rights to pornographic movies to sue people – which Plaintiffs of course do not do.  *See AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) (describing the "modus operandi" of a copyright troll). Rather, Defendant merely cites a show cause order [Doc. #35-2] in a Western District of Washington case against Venice PI, LLC without revealing that the same court released the show cause order after the Plaintiff filed a response.  *See* Exhibits "A"-"C".  To top it off, Defendant cites a declaration [Doc. #35-1] of a different attorney from a different copyright case for a *completely different copyright holder* to somehow prove that Plaintiffs are "copyright trolls".

Among Plaintiffs' Works Defendant denigrates as a "web of copyright trolls" is *The Last Full Measure* about a medal of honor recipient.  Plaintiffs reject Defendant's appeal for a copyright apartheid-like scheme where certain Works (musical works) are deemed worthy of legal protection while others (movies) are denigrated as trolls as an insult to the script writers, the producers, the directors, the actors, the camerapersons, the location scouts, the stunt persons, the make-up artists, the visual effects artists, the musicians,

---

[2] Before calling Plaintiffs trolls, in FN1 Defendant compares Plaintiffs to North Carolina. Plaintiffs cannot violate the First Amendment because they are not a governmental entity.

20-0231A

and everyone else who works hard to make movies.

Plaintiffs are confident this Court can look past the mud thrown by Defendant and reject its many misguided arguments just like other Courts in the context of an Internet service provider.

## II.    FACTUAL BACKGROUND

Defendant incorrectly states that "Plaintiffs do not allege that WOW monitors or controls the content that its subscribers access…has any ability to determine…whether there are any file-sharing programs running…" Mot. at pg. 3.  However, Plaintiffs allege that Defendant actively monitors its subscribers Internet traffic and can throttle its subscriber's Internet speed if the subscriber is using P2P traffic.  *See* FAC at ¶¶174-176. This allegation is verified by Defendant's statement on its network management practices. *See* Id. at ¶176.

## III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption. *Id.* at 678, 681. Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line

9

from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

## IV.    ARGUMENT – THE FAC ADEQUATELY PLEADS A CLAIM FOR SECONDARY COPYRIGHT INFRINGEMENT

To establish copyright infringement, a plaintiff must show "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1138 (10th Cir. 2016) (internal quotation marks omitted) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 S. Ct. 1282, 113 L. Ed. 2d 358 (1991)).   "Copied" in this context is a short-hand reference for any use of protected materials that infringes on the copyright holder's exclusive rights in those materials as set forth in the Copyright Act.   *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 832, n.6. (10th Cir. 1993).   Defendant's subscribers infringe at least Plaintiffs' exclusive rights of reproductions and distribution.  FAC at ¶53.

### A.    DISPUTED – *Defendant's subscribers directly infringe Plaintiffs' exclusive rights.*

Defendant asserts that Plaintiffs "…failed to plausibly allege direct infringement by a WOW subscriber".  Mot. at pg. 19.  However, Plaintiffs have alleged that: (1) their investigator Maverickeye UG ("MEU") identified the IP addresses that were using BitTorrent  to distribute the Works and logged information including the IP addresses, Unique Hash Numbers, and hit dates that show that Defendant's subscribers distributed copies of the Works (FAC at ¶¶89-95); (2) the operator of the piracy website YTS provided records of Defendant's subscribers' registered email addresses, IP addresses, and times

10

from where the subscribers downloaded torrent files for *I Feel Pretty*, *Hellboy*, *Angel Has Fallen*, *2 Guns*, *Lone Survivor* and *The Last Full Measure* (FAC at ¶¶96-98); and (3) two of Defendant's subscribers provided declarations *admitting* to being YTS users and downloading and sharing copies of *Angel Has Fallen*, *The Last Full Measure* and *Outpost* (FAC at ¶¶71, 74).  The Defendant attempts to cast doubt on Plaintiffs' evidence from MEU and the YTS website operator (despite the same infringements being confirmed by as many as three different sources in some cases).  *See* Mot. at pgs. 3-5. The Court should accept Plaintiffs' well-pled allegations as true at this stage.  *See Iqbal* at 678.

