**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| AFTER II MOVIE, LLC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 1:21-cv-01901-DDD-MEH |
| | ) | |
| vs. | ) | |
| | ) | |
| WIDEOPENWEST FINANCE, LLC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT WIDEOPENWEST FINANCE, LLC'S REPLY IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

1

## TABLE OF CONTENTS

I. Plaintiffs have not plausibly alleged direct copyright infringement by a WOW subscriber. ................................................................................................................ 1

II. Plaintiffs have not plausibly alleged direct infringement of their reproduction rights. ..... 6

III. Plaintiffs have not plausibly alleged contributory copyright infringement. ...................... 7

IV. Plaintiffs have not plausibly alleged that WOW engaged in any conduct supporting vicarious liability for copyright infringement. ................................................................ 11

V. Plaintiffs have not plausibly alleged that WOW induced, caused, or materially contributed to any alleged Section 1202 violation. .......................................................... 11

VI. Plaintiffs fail to identify any authority for injunctive relief as anything more than a remedy, not a cause of action. .......................................................................................... 13

Plaintiffs have failed to state a claim against Defendant WideOpenWest Finance, LLC ("WOW") for secondary copyright infringement or for secondary liability under the DMCA. Ultimately, Plaintiffs' 200+ paragraph Amended Complaint amounts to little more than "WOW provided Internet access to subscribers accused, without evidence, of having committed copyright infringement." There is no legal, factual, or equitable reason why WOW's provision of Internet access, which has a multitude of perfectly legal, non-infringing uses, should subject it to the secondary liability Plaintiffs seek here. The Court should dismiss Plaintiffs' claims against WOW with prejudice under Rule 12(b)(6).

## I.   Plaintiffs have not plausibly alleged direct copyright infringement by a WOW subscriber.

Plaintiffs do not dispute that, to state a claim against WOW for secondary copyright infringement, they must allege underlying acts of direct copyright infringement. *See, e.g.*, *La Resolana Architects, PA v. Reno, Inc.,* 555 F.3d 1171, 1181 (10th Cir. 2009). Plaintiffs rely on Paragraphs 71–95 of their Amended Complaint (ECF No. 25), as well as a number of new allegations set out in a declaration attached to their response brief, to claim they have met this burden. None of these allegations are sufficient.

The Court should disregard the new attorney declaration submitted by Plaintiffs. *See* Decl. of K. Culpepper (ECF No. 42-1). A plaintiff may not raise new allegations for the first time in response to a motion to dismiss or amend pleadings by interlineation based on a declaration submitted in response to a motion to dismiss. *See, e.g.*, Fed. R. Civ. P. 12, 15; *In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss."). The only relevant factual allegations are those set forth in Plaintiffs' Amended Complaint. *See id.*

1

If anything, Plaintiffs' attempt to offer this declaration is a tacit admission that the Amended Complaint is deficient—namely, for failure to plead "something more" than merely identifying an IP address "to create a reasonable inference that a subscriber is also an infringer." *See Cobbler Nevada, LLC v. Gonzales*, 901 F.3d 1142, 1145 (9th Cir. 2018). For example, Plaintiffs' counsel now purports to vouch for the accuracy of materials referenced in the Complaint (ECF No. 42-1 at ¶¶ 13–16) and now claims that WOW's terms of service make WOW subscribers responsible for any use (known or unknown) of their Internet service (ECF No. 42, p. 11; ECF No. 42-1 at ¶¶ 2, 19). If these allegations are necessary to Plaintiffs' claims, Plaintiffs were obligated to include them in their Amended Complaint.

More to the point, however, the substance of Plaintiffs' allegations—even including Plaintiffs' counsel's improper declaration—still falls short of meeting Plaintiffs' burden. Contrary to Plaintiffs' arguments, *Cobbler* does not create a heightened pleading standard. Instead, *Cobbler* simply concludes that an allegation of direct copyright infringement is not "plausible on its face" and does not "raise a right to relief above the speculative level" if it lacks factual allegations linking activity at an IP address to the alleged infringer. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cobbler*, 901 F.3d at 1146–47; *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) (noting that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context").

