**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| AFTER II MOVIE, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:21-cv-01901-DDD-MEH |
| ) | |
| vs. ) | |
| ) | |
| WIDEOPENWEST FINANCE, LLC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**RESPONSE TO PLAINTIFFS' MOTION FOR ORDER OVERRULING OBJECTIONS
AND COMPELLING DEFENDANT TO PROVIDE SUBSCRIBER INFORMATION**

Defendant WideOpenWest Finance, LLC ("WOW" or "Defendant") is subject to the Cable Act, 47 U.S.C. § 551, which prohibits WOW from disclosing personal information about its subscribers pursuant to a court order without first giving them notice of that order. Accordingly, WOW has objected to the disclosure of personal information of subscribers to whom WOW has been unable to deliver such notice by certified mail, as described in WOW's October 6, 2022 Objection (ECF No. 115) (hereinafter, "WOW's Objection").

In their Motion, Plaintiffs suggest that WOW's Cable Act obligations are satisfied by sending notice, without any confirmation of receipt, to a subscriber's last known address. As detailed below, Plaintiffs' position is inconsistent with the plain language of the Cable Act, its legislative history, and the case law interpreting the statute. The Court should therefore sustain WOW's objections to the disclosure of subscriber personal information for the IP addresses identified in WOW's Objection.

**I.  THE CABLE ACT REQUIRES ACTUAL NOTICE OF A COURT ORDER**

Plaintiffs' motion presents a novel question of law: whether "actual" notice is required under Section 551(c)(2)(B) of the Cable Act. The Cable Act provides that a cable operator may

only disclose personal information pursuant to a court order "**if the subscriber is notified** of such order by the person to whom the order is directed." 47 U.S.C. 551(c)(2)(B) (emphasis added).

The applicable authority all leads to the same conclusion: that this provision requires giving subscribers actual notice.

### A. The Plain Language of the Statute Requires Actual Notice.

In interpreting statutory language, courts begin by examining the statute's plain language. *United States v. Manning*, 526 F.3d 611, 614 (10th Cir. 2008). "If the statutory language is clear, our analysis ordinarily ends." *Id.* (*citing Edwards v. Valdez*, 789 F.2d 1477, 1481 (10th Cir. 1986) ("It is a well established law of statutory construction that, absent ambiguity or irrational result, the literal language of a statute controls.")). A plain language analysis examines "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Ceco Concrete Const., LLC v. Centennial State Carpenters Pension Tr.*, 821 F.3d 1250, 1258 (10th Cir. 2016).

The plain language of the Act makes disclosure of personal information pursuant to a court order *conditional* on subscriber notification, only authorizing disclosure "**if**" the subscriber is notified. 47 U.S.C. 551(c)(2)(B) (emphasis added). In the context of the broader statute, the notification appears designed to provide subscribers with (1) knowledge related to the use of their personal information and (2) the opportunity to object or otherwise challenge the disclosure of their personal information.

Courts have interpreted the plain language of similar provisions to require actual notice. For example, in *Lacy v. Chrysler Corporation*, the United States Court of Appeals for the Eighth Circuit interpreted the following statutory language to require actual notice:

> If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission . . . the Commission . . . **shall so notify the person aggrieved** and

2

> within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge[.]

42 U.S.C. § 2000e-5 (emphasis added) (cited by *Lacy v. Chrysler Corp.*, 533 F.2d 353, 363 (8th Cir. 1976)).

Similarly, in *McFarlane v. Secretary of Air Force*, a district court interpreted the following language to require actual notice: "If a person makes an election under this paragraph . . . the person's spouse **shall be notified** of that election." 10 U.S.C. § 1448(a)(6)(C) (1992) (emphasis added) (cited by *McFarlane v. Sec'y of Air Force*, 867 F. Supp. 405, 408 (E.D. Va. 1994)); *see also Michael DiPeppino, Inc. v. Comm'r of Internal Revenue*, 83 T.C. 979, 985 (1984) (construing 26 U.S.C. § 6212(a) to require actual notice, because "Congress's intent in drafting section 6212(a) was to ensure that the taxpayer had actual notice of a deficiency determination so that he would have sufficient time to petition this Court.").

