**Exhibit "B"**

```
                                                                  1


1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLORADO
2
     Case No. 21-cv-01901-DDD-MEH
3    _____

4    AFTER II MOVIE, LLC, et al.,

5         Plaintiffs,

6    vs.

7    WIDEOPENWEST FINANCE, et al.,

8         Defendants.
     _____
9

10            Proceedings before MICHAEL E. HEGARTY, United

11   States Magistrate Judge, United States District Court for

12   the District of Colorado, commencing at 10:35 a.m., June 28,

13   2023, in the United States Courthouse, Denver, Colorado.

14   _____

15            WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS

16   ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED. . .

17   _____

18                             APPEARANCES

19            KERRY CULPEPPER, Attorney at Law, appearing for

20   the Plaintiff.

21            ZACHARY HOWENSTINE, Attorney at Law, appearing

22   for the Defendant.

23   _____

24                        DISCOVERY CONFERENCE

25
```

1   defendant our evidence that these infringements started in
2   2015 at the later.
3           THE COURT:  Okay.  Let me hear from the defense,
4   please.
5           MR. HOWENSTINE:  Thank you, Your Honor.  If I
6   could sort of set the stage for some of this.
7           THE COURT:  Okay.
8           MR. HOWENSTINE:  Your Honor presided over the
9   copyright case brought by the record labels against Charter.
10  This -- you know, in terms of the theory of the case, this
11  is -- this is a similar case.  By agreement of the parties,
12  we are currently conducting discovery only about WOW's DMCA
13  corporate events, whether it implemented a sufficient policy
14  for terminating accused repeat infringers.
15          THE COURT:  Is that the safe harbor defense?
16          MR. HOWENSTINE:  That's the safe harbor defense.
17  So presumptively, there is a three-year statute of
18  limitations for these claims.  As Mr. Culpepper said, the
19  complaint was filed in July 2021, so unless plaintiffs prove
20  some sort of tolling, the period -- the relevant time period
21  in this case is three years back from the filing of the
22  complaint.
23          Now, WOW implemented its current DMCA system in
24  February of 2018.  This is a largely automated system.  It's
25  one of these graduated response systems in which, you know,

7

1  complaints come in and pop-ups are sent on browsers to
2  subscribers, calls are made, letters are sent, and if
3  complaints continue to be received, ultimately a subscriber
4  is terminated.
5       As I said, it's largely automated.  We are
6  producing all of the records from this automated system
7  associating complaints with IP addresses, you know, records
8  of when we contacted a subscriber and obviously including
9  records of account terminations of which there were over 600
10 in this time period.
11      And obviously this data --
12      THE COURT:  It's a lot more than Charter did, by
13 the way, I'll tell you that.
14      MR. HOWENSTINE:  And obviously this data also
15 reflects a huge number of subscribers for whom termination
16 never became necessary because the graduated response system
17 worked.
18      THE COURT:  Sure.
19      MR. HOWENSTINE:  We notified them and then the
20 issue stopped.
21      Now, against that backdrop, going to this
22 discovery rule issue, Mr. Culpepper mentioned two entities.
23 He mentioned MEU and he mentioned YTS.
24      MEU is akin to Mark Monitor from the Charter case.
25      THE COURT:  Got it.

8

```
 1              MR. HOWENSTINE:  That is the, quote/unquote,
 2   detection company that, according to the allegations in the
 3   complaint, was hired by the plaintiffs to detect
 4   infringements, to defect file sharing and to generate
 5   notices that would be sent to WOW and others.  They hired
 6   them, it's their agent.
 7              So the idea that they could disclaim knowledge of
 8   what MEU was detecting, oh, we didn't find out about this
 9   until 2020, we don't think there is any basis for that,
10   because WOW was doing this at their direction.  They were
11   hired for this purpose.
12              Now separately, because of that issue, I think,
13   Mr. Culpepper is now emphasizing YTS.  YTS plays a different
14   role here.  YTS is one of these operators of torrent
15   websites, like a -- like a Pirate Bay, which you may have
16   heard of, which is where people go to download these torrent
17   files that then allow them to use BitTorrent to find things.
18              The idea that the YTS was necessary to this
19   lawsuit being filed, I think, Your Honor, is a complaint red
20   herring.  First and foremost, because if you look at that
21   YTS material that was attached to the complaint, which is,
22   as I said, as Mr. Culpepper said, very heavily redacted, it
23   only relates to five of the works in suit and it only
24   relates to nine IP addresses.
25              And the claims that the plaintiffs are pursuing in
```

9

1  this case are far, far broader than that.  And I don't think
2  Mr. Culpepper would say, I don't think the plaintiffs would
3  say that they need the YTS evidence to prove any underlying
4  incidents of direct infringement, because I think they would
5  say is they have to, but that detection, that actual file
6  sharing, to the extent that evidence exists, is based on the
7  MEU detection.
8         So what we have here is on its face  claims any
9  pre-2018 on its face is time barred.  There -- there is no
10 actual evidence and no allegation in the complaint that
11 would support the idea that the plaintiffs acting as
12 reasonably prudent people would not have discovered this
13 information until some later point in time.
14         All we have to rely on for that point is
15 Mr. Culpepper and plaintiffs essentially saying that in
16 papers.  There is no evidence of it.
17         THE COURT:  As long as they have a nonfrivolous
18 argument about the potential relevance and materiality of
19 documents beginning in 2015, it's not really appropriate at
20 this stage of the case for me to decide dispositively they
21 can't possibly recover for that time period, because that --
22 that's in the nature of a motion for summary judgment and a
23 discovery issue.
24         So generally the way I think a judge should
25 proceed who is presiding over the discovery dispute, if

52

1       MR. HOWENSTINE:  We really appreciate your time,
2   Your Honor.  Thank you.
3       THE COURT:  Thank you.  You traveled today to come
4   here, I assume?
5       MR. HOWENSTINE:  We have some other business here
6   as well.
7       THE COURT:  Very good.  So I'm not that important,
8   I guess.  All right, take care.
9       (Whereupon, the within hearing concluded at 11:45
10  a.m.)
11
12                   TRANSCRIBER'S CERTIFICATE
13       I certify that the foregoing is a correct
14  transcript, to the best of my knowledge and belief (pursuant
15  to the quality of the recording) from the record of
16  proceedings in the above-entitled matter.
17
18  /s/Dyann Labo                       July 5, 2023
19  Signature of Transcriber            Date
20
21
22
23
24
25