# Exhibit "A"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| AFTER II MOVIE, LLC, et al., | ) |
| Plaintiffs, | ) Case No. 1:21-cv-01901-DDD-MEH |
| vs. | ) |
| WIDEOPENWEST FINANCE, LLC., | ) |
| Defendant. | ) |

## DEFENDANT'S AMENDED OBJECTIONS AND RESPONSES TO PLAINTIFFS' FIRST REQUESTS FOR ADMISSIONS

Defendant WideOpenWest, LLC ("WOW"), pursuant to Federal Rule of Civil Procedure 36, by and through the undersigned counsel, hereby provides its amended objections and responses to certain of Plaintiffs' First Requests for Admission and Amended Requests for Admission Nos. 38-41:

**Request for Admission No. 1.** Admit that each of the following documents produced by WOW are true and correct copies of documents created by WOW:

WOW000002-WOW000144

**RESPONSE: Admitted. WOW does not admit that any of WOW000002-WOW000144 are admissible at trial.**

**Request for Admission No. 2.** Admit that each of the following documents produced by WOW are accurate and complete records of all actions taken by WOW:

WOW000002-WOW000144

**RESPONSE: Admitted that WOW000002-WOW000144 are accurate and complete records produced by WOW based on available system data. Denied that these are records "of all actions taken by WOW," as that phrase is overbroad, vague, and ambiguous. Further, WOW does not admit that any of WOW000002-WOW000144 are admissible at trial.**

**Request for Admission No. 3.** Separately for each of the following documents, admit that each such document, attached as exhibits to these Requests, is a true and correct copy of a document created by WOW, and that each such document is what it is described to be.

1

| Exhibit No. | Description |
|---|---|
| 1 | WOW's privacy policy effective May 12, 2021 |
| 2 | WOW's network management practices effective May 3, 2023 |
| 3 | WOW's network management practices effective Oct. 1, 2022 |
| 4 | WOW's residential terms of service effective April 27, 2021. |
| 5 | WOW's commercial acceptable use policy effective Mar. 2, 2022 |
| 6 | Letter dated Aug. 8, 2008 from Knology, Inc. to the US House of Representatives |

**RESPONSE: WOW objects to this request for admission as compound, and requiring WOW to verify documents it has not produced and that have not been requested in this case. WOW admits that the privacy policy, network management practices, residential terms of service, and commercial acceptable use policy (Exhibits 1-5) are true and accurate copies of documents published by WOW, though WOW does not admit that these documents are copies of the operative policies that were in force at all times relevant to this lawsuit, or that these copies are otherwise admissible at trial. WOW objects to this request as it relates to the document attached as Exhibit 6, because this document predates the discoverable time period in this case by six years. Based on this objection, WOW will not and cannot admit or deny this request at this time.**

**Request for Admission No. 4.** Admit that there is at least one subscriber for whom WOW did not immediately terminate service even after WOW received more than 1000 notices for the subscriber.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers over a period of three years. WOW also objects to this request as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. Subject to these objections, WOW admits that there is at least one subscriber about whose account WOW has received more than 1,000 notices without "immediately" (using Plaintiffs' definition of the term) terminating service, because WOW's DMCA policy results in termination based on the number of "violations" (i.e., days with at least one notice) associated with the subscriber's account, and WOW may receive many notices about the same account in one day, as well as duplicate and repeat notices. WOW denies that any subscribers have had a violation count of more than 1,000.**

**Request for Admission No. 5.** Admit that there is at least one subscriber for whom WOW received more than 1000 total violations for the subscriber and as of July 13, 2021 WOW had not terminated the subscriber's service.

2

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that at least one subscriber received more than 1,000 "total violations" as that term is used in WOW000144 and that WOW had not terminated internet service to that subscriber as of July 13, 2021. The subscriber did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated as of July 13, 2021. WOW denies that any subscribers had a violation count of more than 1,000.