    **1.**    **DISPUTED – Plaintiffs have adequately identified the direct infringers.**

Defendant incorrectly argues, without any case support, that Plaintiffs must make "additional allegations demonstrating that the activity at that IP address came from a WOW subscriber, and not some other user of WOW's network. Mot. at pg. 7. Defendant's assertion contradicts section Z of its terms of services which state, "Customer is fully responsible for Customer's account and is responsible for any misuse of the Service, even if the misuse was committed by a friend, family member, or guest with access to Customer's Service account" and Defendant's litigation position of resisting disclosure of subscriber identifications.  *See* Decl. of Culpepper at ¶¶2, 19.

This Court should reject Defendant's argument that the pleading standard of *Cobbler Nevada LLC v. Gonzales,* 901 F.3d 1142 (9th Cir. 2018) the Ninth Circuit applied to a nonprofit adult day care center should be applied to Defendant – a publicly traded Internet service provider with a market capitalization of over 1.5 billion dollars and a

20-0231A

customer footprint in 13 states and over 300 cities. *See* WOW! Availability Map, https://www.highspeedinternet.com/providers/wow [last accessed on 11/9/2021]. Moreover, because Defendant represents in its published policy that the "Customers is fully responsible" regardless of whether there is evidence the infringement was committed by someone else, Defendant is *estopped* by its own contrary policy upon being notified of its customer's piracy. *Supra.* Finally, the Court also should reject Defendant's proposition because *Gonzales* is contrary to the well-established pleading standards set forth in *Iqbal* and *Twombly*. Indeed, <u>every</u> District Court outside of the Ninth Circuit that has considered this proposition (including when argued by Defendant's counsel on behalf of Grande in the Western District of Texas and RCN in the District of New Jersey) has rejected it. *See UMG Recordings, Inc. v. Grande Communs. Networks, LLC,* 384 F. Supp. 3d 743, 767n6 (W.D. Tex. 2019) ["Grande"] ("Grande's reliance on *Cobbler*…is misplaced. *Cobbler* involved an individual subscriber who failed to prevent users of his internet subscription from infringing the plaintiff's copyright…*Cobbler* focused on the fact that it was an individual internet subscriber at issue, who paid for internet services to an adult care home he operated, in contrast to the actual ISP defendant in this case."); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC,* Civil Action No. 19-17272 (MAS) (ZNQ), 2020 U.S. Dist. LEXIS 158269,n5 (D.N.J. Aug. 31, 2020) ["RCN"] ("The Court finds RCN's citations to *Cobbler* … unconvincing. First, *Cobbler* did not address whether a large ISP can be held liable for contributory infringement…Second, as discussed in *Grande II*, the facts of *Cobbler* are inapposite to those presented here."); *Sony Music Entm't v. Cox Communs.,* Inc., 426 F. Supp. 3d 217, 235 (E.D. Va. 2019) ("Cox's argument [applying

20-0231A

*Cobbler*] is largely inapposite to an ISP defendant.").

        **2.**       **DISPUTED – Plaintiffs have sufficiently alleged that Defendant's subscribers directly infringe their exclusive right of reproduction.**

Defendant argues that Plaintiffs have failed to adequately allege that Defendant's subscribers downloaded copyright material from another using its network. *See* Mot. at pg. 8. However, *Twombly* does not require Plaintiffs to allege that MEU detected that Defendant's subscribers downloaded the Works. Nonetheless, since MEU detected that the Defendant's subscribers were distributing the Works, it is plausible that Defendant's subscribers downloaded the Works from Defendant's network, particularly since Plaintiffs have set forth evidence that Defendant's subscribers registered for an account with the notorious piracy website YTS and used their registered accounts to download torrent files for *I Feel Pretty*, *Hellboy*, *Angel Has Fallen*, *2 Guns*, *Lone Survivor* and *The Last Full Measure* (FAC at ¶¶96-98) from Defendant's network and that some of these subscribers even *admitted* to downloading the Works from Defendant's network. For example, the YTS website operator disclosed that Defendant's subscriber K S downloaded the torrent file for *Angel Has Fallen* on 2019-11-26 06:41:41 from IP address 69.73.33.142 (*see* Exhibit "2" at pg. 6), MEU confirmed that Defendant's subscriber K S distributed copies of *Angel Has Fallen* by the file name "Angel Has Fallen (2019) [BluRay] [720p] [YTS.LT]" from IP address 69.73.33.142 (FAC at ¶104), and K S admits to downloading the torrent file and downloading and sharing copies of this movie (*see* Decl. of K S [Doc. #25-8] at ¶¶3-4) just as asserted by the YTS operator and detected by MEU. Accordingly, Plaintiffs'