That is precisely the case here. Plaintiffs' direct infringement allegations (*e.g.*, ECF No. 25, ¶¶ 71, 74, 89-98, 104)—including the allegations discussed in their response brief (ECF No. 42 at 10-13)—merely identify IP addresses allegedly owned by WOW. Plaintiffs do not allege any facts plausibly showing that the people who engaged in the alleged activity at those IP addresses are WOW subscribers. (ECF No. 35 at 6–8).

2

Instead, Plaintiffs cite to two declarations attached to their Complaint, claiming that they reflect WOW subscribers "admitt[ing] to downloading the Works from Defendant's network." (ECF No. 42 at 13; ECF No. 25-8; ECF No. 25-9). On their face, these declarations do not appear to be reliable. Plaintiffs have improperly redacted the names of the declarants, and both declarations were clearly drafted by the same person (presumably, Plaintiffs' counsel), using the same font, format, and phrasing. *Compare* ECF No. 25-8 *with* ECF No. 25-9. Furthermore, although Plaintiffs allege no facts regarding how they came to possess these declarations, it is certainly reasonable to assume that if the declarations are authentic, they were provided by *pro se* parties facing the threat of litigation. *See, e.g., Ramirez v. Exxon Mobil Corp.*, 334 F.Supp.3d 832, 843 (N.D. Tex. 2018) (refusing to consider an unreliable affirmation as well as any allegations relying on this affirmation at the motion to dismiss stage).

Furthermore, neither declarant actually states that they are a WOW subscriber—*i.e.*, the account holder.[1] *See id.* Thus, these declarations add nothing to show that the people Plaintiffs accuse of direct copyright infringement were WOW subscribers, and not other users of a subscriber's internet connection. *See Cobbler Nevada, LLC v. Gonzales*, No. 3:15-cv-866, 2016 WL 3392368, at *1, *3 (D. Or. June 8, 2016) ("While it is *possible* that the subscriber is also the person who downloaded the movie, it is also possible that a family member, a resident of the household, or an unknown person engaged in the infringing conduct.") (emphasis in original). At most, even if the Court finds the additional details in the two anonymous declarations are sufficient to allege direct infringement, then Plaintiffs still have only alleged direct infringement as to the three works (*Angel Has Fallen*, *The Last Full Measure*, and *The Outpost*) and two IP addresses

---

[1] The declarants refer to WOW as "my ISP" and "my Internet Service Provider," but this vague language does not indicate the declarants are WOW account holders any more than a person referring to an address as "my house" indicates they are a title or mortgage holder. People customarily say "my ISP" to refer to the company that provides their internet service, irrespective of whether the person is actually the account holder.

3

(69.73.33.142 and 50.4.162.153) identified in these declarations. (ECF No. 25-8; ECF No. 25-9). Plaintiffs would still have failed to plead "something more" with regard to every other work and IP address ostensibly at issue, and the Court should therefore dismiss Plaintiffs' claims regarding such other works and alleged infringements.

Additionally, Plaintiffs are wrong to suggest that courts do not require plaintiffs to plead "something more" to identify direct infringers in the context of copyright infringement claims against ISPs. (ECF No. 42 at 11–12). The cited cases addressed whether a *different* holding in *Cobbler*—regarding the conduct necessary to show contributory copyright infringement—applies to an ISP. *See UMG Recordings, Inc. v. WOW Commc'ns Networks, LLC*, 384 F. Supp. 3d 743, 767 n.6 (W.D. Tex. 2019); *UMG Recordings, Inc. v. RCN Telecom Servs., LLC*, No. 3:19-cv-17272, 2020 WL 5204067, at *10 n.5 (D.N.J. Aug. 31, 2020). *Sony Music. Entm't v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 235–36 (E.D. Va. 2019). None of those cases addressed *Cobbler*'s impact on whether the plaintiff has adequately alleged underlying direct infringement. *See id.*

In fact, while Plaintiffs attach a court order to attempt to show that their litigation efforts are not always unsuccessful (ECF No. 42-4),[2] Plaintiffs omit that the court in that case ultimately dismissed the claims because the plaintiff failed to "plead 'something more' about the subscriber, not about his or her IP address." *Venice PI, LLC v. Huseby*, No. 2:17-cv-1160, 2019 WL 1572894, at *2 (citing *Cobbler*, 901 F.3d at 1146–47). The court emphasized that allegations involving only the activity associated with an IP address fail to show the "something more" required by *Cobbler*:

---

[2] Relatedly, Plaintiffs protest that WOW's Exhibit A (ECF No. 35-1), which describes MEU's unreliability, involves "a different copyright case for a completely different copyright holder" (ECF No. 42 at p. 8). But the agent at issue in both cases—MEU—is the same. In fact, WOW's Exhibit A discredits the very same affiant on which Plaintiffs' *own* opposition exhibit relies. *Compare* ECF No. 42-2 (containing the declaration of Daniel Arheidt) *with* ECF No. 35-1 at ¶¶ 3, 5, 9-14, 17, 22, 31-32, 44, 74, 91, 93-96, 103-113 (describing a cadre of unreliable and inconsistent MEU affiants, including Mr. Arheidt).

"Continual or prolonged use of an IP address is not synonymous with a subscriber's activity or knowledge; the same pattern would exist if a tenant, roommate, child, or hacker engaged in the alleged infringement without the subscriber realizing it, or if the Internet access was not password protected and strangers could connect via the IP address." *Id.*

Finally, the Court should reject Plaintiffs' attempt to rely on WOW's terms of use, which Plaintiffs appear to cite for the proposition that a WOW subscriber is liable for any acts of copyright infringement committed by persons using their internet connection. (ECF No. 42 at 11; ECF No. 42-1 at ¶¶ 2, 19). As an initial matter, the Court should disregard these allegations because they appear nowhere in Plaintiffs' Amended Complaint. But even if they had been included, this still would not save Plaintiffs' claims. It would only mean that Plaintiffs have alleged that WOW's *subscribers* are secondarily liable for copyright infringement committed by other users of their internet connections, and that WOW should be tertiarily liable for this alleged infringement—secondarily liable for its subscribers' secondary liability. The Copyright Act does not allow for tertiary liability. *See, e.g.*, *In re Napster, Inc. Copyright Litig.*, No. 3:00-md-1369, 2001 WL 36593841, at *2 (N.D. Cal. July 9, 2011) ("Under this formulation, Napster users are the direct infringers, Napster is the secondary infringer, and the individual defendants [with different alleged connections to Napster's operations] are tertiary infringers. The Court finds no support for this legal proposition."); *David v. CBS Interactive Inc.*, No. 2:11-cv-9437, 2012 WL 12884914, at *4 (N.D. Cal. July 13, 2012) ("The courts have yet to find contributory liability based on a tertiary actor's conduct.").

Because Plaintiffs fail to plausibly allege that any WOW subscriber committed direct copyright infringement, Plaintiffs' Counts I and II should be dismissed.

5

## II. Plaintiffs have not plausibly alleged direct infringement of their reproduction rights.

Plaintiffs concede that to plausibly allege direct infringement of their reproduction rights under 17 U.S.C. § 106(1), they must allege facts showing that a WOW subscriber obtained—*i.e.*, downloaded—the copyrighted work ***using WOW's network***. (ECF No. 42 at 13; *see also* ECF No. 35 at 8).

Plaintiffs claim that because they have alleged that WOW subscribers distributed copies of copyrighted works over WOW's network, it is reasonable to infer that they also obtained those copies over WOW's network. (ECF No. 42 at 13). This argument is inconsistent with federal pleading standards. Based on the allegations in the Amended Complaint, one could just as easily infer, for example, that that the file was downloaded using internet service provided by a different ISP or by a cellphone service provider, that it was downloaded over a public WiFi network, or that it was obtained from a friend on a USB drive. Plaintiffs' allegations are consistent with any of those possibilities, and they have therefore failed to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). Plaintiffs must allege more than "a sheer possibility" that the works were obtained using WOW's network. *Id.*

Plaintiffs also attempt to rely on the two anonymous declarations attached to their Complaint as demonstrating direct infringement of their reproduction rights. (ECF No. 42 at 13). As discussed above, the declarations are facially unreliable, and Plaintiffs have failed to allege other facts sufficient to show otherwise. And again, even if the Court were to credit the declarations as supplementing Plaintiffs' Complaint, the declarations can only support a claim as to the three works (*Angel Has Fallen*, *The Last Full Measure*, and *The Outpost*) and two IP addresses (69.73.33.142 and 50.4.162.153) identified in the declarations. (ECF No. 25-8; ECF

6

No. 25-9). The Court should still dismiss Plaintiffs' claims with respect to all other works in suit and alleged acts of direct infringement.