Treatises regarding legal notice confirm that this is the standard interpretation of a statutory provision requiring the giving of notice. 66 C.J.S. Notice § 17 (2022) ("Where a statute uses language requiring the giving of notice and does not specify a means, **receipt of the notice is necessary**.") (emphasis added); 58 Am. Jur. 2d Notice § 9 (2022) ("Where a statute requires notice to be given, but does not specify the type of notice, **actual personal notice is required**") (emphasis added).

Accordingly, the Court's analysis can end here: based on the plain language of the statutory text, a subscriber must receive actual notice before a cable operator can disclose the subscriber's personal information.

### B.  The Legislative History Confirms that Actual Notice Is Required.

While not necessary for the Court's analysis, the legislative history of the Cable Act reinforces the conclusion that actual notice is required. *See Manning*, 526 F.3d at 614 ("If the

3

statute's plain language is ambiguous as to Congressional intent, we look to the legislative history and the underlying public policy of the statute.") (citations omitted).

Specifically, Senator Fritz Hollings of the Senate Commerce Committee explained in a 1983 hearing that the proposed privacy provisions of the Cable Act were designed to "make[] a cable subscriber aware of how information is going to be used or disclosed to others and **that it be done with his knowledge**." 129 Cong. Rec. S8321 (June 14, 1983) (emphasis added).

Similarly, the House Report on the subsequent version of the bill incorporating the same provisions, which was ultimately enacted, explained that "Subsection (c) limits the disclosure of personally identifiable information collected by a cable operator to those situations . . . where required by court order, **provided that the subscriber has been notified of the disclosure** and the court order meets the requirements of subsection (h)." H. Rep. No. 98-934, 98th Cong., 2d Sess. (August 1, 1984) at p. 77 (emphasis added).

The Congressional Record reflects that "it is important that subscribers have some rights on what information is acquired and how it is disseminated," 128 Cong. Rec. S4083 (Apr. 27, 1982) and that the development of technology "should not impact adversely upon the privacy of the individual." S. Rep. No. 98-67, 98th Cong., 1st Sess. (April 27, 1983) at p. 27. Requiring actual notice is therefore consistent with Congress's expressed intent.

### C. The Case Law Indicates that Actual Notice Is Required.

In *Parker v. Time Warner Ent. Co., L.P.*, the U.S. District Court for the Eastern District of New York indicated that the Cable Act requires actual notice:

> This is a result that the defendant could accomplish only with either the express consent of the customer or by **providing the customer with an opportunity to object**. 47 U.S.C. § 551(c). . . . Since one of the primary purposes of the notice requirement is to enable the customer to make an informed decision, it is entirely reasonable to require the cable service provider to give the subscriber notice that it is combining information that is obtained directly from the subscriber with

4

> information that it is collecting from third parties, and marketing that enhanced database. **Such notice is obviously relevant to the exercise by the customer of his right to veto the release of the information obtained through the provider-subscriber relationship.**

No. 98-cv-4265-ERK, 1999 WL 1132463, at *5 (E.D.N.Y. Nov. 8, 1999) (emphasis added). Other cases discussing the notice requirement in 551(c) likewise characterize it as "actual" notice or "service" of notice. *See, e.g.*, *Jackson v. Caribbean Cruise Line, Inc.*, No. 2:14-cv-2485, 2014 WL 6474832, at *2 (E.D.N.Y. Nov. 19, 2014) ("The Court Order must allow Cablevision at least 5 additional business days to **serve** notice upon the subscriber and to comply with the Order.") (emphasis added); *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. 1:08-mc-347, 2010 WL 2219343, at *4 (E.D.N.Y. Feb. 5, 2010), report and recommendation adopted in part, 2010 WL 1686811 (E.D.N.Y. Apr. 26, 2010) (discussing when the subscriber received actual notice).[1]

In contrast, in the cases cited by Plaintiffs, whether the Cable Act requires actual notice was not a disputed issue. *See* Pls.' Omnibus Mot. for Order Overruling Objections (ECF No. 121) ("Pls.' Mot."), ¶ 24. As detailed above, Plaintiffs' position is inconsistent with the text of the statute and its legislative history. The purpose of section 511(c)(2)(B) is to protect subscribers' privacy. Requiring WOW to disclose the personal information of subscribers it has been unable to notify—for example, because the certified mailing was returned as nondeliverable—is contrary to that purpose.

---

[1] WOW notes that it clearly has standing to raise these objections, which it is raising on its own behalf and not on behalf of its subscribers. WOW's objections are based on its own obligations under the Cable Act. WOW is not purporting to assert any right or argument that belongs to a current or former WOW subscriber, and the standing issue is therefore irrelevant.