**Request for Admission No. 6.**     Admit that there are multiple subscribers for each of whom WOW received more than 1000 total violations, and WOW did not immediately terminate service for each of the multiple subscribers.

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an unknown date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that there is more than one subscriber who received more than 1,000 "total violations" as that term is used in WOW000144 and to whom WOW did not "immediately" (as that term is defined by Plaintiffs) terminate internet service. These subscribers did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated "immediately" (as that term is defined by Plaintiffs). WOW denies that any subscribers have had a violation count of more than 1,000.

3

**Request for Admission No. 7.** Admit that there are multiple subscribers for each of whom WOW received more than 1000 total violations, and WOW did not terminate service for any of the multiple subscribers as of Jan. 14, 2020.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that there is more than one subscriber who received more than 1,000 "total violations" as that term is used in WOW000144 and to whom WOW did not terminate internet service as of January 14, 2020. These subscribers did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated as of January 14, 2020. WOW denies that any subscribers had a violation count of more than 1,000 as of January 14, 2020.**

**Request for Admission No. 8.** Admit that there are at least 70 subscribers for whom WOW received more than 1000 total violations for each of the at least 70 subscribers, and WOW did not immediately terminate service for any of the at least 70 subscribers.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers over a period of three years. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that approximately 70 subscribers received more than 1,000 "total violations" as that term is used in WOW000144, and WOW denies that**

4

WOW did not "immediately" (as that term is defined by Plaintiffs) terminate internet service to any of them. WOW further denies that any subscribers have had a violation count of more than 1,000.

**Request for Admission No. 9.** Admit that there are at least 20 subscribers for whom WOW received more than 2000 total violations for each of the at least 20 subscribers, and WOW did not immediately terminate service for any of the at least 20 subscribers.

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers over a period of three years. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that approximately 20 subscribers received more than 2,000 "total violations" as that term is used in WOW000144, and WOW denies that WOW did not "immediately" (as that term is defined by Plaintiffs) terminate internet service to any of them. WOW further denies that any subscribers have had a violation count of more than 2,000.

**Request for Admission No. 10.** Admit that there are at least 30 subscribers for whom WOW received more than 2000 total violations for each of the at least 30 subscribers, and WOW did not immediately terminate service for any of the at least 30 subscribers.

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers over a period of three years. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour

5

period. *See* WOW000017. WOW denies that 30 or more subscribers have received 2,000 or more "total violations" as that term is used in WOW000144. WOW further denies that WOW did not "immediately" (as that term is defined by Plaintiffs) terminate service to any of them. WOW also denies that any subscribers have had a violation count of more than 2,000.

**Request for Admission No. 11.**   Admit that there are at least 15 subscribers for whom WOW received more than 3000 total violations for each of the at least 15 subscribers, and WOW did not terminate service for any of the at least 15 subscribers as of Jan. 14, 2020.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation.** *See* **WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period.** *See* **WOW000017. WOW admits that approximately 15 subscribers have received 3,000 or more "total violations" as that term is used in WOW000144. WOW denies that WOW did not terminate internet service to any of them as of January 14, 2020. WOW further denies that any subscribers have had a violation count of more than 3,000.**

**Request for Admission No. 12.**   Admit that there are at least 10 subscribers for whom WOW received more than 4000 total violations for each of the 10 subscribers, and WOW did not terminate service for any of the 10 subscribers as of Jan. 14, 2020.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation.** *See* **WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without**

6

accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that no more than 10 subscribers have received 4,000 or more "total violations" as that term is used in WOW000144 and that WOW had not terminate their internet service as of January 14, 2020. As of January 14, 2020, these subscribers did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated. WOW further denies that any subscribers have had a violation count of more than 4,000.

**Request for Admission No. 13.**    Admit that there are at least 6 subscribers for which WOW received more than 6000 total violations for each of the at least 6 subscribers, and WOW did not terminate service for any of the at least 6 subscribers as of Jan. 14, 2020.