13

allegations that Defendant's subscribers reproduced their Works using the same IP addresses from where they were confirmed distributing the Works have plausible support.

### B.      DISPUTED – Plaintiffs plausibly alleged that Defendant contributed to its subscribers' direct infringements.

"[C]ontributory liability attaches when the defendant causes or materially contributes to another's infringing activities and knows of the infringement." *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013).  "The elements of contributory copyright infringement are (1) direct infringement, (2) causing or materially contributing to the infringing activities, and (3) knowledge of the infringement." *Nutritional Biomimetics, LLC v. Empirical Labs Incorp*., No. 16-cv-01162-KMT, 2018 WL 2567951, at *3, n.6 (D. Colo. Apr. 24, 2018). "The material contribution element is established by showing that the defendant (1) had knowledge of the infringing activity and (2) encouraged or assisted the others' infringement, or provided machinery or goods that facilitated the infringement." *Tomelleri v. Zazzle, Inc*., 2015 U.S. Dist. LEXIS 165007, 2015 WL 8375083, at *14 (D. Kan. Dec. 9, 2015).

As stated above, Plaintiffs' agent sent over 33,750 Notices to Defendant concerning infringements of copyright protected Works including Plaintiffs at IP addresses assigned to Defendant.  *See* FAC at ¶128. Each Notice included at least the name of the copyright owner, a statement that it was being sent "under penalty of perjury", the title of the Work, the manner by which it was infringed ("BitTorrent"), the infringing file name which includes the altered Copyright Management Information, the IP address and port number at where infringement was confirmed and the time of infringement down to the

14

20-0231A

second, contact information for the sender, and a PGP signature. Id. at ¶123; Exhibit "3" [Doc. #25-3]. Plaintiffs' agent sent 100 Notices to Defendant concerning observed infringements at each of IP addresses 75.118.244.40 and 75.76.119.141.  FAC at ¶138.

### 1.      DISPUTED – Plaintiffs have adequately alleged that Defendant had the requisite knowledge of direct infringement.

Defendant contends that these notices "could not confer knowledge of copyright infringement…and no evidence…that would enable WOW to verify [MEU]s allegations." Mot. at pg. 9.  Contradictorily, the same notices suddenly provided sufficient evidence for Defendant to "suspend" the account at IP address 75.118.244.40 after receiving a letter from Plaintiffs' counsel. *See* Exhibit "5" [Doc. #25-5].  These same types of Notices provided sufficient information for Defendant to take the appropriate action had it been interested in doing so.  With the IP address and port number where the Plaintiffs' Works were being distributed, Defendant could have promptly identified and told the customer to cease the abusive conduct or make a counternotice if it denied the infringement or terminated the service.  Courts have concluded that Notices that sometimes included less information sufficed for establishing the requisite knowledge for contributory infringement. *See BMG Rights Mgmt. (US) LLC v. Cox Commc'ns, Inc.* ["Cox II"], 199 F. Supp. 3d 958, 979 (E.D. Va. 2016) (finding that the "jury could reasonably conclude that Rightscorp captured infringing activity on Cox's network, and that had Cox received the notices they would have satisfied the knowledge requirement); *RCN* (notices from Rightscorp provide factual support for Plaintiffs' allegation that RCN had knowledge of the infringement); *Warner Bros.* (Finding that Plaintiffs' allegations that Defendant's failure to stop or take