### III.     Plaintiffs have not plausibly alleged contributory copyright infringement.

WOW moved to dismiss Plaintiffs' contributory infringement claim for failure to allege both the requisite knowledge of infringement and the requisite conduct to support contributory liability. (ECF No. 35 at 8–11). Plaintiffs' response fails to show that Plaintiffs' allegations are sufficient in either respect.

First, with respect to knowledge of direct infringement, Plaintiffs wrongly claim that because WOW suspended a subscriber's account after receiving copyright complaints from Plaintiffs, WOW had knowledge of infringement sufficient to support contributory liability. (ECF No. 42 at 15). When WOW suspends or terminates a subscriber's account in response to a copyright infringement complaint, it does so pursuant to its DMCA safe harbor policy. *See* 17 U.S.C. § 512(a), (i)(1)(A). It would pervert the purposes of the DMCA to hold that a service provider that acts on a copyright infringement complaint concedes actual knowledge of infringement, and indeed, Plaintiffs cite no authority for that proposition. It is clear from the face of Plaintiffs' Amended Complaint that WOW has knowledge, at most, of conclusory *allegations* of direct copyright infringement—Plaintiffs allege no facts plausibly showing knowledge of specific instances of infringement. (ECF No. 25 at ¶¶ 43, 169 (WOW's alleged knowledge of infringement is based on Maverickeye's copyright complaints); ECF No. 25-3 (example copyright complaint); ECF No. 42 at 8).

Plaintiffs are also wrong to attempt to compare this case to other copyright cases involving ISPs. Plaintiffs baldly assert that the copyright complaints in those cases "sometimes included less information" than the complaints at issue in this case, but their citations do not support that assertion. (ECF No. 42 at 15–16). What matters here is the sufficiency of Plaintiffs' Amended

7

Complaint, and there is nothing in it that plausibly shows that WOW had actual, verifiable knowledge of specific instances of copyright infringement. (ECF No. 35 at 9 (citing, *inter alia*, *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001) ("[F]or the operator to have sufficient knowledge, the copyright holder must provide the necessary documentation to show there is likely infringement.") (cleaned up)).

Second, under the Supreme Court's controlling contributory infringement decisions, *Sony* and *Grokster*, a defendant who merely provides a service with substantial non-infringing uses cannot be liable for contributory infringement, absent evidence of affirmative steps to foster direct infringement. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.,* 545 U.S. 913, 936–37 (2005); *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 441–42 (1984). Contributory liability is limited to parties who (1) intentionally induce infringement through specific acts or (2) distribute products or services that have no legitimate purpose apart from their use to infringe copyright. Plaintiffs' allegations fail to satisfy that standard. (ECF No. 35 at pp. 9–13). WOW recognizes that certain district court decisions have allowed contributory infringement claims against ISPs to proceed; respectfully, however, WOW submits that those non-binding decisions cannot be squared with *Sony* and *Grokster* and should not be followed.

Plaintiffs also offer a different standard, under which a defendant can be held contributorily liable if it "has knowledge of the specific infringing activity yet fails to take simple measures to stop it." (ECF No. 42 at p. 17). This standard cannot be good law to the extent it is inconsistent with *Sony* and *Grokster*, nor does it make sense to apply this standard to an ISP. Indeed, the standard was developed by the Ninth Circuit to address claims against defendants that directly control access to specific content on the Internet. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (formulating this standard to address claims against "computer

8

system operators" like Google, who operate and/or control access to allegedly infringing websites). In contrast, there is no infringing material available using WOW's "system" because WOW does not operate a system that determines what content is available over the Internet and does not have the ability to remove infringing content from Internet sources.[3] *Compare with Napster*, 239 F.3d at 1021 (contributory liability is appropriate where a system operator "learns of specific infringing material available on his system and fails to purge such material from the system").