### D. The Court Should Sustain WOW's Objections and Deny Plaintiffs' Request for Sanctions.

Under the circumstances, Plaintiffs' request for attorneys' fees is meritless and inappropriate. Plaintiffs have not offered any authority from a contested case holding that section 511(c)(2)(B) of the Cable Act does not require actual notice to affected subscribers. Again, the plain language of the statute and the legislative history support WOW's position, as does the case law cited above. In the parties' meet and confer, WOW asked Plaintiffs to provide authority supporting their interpretation of the statute, and they declined to discuss the matter.

For the reasons set forth above, the Court should sustain WOW's Objection. But even if the Court were to agree with Plaintiffs' interpretation of the Cable Act, there are no circumstances here that warrant an award of attorneys' fees to Plaintiffs. Indeed, prior to filing their Motion, Plaintiffs never claimed that WOW's position was frivolous or otherwise indicated any intention to seek sanctions. At a minimum, whether the Cable Act requires actual notice to subscribers is an unsettled area of the law, and WOW has acted prudently by taking a conservative, sensible approach to the Act's notice requirement.

### II. WOW HAS RECEIVED TWO UPDATES REGARDING DELIVERY

Since filing its Objection, WOW has received two updates regarding the status of subscribers' whose notification status was uncertain:

| Customer IP Address | Most Recent Status Update[2] |
|---|---|
| 64.53.214.165 | USPS has requested that delivery be rescheduled. |
| 24.192.139.197 & 24.192.145.44 & 69.14.73.145 | "Your item could not be delivered on November 23, 2022 at 1:19 pm in TROY, MI 48099. It was held for the required number of days and is being returned to the sender." |

---

[2]   This was the most recent status available as of December 1, 2022.

In all other respects, the status of deliveries for these subscribers remains the same. (ECF No. 115 at pp. 9–11).

To date, WOW has sent all notifications to subscribers via certified mail, because that is the most reasonable and cost-effective way to confirm that the subscriber has actually received the notice. However, WOW could alternatively attempt notification by email for subscribers for whom WOW has an email address on file. To date, WOW has not attempted notification by email because there is no way to confirm receipt unless the subscriber responds.

### III.  PLAINTIFFS' MOTION TO COMPEL ADDITIONAL INFORMATION IS PREMATURE

In their Motion, Plaintiffs seek an order compelling "further information concerning the issues that made subscriber identification data unavailable." *See* Pls.' Mot., ¶¶ 29-34. Plaintiffs have never asked WOW for additional information regarding the issues that have made some subscriber information unavailable. Plaintiffs also did not raise this issue during the parties' conference in October 2022, which preceded the filing of their Motion. Accordingly, pursuant to Fed. R. Civ. P. 37(a)(1) and Local Rule 7.1(a), Plaintiffs' motion to compel this information should be denied.[3]

### IV.  CONCLUSION

For these reasons, WOW respectfully requests that the Court sustain WOW's Objection (ECF No. 115) to the disclosure of personal information of subscribers to whom WOW was unable to deliver actual notice of the Court's January 19, 2022 Order (ECF No. 56), that Plaintiff's

---

[3] WOW is willing to provide additional details to explain the data gaps, but as WOW noted in its Objection, even after investigation, some of these data gaps may remain unexplained. *See* ECF No. 115-1 at ¶ 8(e). Counsel for Plaintiffs should contact WOW's counsel if they wish to obtain more information on this subject.

7

Omnibus Motion (ECF No. 121) be denied, including Plaintiffs' request for sanctions, and for such further and additional relief as the Court deems proper under the circumstances.

Dated: December 2, 2022                    Respectfully submitted,

                                          By: */s/ Zachary C. Howenstine*
                                          Richard L. Brophy
                                          Zachary C. Howenstine
                                          Angela B. Kennedy
                                          ARMSTRONG TEASDALE LLP
                                          7700 Forsyth Blvd., Suite 1800
                                          St. Louis, Missouri 63105
                                          (314) 621–5070
                                          rbrophy@atllp.com
                                          zhowenstine@atllp.com
                                          akennedy@atllp.com
                                          *Attorneys for Objector*

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I caused a copy of the foregoing to be served upon all counsel of record via email.

                                          By:   */s/ Zachary C. Howenstine*