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation. *See* WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* WOW000017. WOW admits that no more than six subscribers have received 6,000 or more "total violations" as that term is used in WOW000144 and that WOW had not terminate their internet service as of January 14, 2020. As of January 14, 2020, these subscribers did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated. WOW denies that any subscribers have had a violation count of more than 6,000.

**Request for Admission No. 14.**    Admit that there are at least 3 subscribers for whom WOW received more than 10,000 total violations for each of the at least 3 subscribers, and WOW did not terminate service for any of the at least 3 subscribers as of Jan. 14, 2020.

**RESPONSE:** WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. It would also impose an undue burden and expense on WOW to correlate notices to violations (pursuant to WOW's DMCA tiering procedures) for all affected subscribers over a three-year period, and then

7

**compare this data to dates on which subscribers were terminated. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation.** *See* **WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period.** *See* **WOW000017. WOW admits that no more than three subscribers have received 10,000 or more "total violations" as that term is used in WOW000144 and that WOW had not terminate their internet service as of January 14, 2020. As of January 14, 2020, these subscribers did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated. WOW denies that any subscribers have had a violation count of more than 10,000.**

**Request for Admission No. 15.**   Admit that there is a subscriber for whom WOW received more than 24,400 total violations for the subscriber and as of Jan. 14, 2020 WOW had not terminated the subscriber's service.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally notices for each one of its thousands of customers as of an arbitrary date in time. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation.** *See* **WOW000017. The "total_violations" column, on the other hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period.** *See* **WOW000017. WOW admits that there is one subscriber who received more than 24,400 "total violations" as that term is used in WOW000144 and that WOW had not terminate their internet service as of January 14, 2020. As of January 14, 2020, this subscriber did not reach a termination milestone based on "violation count" as that term is used in WOW000144 (as further explained in WOW000017), and so their internet service was not terminated. WOW denies that any subscribers have had a violation count of more than 20,000.**

**Request for Admission No. 16.**   Referring to WOW000144, admit that WOW did not immediately terminate the service of the subscriber with Account Number 10061317 having zip code 48854-1353 even after WOW received over 20,000 total violations for this subscriber.

**RESPONSE: WOW objects to this request as the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. WOW also objects to this request as the term "total violations" as used by Plaintiffs is vague, ambiguous, misleading, and inaccurate. The term "violations" is used in two different ways in WOW000144. The "violation_count" column refers to the total number of violations after system aggregation.** *See* **WOW000017. The "total_violations" column, on the other**

8

hand, reflects the total number of notices ever received for a particular subscriber, without accounting for duplicate or repeat notices or notices that were received in the same 24-hour period. *See* **WOW000017. WOW admits that the subscriber with Account Number 10061317 has not been terminated because this subscriber only has a violation count of 20. WOW denies that any subscribers have had a violation count of more than 20,000.**

**Request for Admission No. 17.** Referring to WOW000108, admit that WOW did not immediately terminate the service of subscribers with following Account Numbers even though these subscribers reached Tier 4 Termination milestone (21):
    15169656
    14848564 – Breezeline
    ASTOUND-15253745
    BREEZELINE-13807571
    BREEZELINE-13837194
    BREEZELINE-14630508
    BREEZELINE-14690883
    BREEZELINE-15274614
    BREEZELINE-18161883
    BREEZELINE-18169536
    BREEZELINE-18177813

**RESPONSE: WOW objects to this request as compound, and to the extent the term "immediately" as defined by Plaintiffs in their requests is vague, ambiguous, misleading, and inaccurate. WOW denies that these subscribers reached the Tier 4 Termination milestone while they were WOW customers. The subscribers at each of the identified account numbers were noted as "on hold" in WOW00108 because WOW received one or more notices for the account after the account was sold in a market sale and WOW no longer serviced it. Specifically, the Account Number identified in the request as "ASTOUND-15253475" moved to Astound as part of a market sale. WOW has forwarded any notices for this account to Astound. The remaining Account Numbers moved to Breezeline as part of a market sale, and WOW has forwarded any notices for these accounts to Breezeline. WOW has continued to log these notices as part of its automated process.**

**Request for Admission No. 18.** Referring to WOW000108, admit that WOW did not immediately terminate the service of the subscriber with Account Number 15089425 even though this subscriber reached the termination milestone (21).