15

other action in response to notices of infringement is a draw to current and prospective subscribers to purchase and use Defendant's internet service to pirate Plaintiffs' copyrighted works supports claim for vicarious infringement); *Grande* (the Court was persuaded that UMG pled a plausible claim of secondary infringement based on Grande's alleged failure to act when presented with evidence of ongoing, pervasive infringement by its subscriber from the Rightscorp notices); *see also Jalbert v. Grautski*, 554 F. Supp. 2d 57, 68 (D. Mass. 2008) ("Although the defendant must have knowledge of the infringing activity, the defendant need only have known of the direct infringer's activities, and need not have reached the legal conclusion that those activities infringed a copyrighted work.") (internal quotation omitted).  Counsel for Defendant failed to cite the *Warner* case of this District and even the decisions from *Grande* and *RCN* they argued that contradict their misguided arguments.

## 2.    DISPUTED – Plaintiffs have adequately alleged conduct by Defendant that supports contributory liability.

Defendant argues that Plaintiffs have not satisfied the *Grokster* standard for inducement. *See* Mot. at pgs. 8-11.  However, Plaintiffs' claim for contributory copyright Infringement is based upon material contribution rather than the intentional inducement standard of *Grokster*. *See* FAC at ¶¶179-186. Moreover, to the extent evidence of "culpable intent" is required for material contribution, it can be imputed from Defendant's knowledge of its subscribers ongoing piracy.  Particularly, *Grokster* directs the Court to analyze contributory liability in light of common law principles which establish that intent may be imputed. *See MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005).  In

16

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), the Ninth Circuit looked to the Restatement of Torts for common law principles and stated that "If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007) (citing RESTATEMENT (SECOND) OF TORTS § 8A cmt. b (1965)).  Such is the case here.  Defendant has knowledge of the specific infringing activity yet fails to take simple measures stop it.  Accordingly, traditional common law principles permit a court to impute intent so that defendant may be liable, by operation of law just as if it had actually intended to infringe.

Defendant asserts that Plaintiffs' claim based upon material contribution must fail because its service is capable of a substantial non-infringing use. *See* Mot. at pg. 13.  However, BitTorrent, which Defendant's subscribers use to pirate Plaintiffs Works, is overwhelmingly (by some measures 96.28% percent of its traffic) used for piracy.  *See* David Price, "NetNames Piracy Analysis: Sizing the Piracy Universe", September 2013, pg. 18.  Accordingly, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417 (1984) does not absolve Defendant from liability because Defendant has knowledge that its subscribers pirate content via BitTorrent yet fails to take even the simplest measures to stop further piracy.  *See* FAC at ¶176.  Defendant's proposition that a service provider with knowledge of ongoing infringement by its subscribers can escape liability by merely asserting that its service has substantial non-infringing uses has been repeatedly rejected.  The Fourth Circuit called this argument "meritless" when pointing out that the

17

20-0231A

Supreme Court clarified in *Grokster* that "*Sony* barred secondary liability based on *presuming or imputing intent* to cause infringement solely from the design or distribution of a product capable of substantial lawful use, which the distributor knows is in fact used for infringement…the fact that a product is "capable of substantial lawful use" does not mean the "producer can never be held contributorily liable." *BMG Rights Mgmt. (US) LLC v. Cox Communs., Inc.*, 881 F.3d 293, 306 (4th Cir. 2018); *Grande* at 767 ("liability may be imposed for intentionally encouraging infringement through specific acts…The specific act in question here is the continued provision of internet services to customers. Thus, this is not a case of mere refusal to act. Grande acted affirmatively by continuing to sell internet services and continuing to provide internet access to infringing customers."); *RCN*, 2020 U.S. Dist. LEXIS 158269, at *31 (rejecting RCN's argument that material contribution to infringement is precluded by the *Sony* Rule because its internet service has substantial non-infringing uses).  Once again, Counsel for Defendant failed to cite the *Grande* and *RCN* decisions that contradict their misguided arguments.

### C.   DISPUTED – Plaintiffs sufficiently allege Defendant is vicariously liable for its subscribers' direct infringements.