Instead, WOW offers access to the Internet as a whole, a service that plainly has a multitude of legitimate purposes. There are no "simple measures" WOW can take to prevent the infringement of copyrighted works. The only option identified by Plaintiffs—terminating a subscriber's internet access entirely—is not simple at all. This is an exceedingly drastic measure, given that so many people rely on the Internet for work, for school, and as a main hub for social activity. *See, e.g.*, *Packingham v. N. Carolina*, 137 S. Ct. 1730 (2017) (recognizing a First Amendment right to access social media). The critical importance of Internet access is highlighted by the moratoria on internet terminations during the Covid-19 pandemic. *See, e.g.*, Maryland Executive Order No. 20-07-31-01, available at https://governor.maryland.gov/wp-content/uploads/2020/07/Utility-Shutoffs-and-Late-Fees-4th-Amended-7.31.20.pdf; Kansas Executive Order No. 20-05, available at https://governor.kansas.gov/wp-content/uploads/2020/03/20-05-Executed.pdf; New Jersey Executive Order No. 126, available at https://nj.gov/infobank/eo/056murphy/pdf/EO-126.pdf.

---

[3] As WOW noted in its motion to dismiss, Plaintiffs do not allege that WOW hosts websites, stores data for customers, distributes online content or tools, runs any file-sharing programs, distributes software, or has any ability to determine what files are stored on the computers and devices people use on its network. Plaintiffs do not allege that WOW has control over BitTorrent or that WOW makes it available to its subscribers.

9

Ultimately, Plaintiffs' argument rests on the mistaken premise that WOW's "culpable intent . . . can be imputed from [WOW's] knowledge of its subscribers' ongoing piracy." (ECF No. 42 at 16). That is <u>precisely</u> the argument the Supreme Court rejected in *Sony* and *Grokster*:

> [J]ust as *Sony* did not find intentional inducement despite the knowledge of the VCR manufacturer that its device could be used to infringe, **mere knowledge of infringing potential or of actual infringing uses would not be enough here to subject a distributor to liability**. Nor would ordinary acts incident to product distribution, such as offering customers technical support or product updates, support liability in themselves. **The inducement rule, instead, premises liability on purposeful, culpable expression and conduct**, and thus does nothing to compromise legitimate commerce or discourage innovation having a lawful promise.

*Grokster*, 545 U.S. at 937 (emphasis added).

For the same reason, Plaintiffs are wrong to suggest that there is a separate, lower standard for contributory liability based on "material contribution" to infringement. (ECF No. 42 at 17). If such a standard existed, *Sony* and *Grokster* would be meaningless, because a plaintiff would never need to attempt to prove inducement of infringement if it could instead make an easier showing of material contribution. *See Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring) ("Liability [for contributory infringement] under our jurisprudence may be predicated on actively encouraging (or inducing) infringement through specific acts (as the Court's opinion develops) *or* on distributing a product distributees use to infringe copyrights, if the product is not capable of 'substantial' or 'commercially significant' noninfringing uses.") (emphasis added).

Because Plaintiffs do not plausibly allege that WOW encouraged or induced infringement through specific acts, and because WOW's Internet service is indisputably capable of substantial noninfringing uses, Plaintiffs have failed to state a claim.

### IV. Plaintiffs have not plausibly alleged that WOW engaged in any conduct supporting vicarious liability for copyright infringement.

Respectfully, the decision in *Warner Records Inc. v. Charter Commc'ns, Inc.*, 454 F. Supp. 3d 1069 (D. Colo. 2020) is an outlier regarding vicarious liability. *See, e.g.*, *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004); *UMG Recordings, Inc. et al. v. Bright House Networks, LLC*, No. 8:19-cv-710, 2020 WL 3957675, at *4 (M.D. Fla. July 8, 2020). The "central question" of the vicarious liability inquiry is "whether the infringing activity constitutes a draw for subscribers, not just an added benefit." *Bowers v. Reece & Nichols Realtors, Inc.*, No. 2:19-cv-2094, 2020 WL 2992086, at *8 (D. Kan. June 4, 2020) (quoting *Ellison*, 357 F.3d at 1079). Plaintiffs have failed to allege any facts from which this Court could conclude that the alleged infringement is "the reason" customers subscribed to WOW, nor have they alleged any facts showing any direct financial benefit. Their claim for vicarious liability should be dismissed.