**RESPONSE: WOW denies this request for admission in that this subscriber's violation count is only 20.** *See* **WOW000144.**

**Request for Admission No. 19.** Referring to WOW000108, admit that WOW did not immediately terminate the service of the subscribers with following Account Numbers even though these subscribers reached the termination milestone (21):
    14540675
    14570596

9

11981695

**RESPONSE: WOW objects to this request as compound. Subject to and notwithstanding this objection, WOW denies this request for admission in that each of these subscribers' violation counts are only 20.** *See* **WOW000144.**

**Request for Admission No. 20.**   Admit that from Feb. 5, 2018 through Jan. 13, 2020, WOW did not process notices received for over 55,000 IP addresses as violations that would count toward any subscriber's violation count.

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome and not proportional to the needs of the case as it purports to require WOW to tally tens of thousands of emails over a period of two years with reference to 55,000 unknown "IP addresses." WOW also objects to this request as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous, and as it is unknown whether the 55,000 "IP addresses" referred to in the request are IP addresses assigned to any WOW subscribers. Subject to these objections, and to the extent the request is understood, WOW denies the request. WOW states that from February 5, 2018, through January 13, 2020, pursuant to the procedures and requirements of WOW's then-existing policy under 17 U.S.C. § 512(i)(1)(A) (as described in response to Plaintiffs' Interrogatory No. 1), WOW was actively processing copyright infringement allegations received by email.**

**Request for Admission No. 21.**   Admit that WOW did not categorize subscribers into a violation tier over 15,000 times because of "Cable Medic Issue".

**RESPONSE: Denied.**

**Request for Admission No. 22.**   Admit that from Jan. 9, 2020 through April 12, 2020, WOW was unable to find a record with cable medic for over 11,750 violations.

**RESPONSE: Denied.**

**Request for Admission No. 23.**   Admit that from May 29, 2020 through Sept. 16, 2020, WOW was unable to find a record with cable medic for over 5,400 violations.

**RESPONSE: Denied.**

**Request for Admission No. 24.**   Admit that from Jun. 25, 2021 through Dec. 12, 2021, WOW was unable to find a record with cable medic for over 1545 violations.

**RESPONSE: Denied.**

**Request for Admission No. 25.**   Admit that from Dec. 29, 2021 through Aug. 23, 2022, WOW was unable to find a record with cable medic for over 3302 violations.

**RESPONSE: Denied.**

10

**Request for Admission No. 26.** Admit that when WOW is unable to find a record with cable medic for a violation, the violation is not counted towards the violation count against any subscriber.

**RESPONSE: Denied.**

**Request for Admission No. 27.** Admit that prior to July 13, 2021, WOW never sent a communication to Copyright Management Services Ltd ("CMS") asserting that a notice sent by CMS was not compliant.

**RESPONSE: WOW objects to this request as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. WOW further objects as the term "not compliant" is undefined, vague, and ambiguous. Subject to its objections, and to the extent the request is understood, WOW admits that the first communication it sent to CMS advising that a notice did not comply either with WOW's DMCA Policy and Procedure or with Automated Copyright Notice System ("ACNS") formatting requirements was after July 13, 2021. ACNS is an XML-based language that is open source and widely used for handling copyright notices. WOW, like many other entities that receive a large volume of copyright notices, uses ACNS to process these notices. The vast majority of copyright notices that WOW receives are compliant with WOW's DMCA Policy and Procedure and are submitted in ACNS format.**

**Request for Admission No. 28.** Admit that prior to July 13, 2021, WOW never sent a communication to PML Process Management Ltd. ("PML") asserting that a notice sent by PML was not compliant.