A defendant is vicariously liable for copyright infringement "when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement." *Grokster*, 545 U.S. at 930 n.9.  Financial benefit exists where the availability of infringing material acts as a "draw" for customers.  *Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004). Regarding the direct financial benefit inquiry, the critical question is "whether there is a

20-0231A

causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of how substantial the benefit is in proportion to a defendant's overall profits." *Id.* at 1079. This Court adopted the logic of *Ellison* in *Warner Bros.* when stating that "[P]laintiffs must only allege that the ability to download their infringing content served as a draw, not necessarily the only draw to subscribers." *Warner Bros.* at 1077.

Similar to allegations in *Warner Bros.* that "Charter subscribers have used Charter services to infringe their content…subscribers are motivated to subscribe by Charter's advertisement of features attractive to those who seek to infringe, such as fast download speeds…" (*Id.*) that this Court found sufficient for establishing the direct financial benefit requirement, Plaintiffs here allege that: Defendant's subscribers directly infringe Plaintiffs' Works; Defendant's subscribers are motivated to become subscribers from Defendant's "practice of ignoring notices of infringements or failing to take any meaningful action"; the ability of subscribers "who want it all" to use Defendant's high speed service to "intensively upload and download" Plaintiffs' Works without having their services terminated despite multiple notices being sent to Defendant acts as a powerful draw for subscribers of Defendant's service (FAC at ¶¶89-121, 161-168, 187) and that Defendant's subscribers are drawn to use Defendant's service because of its tolerance of piracy on its network. *See also* Decl. of Culpepper [Doc. #25-10] at ¶¶2-4 (Defendant promotes higher speed as "a great choice for anyone intensively downloading…", individuals on Reddit stating how they have "downloaded truly an outrageous amount of data…and never gotten a notice"). These allegations go even further than those that were found sufficient by this Court to establish a direct financial benefit requirement in *Warner Bros.*

19

Defendant requests this court to ignore the published decision of *Warner Bros.* and adopt the logic of the unpublished decision of *UMG Recordings, Inc. et al. v. Bright House Networks, LLC.*, No. 8:19-cv-710, 2020 WL 3957675, at *4 (M.D. Fla. July 8, 2020). However, unlike in *Bright House Networks, LLC*, Plaintiffs here allege that Defendant prioritizes certain type of traffic and knows that its subscribers are using P2P traffic such as BitTorrent. *See* FAC at ¶176. Moreover, Plaintiffs have alleged multiple instances of Defendant's subscribers gleefully recommending WOW for its tolerance of piracy. FAC at ¶168 ("I've downloaded 2+ TB in a single month without a word from them." "…wondering is spectrum stricter than WOW").

## V.      ARGUMENT – THE FAC ADEQUATELY PLEADS A CLAIM FOR SECONDARY LIABILITY FOR DMCA VIOLATIONS

### A.      *DISPUTED –Section 1202 provides for Secondary Liability.*

Despite Defendant claiming to be "not aware of any case finding a defendant secondarily liable for DMCA violation", it is widely established that the principals of secondary liability apply for DMCA violations. For example, in *Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925-926 (6th Cir. 2003), the Sixth Circuit held that a party may be vicariously liable for others' § 1202 DMCA violations when "(1) a defendant has the right and ability to supervise the infringing conduct and (2) the defendant has an obvious and direct financial interest in the infringement". This Court approvingly cited *Gordon* in the Report and Recommendation of *Stockart.com, LLC v. Engle*, Civil Action No. 10-cv-00588-MSK-MEH, 2011 U.S. Dist. LEXIS 20470, at *27 (D. Colo. Feb. 18, 2011)(R&R adopted on 4/11/2011) ("To prove a 1202(b)(3) violation, the

20

plaintiff must prove that the defendants - or those for whom they are vicariously liable - possessed actual knowledge of the unauthorized change to the copyright management information").  *Gordon* was also adopted by the Northern District of Georgia in *Atlanta Photography, LLC v. Ian Marshall Realty, Inc.*, No. 1:13-CV-2330-AT, 2014 U.S. Dist. LEXIS 188894, 2014 WL 11955391, at *4 (N.D. Ga. Mar. 7, 2014).