### V. Plaintiffs have not plausibly alleged that WOW induced, caused, or materially contributed to any alleged Section 1202 violation.

None of the cases cited in Plaintiffs' Opposition Brief found a defendant secondarily liable for a Section 1202 DMCA violation, and WOW is not aware of any other case finding a defendant secondarily liable for a Section 1202 DMCA violation. For the reasons set forth in WOW's Motion to Dismiss, a claim for secondary liability under Section 1202 is inconsistent with the language and purposes of that section. *See also* 17 U.S.C. § 1201(c)(2) ("Nothing in this section shall enlarge or diminish vicarious or contributory liability for copyright infringement in connection with any technology, product, service, device, component, or part thereof.").

Even if secondary liability were a viable theory, however, Plaintiffs have still failed to state a claim.

First, Plaintiffs fail to offer authority demonstrating what the applicable standard is. Instead, Plaintiffs' conclusory allegations merely parrot the standard for contributory copyright

infringement, as well as a vicarious liability standard a court suggested might apply (but did not actually apply) in the Section 1202 context. (ECF No. 25 at ¶¶ 215–219); *see also Gordon v. Nextel Commc'ns & Mullen Adver., Inc.*, 345 F.3d 922, 925–26 (6th Cir. 2003). This is insufficient to show that Plaintiffs have a viable secondary Section 1202 claim against WOW.

Second, with response to alleged contributory liability, Plaintiffs fail to allege any *facts* to show that WOW induced, caused, or materially contributed to the allegedly false removal or alteration of copyright management information ("**CMI**") under Section 1202. (ECF No. 25 at ¶¶ 215–218). Plaintiffs do not allege that WOW engaged in any affirmative conduct that impacted whether individual internet users removed or altered CMI. *Id.* Plaintiffs allegations are entirely conclusory, and their claim should therefore be dismissed. *See id.*

Third, with respect to alleged vicarious liability as in *Gordon*, Plaintiffs fail to allege any *facts* to show that WOW had either the right or the ability to supervise the creation of these files or the selection of these file names, or that WOW has a financial interest in the alleged alteration or removal of the CMI. (ECF No. 25 at ¶ 219). Plaintiffs have therefore failed to state a claim, even if a party can be held vicariously liable for a Section 1202 violation.

Fourth, Plaintiffs misconstrue WOW's argument in claiming that digital file names can constitute CMI. (ECF No. 42 at 22). WOW did not argue otherwise. Rather, WOW argued—and offered supporting authority—that the file names *at issue in this case* are not CMI because Plaintiffs do not allege that those file names were originally created or distributed by Plaintiffs or anyone acting on their behalf. (ECF No. 35 at 15). Even now, Plaintiffs do not contend otherwise.

Finally, Plaintiffs do not even attempt to respond to WOW's argument that they failed to allege the double scienter required by Section 1202. *See id.* at 16. For the reasons set forth in WOW's Motion, the Court should dismiss Plaintiffs' Count IV for failure to state a claim.

12

**VI.     Plaintiffs fail to identify any authority for injunctive relief as anything more than a remedy, not a cause of action.**

Plaintiffs contend that they are seeking an injunction under 17 U.S.C. § 512(j), and not under this Court's equitable powers. Regardless of the source of the relief for this requested remedy, it is not a separate cause of action, but only a type of relief to be awarded after proving infringement. *See* 17 U.S.C. § 512(j)(1) ("Scope of Relief"). The Court should therefore dismiss Plaintiffs' Count III for failure to state a claim under Rule 12(b)(6).

## CONCLUSION

While Plaintiffs request leave to amend, Plaintiffs do not offer any justification for a second attempt at amendment and do not explain what additional facts they could or would offer in a further amended complaint. Accordingly, the Court should dismiss Plaintiffs' claims against WOW under Rule 12(b)(6) with prejudice.

Dated: December 15, 2021                                    Respectfully submitted,


By: */s/ Zachary C. Howenstine*
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Angela B. Kennedy
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
zhowenstine@atllp.com
mszewczyk@atllp.com
akennedy@atllp.com

*Attorneys for WideOpenWest Finance, LLC*

13

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15, 2021, I caused a copy of the foregoing to be served upon all counsel of record via ECF notification.

By:  */s/ Zachary C. Howenstine*