**RESPONSE: WOW objects to this request as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. WOW further objects as the term "not compliant" is undefined, vague, and ambiguous. Subject to its objections, and to the extent the request is understood, WOW admits that the first communication it sent to PML advising that a notice did not comply either with WOW's DMCA Policy and Procedure or with Automated Copyright Notice System ("ACNS") formatting requirements was after July 13, 2021. ACNS is an XML-based language that is open source and widely used for handling copyright notices. WOW, like many other entities that receive a large volume of copyright notices, uses ACNS to process these notices. The vast majority of copyright notices that WOW receives are compliant with WOW's DMCA Policy and Procedure and are submitted in ACNS format.**

**Request for Admission No. 29.** Admit that prior to July 13, 2021, WOW never sent a communication to Irdeto asserting that notice sent by Irdeto on behalf of Screen Media Ventures, LLC was not compliant.

**RESPONSE: WOW objects to this request as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. WOW further objects as the term "not compliant" is undefined, vague, and ambiguous. Subject to its objections, and to the extent the request**

11

**is understood, WOW admits that the first communication it sent to Irdeto advising that a notice did not comply either with WOW's DMCA Policy and Procedure or with Automated Copyright Notice System ("ACNS") formatting requirements was after July 13, 2021. ACNS is an XML-based language that is open source and widely used by copyright holders to submit notices. WOW, like many other entities that receive a large volume of copyright notices, uses ACNS to process these notices. The vast majority of copyright notices that WOW receives are compliant with WOW's DMCA Policy and Procedure and are submitted in ACNS format.**

**Request for Admission No. 30.** Admit that WOW identifies and restricts certain content that its subscribers receive over WOW's service.

**RESPONSE: Denied.**

**Request for Admission No. 31.** Admit that WOW blocks its subscribers from accessing content from certain websites.

**RESPONSE: Denied.**

**Request for Admission No. 32.** Admit that WOW stores packets intended for subscribers on servers under its control to monitor the network.

**RESPONSE: Denied.**

**Request for Admission No. 33.** Admit that WOW engages in Network-Based Application Recognition ("NBAR") to monitor subscriber bandwidth usage.

**RESPONSE: Denied.**

**Request for Admission No. 34.** Admit that WOW inspects packets intended for subscribers to monitor the network.

**RESPONSE: Denied.**

**Request for Admission No. 35.** Admit that WOW has engaged in deep packet inspection of packets intended for subscribers since January 1, 2008.

**RESPONSE: Denied.**

**Request for Admission No. 36.** Admit that WOW has allowed a third-party to engage in deep packet inspection of packets intended for subscribers since January 1, 2008.

**RESPONSE: Denied.**

**Request for Admission No. 37.** Admit that the communications in WOW000145 are true and correct copies of communications received by Defendant.

**RESPONSE: Admitted. WOW does not admit that any of WOW000145 is admissible at trial.**

**Request for Admission No. 38.** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were being shared by subscribers under file titles including the word "RARBG".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Based on these objections, and specifically because providing an accurate answer would be extremely time-consuming, burdensome, and expensive insofar as it would require WOW to review and verify the content and origin of a huge number of copyright infringement allegations and further attempt to associate individual allegations with customer accounts in existence at the time of the allegation, WOW will not and cannot admit or deny this request for admission.**

**Amended Request for Admission No. 38:** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were allegedly being shared by subscribers under file titles including the word "RARBG".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Subject to these objections, denied.**

**Request for Admission No. 39.** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were being shared by subscribers under file titles including the word "YTS".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Based on these objections, and specifically because providing an accurate answer would be extremely time-consuming, burdensome, and expensive insofar as it would require WOW to review and verify the content and origin of a huge number of copyright infringement allegations and further attempt to associate individual allegations with customer accounts in existence at the time of the allegation, WOW will not and cannot admit or deny this request for admission.**