**B.      DISPUTED – Plaintiffs plausibly alleged that Defendant engaged in conduct supporting secondary liability for its subscribers' DMCA violations.**

As discussed above, Defendant has knowledge of its subscribers DMCA violations from: (1) the Notices that Plaintiffs' agent sent that included the specific file name with modified CMI ("The Hitman's Bodyguard (2017) [YTS.AG]" as shown in Exhibit "3") and (2) the letter from Plaintiffs' counsel that explicitly stated:

> Nearly all of the file titles of the infringing copies of my clients' Works have had the copyright management information ("CMI") such as the title of the Work modified or altered to falsely include a reference to a piracy website. For example, the infringing file my clients' agent told you about in the Notice shown in Exhibit "1" has the title: "The Hitman's Bodyguard (2017) [YTS.AG]". The CMI has been modified/altered to falsely refer to the notorious piracy websites YTS in violation of 17 U.S.C. §1202 ("DMCA violations").  My clients did not provide file titles that promote movie piracy websites.

Exhibit "4" [Doc. #25-4] at pg. 3.

Accordingly, Defendant is secondarily liable for its subscribers' DMCA violations for the same reasons it is secondarily liable (material contribution and vicarious infringement) for its subscribers' direct copyright infringements.

20-0231A

### C.      DISPUTED - Plaintiffs plausibly alleged the existence of CMI.

Contrary to Defendant's assertion, Plaintiffs explicitly allege that "A legitimate file copy of each of the Works includes copyright management information…indicating the title".  FAC at ¶105.  File titles of legitimate digital copies of the Works are copyright management information ("CMI") as defined in 17 U.S.C. §1202(c).   *See Energy Intelligence Grp., Inc. v. Kayne Anderson Capital Advisors, L.P.*, 948 F.3d 261, 267 (5th Cir. 2020) (holding that filenames constitute CMI).  Plaintiffs allege that the initial seeders of the infringing file copies of Plaintiffs' Works used a process referred to as "ripping" to create a copy of motion pictures from either Blu-ray or legal streaming services and modify the file title of the Work to include a wording such as "FGT", "RARBG" or "YTS" in the title of the file copies in order to enhance a reputation for the quality of his or her torrent files and attract users to his or her piracy website.  *See* FAC at ¶¶60-61.  Plaintiffs further allege that the file copies Defendant's subscribers distributed to other peers in the Swarm included the altered CMI in the file title.   *See* Id. at ¶¶106-111.  Accordingly, contrary to Defendant's assertions, Plaintiffs have plausibly plead relevant CMI.

### D.      DISPUTED - Plaintiffs have plausibly alleged that CMI was false or altered.

Defendant contends that the *addition* of the names of notorious piracy website such as RARBG or YTS to the file names is not an *alteration* to CMI. *See* Mot. at pg. 15. Defendant's argument contradicts common English usage of the word alteration such as a tailor performing "alterations" for pants to increase the pants length. https://www.loveyourtailor.ca/tailor-blog/tailoring-a-pair-of-pants-what-your-tailor-can-do-

20-0231A

for-you-a-mens-guide-for-a-perfect-fit/ [last accessed on Nov. 9, 2021]. Moreover, Defendant's argument fails when viewed in the context of the title of 17 U.S. Code § 1202 "**Integrity** of copyright management information". The integrity of the CMI of Plaintiffs' Works was certainly destroyed when, for example, the initial seeders modified the CMI to including the piracy website "MkvCage.com". Exhibit "7" [Doc. #25-7] to FAC (CMI of multiple titles altered to include "MKVCAGE".) Thus, the CMI has been altered as provided in §1202(b) and is also false as provided in §1202(a) because MkvCage.com was not the author of the Work.