**Amended Request for Admission No. 39:** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were allegedly being shared by subscribers under file titles including the word "YTS".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Subject to these objections, admitted.**

**Request for Admission No. 40.** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were being shared by subscribers under file titles including the word "STUTTERSHIT".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Based on these objections, and specifically because providing an accurate answer would be extremely time-consuming, burdensome, and expensive insofar as it would require WOW to review and verify the content and origin of a huge number of copyright infringement allegations and further attempt to associate individual allegations with customer accounts in existence at the time of the allegation, WOW will not and cannot admit or deny this request for admission.**

**Amended Request for Admission No. 40:** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were allegedly being shared by subscribers under file titles including the word "STUTTERSHIT".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Subject to these objections, denied.**

**Request for Admission No. 41.** Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were being shared by subscribers under file titles including the word "TGx".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case.**

**Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Based on these objections, and specifically because providing an accurate answer would be extremely time-consuming, burdensome, and expensive insofar as it would require WOW to review and verify the content and origin of a huge number of copyright infringement allegations and further attempt to associate individual allegations with customer accounts in existence at the time of the allegation, WOW will not and cannot admit or deny this request for admission.**

**Amended Request for Admission No. 41:**  Admit that WOW received over ten thousand notices indicating that infringing copies of copyrighted material were allegedly being shared by subscribers under file titles including the word "TGx".

**RESPONSE: WOW objects to this request for admission as overly broad, unduly burdensome, seeking irrelevant information, and not proportional to the needs of the case. Providing an accurate answer to this request would be extremely time-consuming, burdensome, and expensive. WOW further objects to this request for admission as the term "notice" as defined by Plaintiffs in their requests is vague and ambiguous. Subject to these objections, denied.**

**Request for Admission No. 42.**   Admit that in 2019, WOW terminated fewer than 20 subscribers for excessive notice violations.

**RESPONSE: WOW objects to this request for admission as the term "excessive notice violations" is vague and ambiguous. Subject to its objections, and to the extent the request is understood, WOW admits that from January 1, 2019, through December 31, 2019, pursuant to the procedures and requirements of WOW's then-existing policy under 17 U.S.C. § 512(i)(1)(A) (as described in response to Plaintiffs' Interrogatory No. 1), WOW was actively processing copyright infringement allegations received by email, and 19 of WOW's subscribers reached the notice violation milestone requiring termination in this timeframe.** *See* **WOW000120-121. In addition, WOW processed allegations of copyright infringement received during that period that culminated in the permanent disconnection of one or more customer accounts after December 31, 2019.**

**Request for Admission No. 43.**   Admit that WOW did not terminate any subscribers between Aug. 1, 2019 and April 7, 2020 for excessive notice violations.

**AMENDED RESPONSE: WOW objects to this request for admission as the term "excessive notice violations" is vague and ambiguous. Subject to its objections, and to the extent the request is understood, WOW states that from August 1, 2019, through April 7, 2020, pursuant to the procedures and requirements of WOW's then-existing policy under 17 U.S.C. § 512(i)(1)(A) (as described in response to Plaintiffs' Interrogatory No. 1), WOW was actively processing copyright infringement allegations received by email. WOW admits that although no subscriber reached the milestone requiring termination between August 1, 2019 and April 7, 2020,** *see* **WOW000120-121, WOW processed allegations of copyright**

15

**infringement received during that period that culminated in the permanent disconnection of one or more customer accounts after April 7, 2020.**

**Request for Admission No. 44.** Admit that WOW did not publish or otherwise inform its subscribers of the four tiers of its policy.

**RESPONSE: Admitted. WOW informs its subscribers that they may not use their internet service for any unlawful activity, including copyright infringement. Any subscribers who reach a tier under WOW's DMCA policy are informed at each tier that if they receive additional violations, their account will ultimately be terminated. One reason WOW does not publish or otherwise inform its subscribers regarding the specific details of its tiering system is to prevent users of its internet service from attempting to game the system.**

**Request for Admission No. 45.** Admit that WOW did not publish or otherwise inform its subscribers of the violation counts for each of the tiers of its policy.