### E.    DISPUTED - Plaintiffs plausibly alleged that Defendant's subscribers violated section 1202.

Plaintiffs do not "vaguely allege that…subscribers generally intended to induce or facilitate infringement." Mot. at pg. 16. Rather, Plaintiffs have made numerous detailed factual allegations concerning Defendant's subscribers' knowledge that the website or BitTorrent Client from which they obtained their torrent files and file copies was distributing illegal copies of the Work with altered CMI and that, in many cases, Defendant's subscribers had registered accounts with these piracy websites (such as YTS). *See* FAC at ¶¶98, 112-119. Accordingly, Defendant's subscribers knew that the entity included in the false or altered CMI such as YTS or RARBG was not the author or a licensed distributor of Plaintiffs' Works. Id. at ¶¶114-115. Plaintiffs have specifically pointed out how Defendant's subscribers' distributions of their Works with altered CMI such as RARBG or YTS specifically promotes the piracy websites where more illegitimate copies of the Works can be obtained.    Id. at ¶¶117-119.

20-0231A

## VI.  ARGUMENT – THE FAC ADEQUATELY PLEADS A CLAIM FOR INJUNCTIVE RELIEF

In the Defendant's previous motion to dismiss the original complaint, it argued that "Plaintiffs' allegations fail to address several of the necessary elements of injunctive relief, such as irreparable harm…and that there is no authority that authorizes the unprecedented injunctive relief Plaintiffs are seeking…".  Motion [Doc. #23] at pg. 18.  Without acquiescing to the merits of this argument, the FAC includes the necessary elements of injunctive relief.  *See* FAC at ¶¶198-203.  Now Defendant suddenly makes the new argument that a claim for injunctive relief is not an independent claim of action.  *See* Mot. at pg. 16.  Defendant cannot now shift positions when Plaintiffs amended this claim based upon Defendant's previous arguments, particularly when Defendant failed to comply with the meet and confer requirements prior to filing its motions to dismiss.  Nonetheless, Plaintiffs are not merely requesting an injunction under the equitable powers of this Court.  Rather, Plaintiffs are applying pursuant to 17 U.S.C. § 512(j), which states, "The following rules shall apply in the case of any *application for an injunction* under section 502 against a service provider that is not subject to monetary remedies under this section…"  Thus, even if Defendant established a safe harbor and is "not subject to monetary remedies", the Court can still grant *an application* for the (1)(A) and (B) injunctions of §512(j).  Moreover, even in cases such as *Dalkita, Inc. v. Devin Mills Consulting* cited by Defendant, this Court allowed "…the claim for injunctive relief to proceed to the extent it can be linked to …other, substantive causes of action." *Dalkita, Inc. v. Devin Mills Consulting*, LLC, Civil Action No. 18-cv-01398-PAB-SKC, 2019 U.S.

20-0231A

Dist. LEXIS 43194, at *8 (D. Colo. Mar. 18, 2019).  Here, Plaintiffs should be allowed to proceed with their claim for application for injunction because it is linked to their claims for copyright infringement.

## VII.    CONCLUSION

For the foregoing, the Defendant's Motion to Dismiss the FAC should be denied. However, should Defendant's Motion be granted, Plaintiffs request leave to amend.


DATED: Kailua-Kona, Hawaii, November 24, 2021.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:      kculpepper@culpepperip.com
Attorney for Plaintiffs

20-0231A

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing pleading complies with the applicable type-volume limitations set forth in Section III.A.3 of Judge Domenico's Practice Standards and the Order Granting Motion to Increase the Word Limit [Doc. #31].

DATED: Kailua-Kona, Hawaii, Nov. 24, 2021.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiffs

20-0231A

## CERTIFICATE OF SERVICE

I hereby certify that on the date below I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Margaret R. Szewczyk      mszewczyk@atllp.com, iplitstaff@armstrongteasdale.com

Richard L. Brophy      rbrophy@atllp.com, iplitstaff@armstrongteasdale.com

Zachary Charles Howenstine      zhowenstine@armstrongteasdale.com, drichert@armstrongteasdale.com, iplitstaff@armstrongteasdale.com

Angela B. Kennedy  akennedy@atllp.com

DATED: Kailua-Kona, Hawaii, November 24, 2021.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper
Attorney for Plaintiffs

20-0231A