**RESPONSE: Denied. WOW informs its subscribers that they may not use their internet service for any unlawful activity, including copyright infringement. Any subscribers who reach a tier under WOW's DMCA policy are informed at each tier that if they receive additional violations, their account will ultimately be terminated. WOW does not publish or otherwise inform its subscribers regarding the specific details of the violation counts for each of the tiers of its DMCA policy, except that it informs any subscribers at Tier 3 that a single additional violation count will result in termination of their account. One reason WOW keeps this information confidential is to prevent users of its internet service from attempting to game the system.**

**Request for Admission No. 46.** Admit that the below screenshot accurately reflects part of the contents of a letter WOW's general counsel D. Craig Martin submitted to the US House of Representatives in 2008 in response to a congressional inquiry from the House Energy and Commerce Committee.

16

> For approximately four months (beginning in early March, 2008 and terminating throughout WOW's service areas on July 8, 2008) NebuAd Services (described in further detail in response to Question2) were available to WOW's high speed data ("HSD") customer base of approximately 330,000. Beginning approximately two months prior to this deployment period, an evaluation and testing phase was conducted followed by installation of the NebuAd platform on a region by region basis.
>
> As represented by NebuAd, NebuAd Services use non-personally identifiable information (NPII) to serve targeted Internet advertising to HSD users. Prior to any deployment of the servicer, NebuAd assured WOW that: (i) there would be no collection or use of personally-identifiable information.
>
> Approximately four weeks prior to full commercial deployment of the NebuAd Services, the following notifications were provided: (1) Customer Terms of Service and Internet Privacy Policy were modified; (2) a "Third Party Advertisers" link was added to WOW's website; (3) WOW's online FAQs were updated. [Note- "full" 2-3 months before done to "not full" common areas!]
>
> NebuAd did not track the number of consumers opting out; rather, their reports showed over the course of deployment of the NebuAd Services 3,355 opt-outs, with an indeterminate number of those opt-outs being exercised by the same customer.
>
> "Is it possible for your company to correlate data regarding consumer Internet use across a variety of services or applications you offer to tailor Internet advertising? Do you do so? If not, please indicate what steps you take to make sure such correlation does not happen. If you do engage in such correlation, please provide answers to all the preceding questions with reference to such correlation. If your previous answers already do so, it is sufficient to simply cross-reference those answers."

**AMENDED RESPONSE: WOW objects to this request as referring to an incomplete document that has not been provided to WOW for review. WOW further objects to this request in that it is not relevant to the safe harbor dispute at issue in this phase of discovery or to any other issue in this case. WOW's use or non-use of NebuAd for four months in 2008 has no bearing on WOW's safe harbor defense or any other relevant issue. WOW further objects to this document in that it purports to predate the discoverable time period in this case by six years. Based on these objections, WOW will not and cannot admit or deny this request at this time.**

17

Dated:  April 22, 2024						Respectfully submitted,


							By: */s/ Zachary C. Howenstine*
							Richard L. Brophy
							Zachary C. Howenstine
							Angela B. Kennedy
							Margaret R. Szewczyk
							ARMSTRONG TEASDALE LLP
							7700 Forsyth Blvd., Suite 1800
							St. Louis, Missouri 63105
							(314) 621–5070
							rbrophy@atllp.com
							zhowenstine@atllp.com
							akennedy@atllp.com
							mszewczyk@atllp.com

							Kathryn E. Ford
							ARMSTRONG TEASDALE LLP
							4643 S. Ulster St., Suite 800
							Denver, Colorado 80237
							(720) 200-0676
							kford@atllp.com

							*Attorneys for WideOpenWest Finance, LLC*

18

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2024, I caused a copy of the foregoing to be served upon all counsel of record via email.

By: */s/ Zachary C. Howenstine*
Zachary C. Howenstine

19