IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:21-cv-01901-DDD-MEH

AFTER II MOVIE, LLC;
BADHOUSE STUDIOS, LLC;
BODYGUARD PRODUCTIONS, INC.;
DALLAS BUYERS CLUB, LLC;
LF2 PRODUCTIONS, INC.;
LHF PRODUCTIONS, INC.;
MILLENNIUM FUNDING, INC.;
MILLENNIUM IP, INC.;
MILLENNIUM MEDIA, INC.;
MON, LLC;
NIKOLA PRODUCTIONS, INC.;
OUTPOST PRODUCTIONS, INC.;
PARADOX STUDIOS, LLC;
RAMBO V PRODUCTIONS, INC.;
VENICE PI, LLC;
VOLTAGE HOLDINGS, LLC;
WONDER ONE, LLC;
HITMAN TWO PRODUCTIONS, INC.;
CINELOU FILMS, LLC;
CHASE FILM NEVADA, LLC;
JOLT PRODUCTIONS, INC.;
AFTER PRODUCTIONS, LLC;
AFTER WE FELL PRODUCTIONS, LTD;
TIL PRODUCTIONS, INC.;
THE GUARD PRODUCTIONS, LTD;
AFTER EVER HAPPY PRODUCTIONS, LTD; and
GEORGE L. MILLER, Chapter 7 Trustee of Screen Media Ventures, LLC,

      Plaintiffs,
v.

WIDEOPENWEST FINANCE, LLC,

      Defendant.

**ORDER DENYING MOTION TO DISMISS**

- 1 -

The plaintiffs in this case allege that the defendant internet service provider has committed secondary copyright infringement by allowing its users to download and distribute the plaintiffs' copyrighted motion pictures using its internet service. The defendant moves to dismiss the plaintiffs' Second Amended and Supplemental Complaint. Doc. 213. For the following reasons, the motion is denied.

## BACKGROUND

The following facts are taken from the plaintiffs' Second Amended and Supplemental Complaint, Doc. 211-1,[1] and are accepted as true for the purpose of analyzing the defendant's motion to dismiss.

Plaintiff Screen Media Ventures, LLC[2] owns the copyrights to over 300 motion pictures. Doc. 211-1 ¶ 7; Doc. 211-2. Other plaintiffs own the copyrights to approximately 50 additional motion pictures. Doc. 211-1 ¶ 7; Doc. 211-2. Defendant WideOpenWest Finance, LLC is an internet service provider. Doc. 211-1 ¶ 40. Its users use software such as BitTorrent to download and share the plaintiffs' copyrighted works. Doc. 211-1 ¶¶ 55-112. The complaint includes several examples of instances where WideOpenWest subscribers accessed torrent sites from IP addresses provided by WideOpenWest and downloaded torrent files

---

[1] The operative complaint was originally filed at Doc. 204, but the plaintiffs subsequently filed a Notice of Errata, Doc. 211, and the corrected version of the complaint is found at Doc. 211-1. The complaint also includes multiple exhibits and declarations. Docs. 204-2 to 204-10, 211-2. Though courts typically must not look outside a complaint when deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) motion, documents that a complaint incorporates by reference may be considered. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[2] Screen Media filed for bankruptcy after the operative complaint was filed, and Screen Media's Chapter 7 Trustee, George L. Miller, has been substituted as a plaintiff in its place. Doc. 264.

of the plaintiffs' copyrighted works. *Id.* ¶¶ 74-84. These examples include the dates on which the identified copyrighted works were downloaded by WideOpenWest's users. *E.g.*, Doc. 204-10 (*The Last Full Measure* downloaded on January 25, 2020); Doc. 204-2 at 2-4 (*I Feel Pretty* downloaded on March 13, 2019, *Hellboy* downloaded on July 28, 2019). The operator of a torrent site confirmed the IP addresses used to access his website and download the plaintiffs' works. Doc. 211-1 ¶¶ 101-03; Doc. 204-2. The complaint also includes examples of instances where WideOpenWest subscribers distributed the plaintiffs' copyrighted works over network connections provided by WideOpenWest. Doc. 211-1 ¶¶ 104-12. The plaintiffs engaged the investigation companies Maverickeye UG, Irdeto, and Facterra LLC to identify the IP addresses being used to distribute their copyrighted works. *Id.* ¶¶ 93-100.

WideOpenWest had knowledge that its subscribers were downloading and distributing the plaintiffs' copyrighted works. "[S]ome of the Plaintiffs' agents engaged [Maverickeye] and/or Irdeto to generate Notices of Infringements . . . to be sent to service providers of IP addresses where [Maverickeye] confirmed infringement of copyrighted protected content." *Id.* ¶ 130. "Each Notice included at least the name of the copyright owner, the title of the Work, the manner by which it was infringed, the infringing file name . . . the IP address and port number at wh[ich] infringement was confirmed[,] and the time of infringement." *Id.* ¶ 131; *e.g.*, Doc. 204-3 (Jan. 5, 2020 notice regarding *The Hitman's Bodyguard* owned by Plaintiff Bodyguard Productions, Inc. downloaded without authorization on Jan. 4, 2020 at IP address 75.76.119.141). The plaintiffs' agents have sent over 33,750 notices to WideOpenWest concerning infringement of the plaintiffs' and others' copyrights at over 13,000 of WideOpenWest's IP addresses. Doc. 211-1 ¶¶ 136-45; Doc. 204-4 at 3. For many of the IP addresses, the plaintiffs' agents sent approximately 100 notices each regarding infringements observed at those

addresses. Doc. 211-1 ¶¶ 146, 161-65; Doc. 204-4 at 3. On March 15, 2021, the plaintiffs' counsel sent WideOpenWest a letter regarding repeated infringement of the plaintiffs' copyrights at WideOpenWest's IP addresses. Doc. 211-1 ¶ 147; Doc. 204-4.

WideOpenWest has failed to promptly terminate or suspend the subscriber accounts associated with the IP addresses where infringement occurred or to take any other meaningful action such as throttling the offending subscribers' internet speed in response to the notices of infringement. Doc. 211-1 ¶¶ 149, 159-66, 181, 184-85. It often failed to even forward the notices to the subscribers. *Id.* ¶¶ 150, 180, 186; Doc. 204-10. WideOpenWest continued to provide internet service to offending subscribers despite its knowledge that they were using its service to engage in and facilitate copyright infringement. Doc. 211-1 ¶¶ 151, 189-90. WideOpenWest also refuses to block or limit subscriber access to known torrent websites. *Id.* ¶ 177.

WideOpenWest offers an internet service plan with download speeds up to 500 Mbps, and it advertises this plan as "A great choice for anyone intensively downloading or uploading content." *Id.* ¶ 172. It also offers a plan with download speeds up to 1000 Mbps, and it advertises that plan as "Our fastest speed for the consumer who wants it all." *Id.* ¶ 173. The plaintiffs allege that WideOpenWest's subscribers "are motivated to become subscribers from the knowledge of [its] practice of ignoring notices of infringements or failing to take any meaningful action" against subscribers who engage in copyright infringement using its internet service. *Id.* ¶ 175. In 2014, in response to a Reddit topic asking for internet service providers that are "'less' strict on downloading," one Reddit user responded that:

> . . . I know from personal experience that if you're in the midwest, Wide Open West Cable & Internet are *amazing* on torrents. I've used them for the past 5+ years now, and

> have downloaded truly an outrageous amount of data (without a vpn before) and never gotten a letter or notice. They have no data limits (or at least I've never found out about them), I've downloaded 2+ TB in a single month without a word from them.

Doc. 204-8 ¶ 3. In 2018, another Reddit user posted a topic question in the "r/Piracy" subreddit asking "Am with WOW internet now and have had zero issues with private torrent site, looking to switch to Spectrum. Do they monitor the ip address for torrents," "Not sure if it is because of private torrenting bu[t] wondering i[f] spectrum is stricter than WOW[?]". *Id.* ¶ 4.

The plaintiffs filed their original complaint on July 13, 2021. Doc. 1. That complaint involved twenty-eight plaintiffs and fifty-four copyrighted works. *Id.* ¶¶ 7, 10-37; Doc. 1-1. On October 1, 2021, the plaintiffs filed a first amended complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(B). Doc. 25. That complaint removed six plaintiffs and added three new plaintiffs, resulting in fifty-six copyrighted works at issue. Doc. 26-1 ¶¶ 7, 9-34; Doc. 25-1. The case was then stayed from December 2021 to March 2023. Docs. 45, 128. In March 2024, I granted the plaintiffs leave to file the operative Second Amended and Supplemental Complaint, which removed four plaintiffs, added seven new plaintiffs, and added additional copyrighted works for some of the existing plaintiffs, resulting in approximately 375 works at issue. Doc. 200; Doc. 211-1 ¶¶ 7, 10-36; Doc. 211-2. Over 300 of the newly asserted works are owned by Screen Media. *Compare* Doc. 25-1, *with* Doc. 211-2. In June 2024, Screen Media filed for bankruptcy, Doc. 231, and the case was stayed again until February 2025, Docs. 236, 240, 243, 246, 251, 258, 262, when the bankruptcy trustee was substituted as a plaintiff in Screen Media's place, Doc. 264.

The operative complaint asserts claims for contributory copyright infringement, vicarious copyright infringement, and secondary liability for violations of the Digital Millennium Copyright Act. Doc. 211-1 ¶¶ 200-32.

## LEGAL STANDARD

When presented with a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a district court must decide whether the facts alleged in the complaint, if true, would entitle the claimant to some legal remedy. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). The court must accept the alleged facts as true and view them in the light most favorable to the plaintiff. *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007). But the court need not accept as true conclusory allegations that are unsupported by factual averments. *VDARE Found. v. City of Colo. Springs*, 11 F.4th 1151, 1159 (10th Cir. 2021). Though a complaint need not contain detailed factual allegations to state a claim for relief, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[M]ere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). A court "will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, accepted as true, allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## DISCUSSION

### I. Direct Infringement of the New Works by Defendant's Users

As noted above, the plaintiffs bring claims for secondary copyright infringement and secondary liability for violations of the Digital Millennium Copyright Act. Secondary liability for copyright infringement cannot exist in the absence of direct infringement by a third party. *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009). To state a claim for direct copyright infringement, a plaintiff must sufficiently allege that (1) the plaintiff owns a valid copyright, and (2) the alleged infringer copied[3] a protected element of the plaintiff's copyrighted work. *Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1299 (10th Cir. 2014); *TransWestern Pub. Co. LP v. Multimedia Mktg. Assocs., Inc.*, 133 F.3d 773, 775 (10th Cir. 1998). WideOpenWest contends that the plaintiffs have failed to adequately plead the copying element with respect to the 300+ Screen Media works that were added in the operative complaint because the complaint does not allege when WideOpenWest's users downloaded or distributed those works. Doc. 213 at 5-7; Doc. 233 at 4.

WideOpenWest cites to *Boyd v. Yardley*, in which a district court held that a complaint does not provide fair notice of a copyright-infringement claim unless it identifies "by what acts and during what time" the copyright was infringed. No. 2:18-cv-132, 2019 WL 7505682, at *3 (D. Utah Dec. 12, 2019). But a plaintiff need not meet a heightened standard akin to the particularity standard that applies to fraud claims under Federal

---

[3] "Copied" in this context is a "shorthand reference to the act of infringing any of the copyright owner's five exclusive rights set forth at 17 U.S.C. § 106," "including the rights to distribute and reproduce copyrighted material." *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991).

Rule of Civil Procedure 9(b) in order to state a claim for copyright infringement. *MiraCorp, Inc. v. Big Rig Down, LLC*, No. 08-2673-KHV, 2009 WL 10688833, at *3 (D. Kan. Oct. 15, 2009) (rejecting argument that plaintiff's complaint must "state with specificity what exactly was copied, when it was copied, how it was copied, how much was taken, how the actions were deliberate or willful, which defendant took the actions, or when or where the actions took place"). And many "district court cases hold[] that complaints alleging continuous or ongoing copyright infringement need not detail each specific infringing act to satisfy the plausibility standard." *Santa Fe Goldworks, Inc. v. Bella Jewelry, LLC*, No. 23-602 KK/JMR, 2024 WL 3161893, at *6 (D.N.M. June 25, 2024) (collecting cases). Courts recognize that when the alleged infringement "unfolds in cyberspace . . . a complaint might have to catalog dozens, or thousands, of instantiations to capture the full range of alleged infringements," and "[t]o avoid unwieldiness, courts have approved a complaint that simply alleges representative acts of infringement, rather than a comprehensive listing." 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.09[A][2] (Release No. 122) (citing *Perfect 10, Inc. v. Cybernet Ventures, Inc.* (*Perfect 10 I*), 167 F. Supp. 2d 1114, 1120-21 (C.D. Cal. 2001) (rejecting argument that complaint was insufficient because it failed to state "every copyright relied on, every individual image . . . that is being infringed, every image on specific web pages that does infringe, or the dates of any infringement")).

The plaintiffs' operative complaint here attaches a list of approximately 375 copyrighted motion pictures, identifying the title of each work, its copyright certificate number or numbers, and which plaintiff owns the work. Doc. 211-2. The complaint identifies at least six specific examples of the plaintiffs' copyrighted works being downloaded at WideOpenWest IP addresses and the dates on which those downloads occurred. Doc. 211-1 ¶¶ 74-84, 101-02; Doc. 204-2. It identifies at least

nine specific examples of the plaintiffs' copyrighted works (including one of the new Screen Media works) being shared at WideOpenWest IP addresses (sometimes multiple times at the same IP address) and the dates of at least two of those instances. Doc. 211-1 ¶¶ 104-12; Doc. 204-10. And though the complaint itself does not allege precisely when direct infringement by WideOpenWest's users began, it does allege that each of the over 33,750 notices of infringement the plaintiffs' agents sent to WideOpenWest identified "the time of infringement down to the second." Doc. 211-1 ¶ 131.

The plaintiffs' operative complaint makes nonconclusory factual allegations regarding their ownership of specific copyrights, representative acts of direct infringement of those copyrights by WideOpenWest's users, and ongoing infringement by its users.[4] These allegations are sufficient to put WideOpenWest on fair notice of the plaintiffs' claims of direct infringement by its users. The same is true for the plaintiffs' allegations of direct violations of the Digital Millennium Copyright Act by WideOpenWest's users. *See* Doc. 211-1 ¶¶ 104-29 (representative examples of users sharing files with altered Copyright Management Information including dates of at least three of those instances, Docs. 204-9,

---

[4]   WideOpenWest's argument that more specific allegations regarding the timeframe of its users' direct infringement are required to establish that Screen Media's claims were filed within the applicable limitations period is inapposite. *See* Doc. 213 at 6; Doc. 233 at 4. The lapse of the Copyright Act's limitations period is an affirmative defense. *Michael Grecco Prods., Inc. v. RADesign, Inc.*, 112 F.4th 144, 149-52 (2d Cir. 2024); *Beidleman v. Random House, Inc.*, 621 F. Supp. 2d 1130, 1134 (D. Colo. 2008); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13D.02[C][2] (Release No. 122). "A complaint need not anticipate any affirmative defenses that may be raised by the defendant, including the statute of limitations; it is the defendant's burden to plead an affirmative defense." *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019).

204-10). "Further details can be elicited during the discovery stage." *Perfect 10 I*, 167 F. Supp. 2d at 1121.

## II. Secondary Infringement

WideOpenWest next argues that the plaintiffs' claims must be dismissed in their entirety because they have been foreclosed by the Supreme Court's recent decision in *Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023). Doc. 213 at 7-9; Doc. 233 at 5-7. *Twitter*, however, was not a copyright-infringement case—the plaintiffs there alleged that Twitter, Facebook, and YouTube had aided and abetted ISIS in committing a terrorist attack. *Twitter*, 598 U.S. at 477-78. WideOpenWest argues that "*Twitter* is highly relevant because it addresses common law aiding and abetting liability, which shares the same common law foundation as contributory [copyright] liability . . . [and] the line between contributory and vicarious liability is 'not clearly drawn.'" Doc. 213 at 8. But the courts that have considered the argument that *Twitter* altered preexisting principles of secondary copyright liability have rejected that argument, and I agree. "To conclude otherwise would require [lower courts] to decide that the Supreme Court changed fundamental principles of copyright liability without saying so in a case that was not about copyrights." *UMG Recordings, Inc. v. Grande Commc'ns Networks, L.L.C.*, 118 F.4th 697, 714-15 & n.10 (5th Cir. 2024). "*Twitter* does not alter . . . prior case law on secondary copyright liability for ISPs." *Warner Records, Inc. v. Altice USA, Inc.* (*Warner II*), No. 2:23-cv-00576-JRG-RSP, 2024 WL 4341933, at *2 to *3 (E.D. Tex. Sept. 11, 2024) (R. & R.), *adopted by* 2024 WL 4336731 (E.D. Tex. Sept. 27, 2024); *accord In re Frontier Commc'ns Corp.*, 658 B.R. 277, 284-87, 288, 297-304 (Bankr. S.D.N.Y. 2024).

Rather than stating a new standard, *Twitter* simply "underscores the general importance, in all cases of secondary liability, of demonstrating

- 10 -

a direct nexus between the defendant's conduct and the underlying tort at issue." *UMG*, 118 F.4th at 714. Where, as the plaintiffs allege here, an internet service provider "provided . . . subscribers with the tools necessary to conduct [direct] infringements (*i.e.*, high-speed internet access) and continued doing so after learning that those subscribers were repeatedly using those tools to infringe," "the direct nexus between [the provider's] conduct and the tort at issue permits an inference" that the provider is contributorily liable for the subscribers' continued direct infringement. *Id.* at 715; *accord Warner II*, 2024 WL 4341933, at *3; *Frontier*, 658 B.R. at 301. *Twitter* does not provide a reason to revisit my previous analysis of the plaintiffs' allegations regarding secondary liability for copyright infringement or Digital Millennium Copyright Act violations. *See* Doc. 128 at 5-11.

### A. Contributory Infringement of the New Works

To state a claim for contributory copyright infringement, the plaintiffs must sufficiently allege that WideOpenWest (1) knew about direct infringement by its users; and (2) caused or materially contributed to the direct infringement. *Diversey v. Schmidly*, 738 F.3d 1196, 1204 (10th Cir. 2013). WideOpenWest contends that the plaintiffs have failed to adequately plead the knowledge element with respect to the 300+ Screen Media works that were added in the operative complaint. Doc. 213 at 4-5; Doc. 233 at 2-4.

WideOpenWest's argument is premised on its inferences that (1) only Facterra, and not Maverickeye or Irdeto, was engaged to identify the IP addresses used to download and distribute Screen Media's works, (2) only Maverickeye and Irdeto, and not Facterra, sent any notices of infringement, and (3) therefore WideOpenWest was not notified of any specific instances of infringement of Screen Media's works. Doc. 213 at 4-5; *see also* Doc. 211-1 ¶¶ 93-100, 130. But even assuming that those

- 11 -

inferences are the only reasonable ones that may be drawn from the facts alleged regarding the investigation companies,[5] the allegations in the complaint still support a reasonable inference that the knowledge element is satisfied.

The knowledge element may be satisfied by actual knowledge of *or willful blindness to* specific instances of direct infringement. *BMG Rts. Mgmt. LLC v. Cox Commc'ns, Inc.* (*BMG II*), 881 F.3d 293, 308-12 (4th Cir. 2018); *accord Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) ("actual knowledge of specific acts of infringement" or willful blindness involving "deliberate actions to avoid learning about infringement"). The complaint alleges that WideOpenWest was notified of over 33,750 specific instances of direct infringement at over 13,000 of its IP addresses, including approximately 100 instances of specific infringements at several IP addresses, yet it did not investigate further or take any action to stop continued infringement by the subscriber accounts associated with those IP addresses. This is sufficient to support a reasonable inference that WideOpenWest had reason to know of ongoing infringement by specific subscribers but consciously avoided learning of additional specific instances of direct infringement by those subscribers, including specific instances of infringement of Screen Media's works, even if the notices it received related to infringement of different copyrighted works. *See BMG II*, 881 F.3d at 311-12 (willful blindness requires that internet service provider know *which* subscribers are infringing, *i.e.*, "to have specific enough knowledge of infringement that [it] could *do* something about it"); *Sony Music Ent. v. Cox Commc'ns, Inc.* (*Sony I*), 426 F. Supp. 3d 217, 232-33 (E.D. Va. 2019) ("The standard is focused on the subscriber, not the particular works infringed, and [notice

---

[5] It appears from the plaintiffs' response that at least the first two of those inferences may be accurate. *See* Doc. 229 at 9 n.2.

of a] specific instance of infringement guides service providers to the source."). The same is true for contributory liability for violations of the Digital Millennium Copyright Act. *See* Doc. 211-1 ¶ 131 (notices included "the infringing file name which includes the altered Copyright Management Information").

### B. Vicarious Infringement

WideOpenWest argues that I should revisit my previous ruling that the plaintiffs' allegations are sufficient to state a claim for vicarious infringement in light of the Fourth Circuit's recent decision in *Sony Music Entertainment v. Cox Communications, Inc.* (*Sony II*), 93 F.4th 222 (4th Cir. 2024). Doc. 213 at 9-10; Doc. 233 at 7-8. To state a claim for vicarious copyright infringement, the plaintiffs must sufficiently allege that WideOpenWest (1) has the right and ability to supervise its users' infringing activity; and (2) has a direct financial interest in the infringing activity. *Diversey*, 738 F.3d at 1204; *accord Sony II*, 93 F.4th at 229-30. WideOpenWest argues that the court in *Sony II* found that claims like the plaintiffs' do not satisfy the direct financial interest element. Doc. 213 at 9-10; Doc. 233 at 7-8.

In *Sony II*, the court did find that the plaintiffs failed to prove at trial that the defendant internet service provider profited directly from its subscribers' copyright infringement. 93 F.4th at 230. But the court did not change the preexisting law on which my previous ruling was based, namely that "[i]f copyright infringement draws customers to the defendant's service or incentivizes them to pay more for their service, that financial benefit may be profit from infringement." *Id.* at 231-32. The court emphasized that "[t]he continued payment of monthly fees for internet service, even by repeat infringers, is not a financial benefit flowing directly from *the copyright infringement itself*," because "that demonstrates only that the service provider profits directly from the sale of

- 13 -

internet access," while vicarious liability "demands proof that the defendant profits directly from the *acts of infringement* for which it is being held accountable." *Id.* at 232. But the court also reaffirmed that such direct profit may be established by evidence "demonstrating that customers were drawn to purchase [the provider's] internet service, or continued to use that service, because it offered them the ability to infringe Plaintiffs' copyrights." *Id.*

As I previously held, the plaintiffs' allegations are sufficient to support a reasonable inference that WideOpenWest's customers were drawn to purchase its internet service, or continued using that service, because it offered the ability to engage in copyright infringement. Doc. 128 at 8-9 ("Plaintiffs in this case have sufficiently pleaded that Defendant's advertisements for high download speeds *and known practice of ignoring or failing to act on notices of infringement* serve as a draw for subscribers." (emphasis added)). *Sony II* does not provide a basis to reconsider that holding. The plaintiffs allege that at least one subscriber continued using WideOpenWest's internet service because WideOpenWest is "*amazing* on torrents" and the subscriber had "never gotten a letter or notice" despite having "downloaded truly an outrageous amount of data." Doc. 204-8 ¶ 3. That subscriber recommended WideOpenWest to someone else looking for an internet service provider that is "'less' strict on downloading." *Id.* The plaintiffs further allege that another subscriber looking to switch from WideOpenWest to another provider was hesitant to do so if the other provider "monitor[ed] the ip address for torrents" or was "stricter than" WideOpenWest. *Id.* ¶ 4. The plaintiffs' allegations here are thus distinguishable from *Sony II*, where the plaintiff failed to identify at trial "any evidence suggest[ing] that customers chose [the defendant's] internet service, as opposed to a

- 14 -

competitor's, because of any knowledge or expectation about [the defendant's] lenient response to infringement." 93 F.4th at 232-33.

"The essential aspect of the 'direct financial benefit' inquiry is whether there is a causal relationship between the infringing activity and any financial benefit a defendant reaps, regardless of *how substantial* the benefit is in proportion to a defendant's overall profits." *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2002). Taking the facts alleged in the operative complaint as true and viewing them in the light most favorable to the plaintiffs, they are sufficient to support a reasonable inference that copyright infringement was a draw for WideOpenWest's customers, and that WideOpenWest reaped some financial benefit, via attraction or retention of accounts, directly from its users' downloading and distribution of the plaintiffs' copyrighted works.[6] *Cf. Warner Records Inc. v. Charter Commc'ns, Inc.* (*Warner I*), 454 F. Supp. 3d 1069, 1077-78, 1082-84 (D. Colo. 2020) (at pleading stage, allegations that defendant's failure to take action in response to notices of infringement drew current and prospective subscribers to purchase internet service were sufficient); *BMG Rts. Mgmt. (US) LLC v. Altice USA, Inc.* (*BMG III*), No. 2:22-CV-00471-JRG, 2023 WL 3436089, at *2 to *5 (E.D. Tex. May 12, 2023) (at pleading stage, allegations that subscribers were

---

[6] At trial (or at the summary-judgment stage), the plaintiffs will of course need to prove up their allegations with admissible evidence. *See BMG Rts. Mgmt. (US) LLC v. Cox Commc'ns, Inc.* (*BMG I*), 149 F. Supp. 3d 634, 675-76 & n.30 (E.D. Va. 2015) (screenshots of Reddit message boards inadmissible on summary judgment), *rev'd in part on other grounds*, 881 F.3d 293 (4th Cir. 2018); *Perfect 10, Inc. v. Giganews, Inc.* (*Perfect 10 II*), No. CV 11-07098-AB (SHx), 2014 WL 8628031, at *4, *5 (C.D. Cal. Nov. 14, 2014) ("[The plaintiff] must prove with competent evidence that at least some of [the defendant's] customers were 'drawn' to [its] services, in part, to obtain access to [*the plaintiff's*] infringing . . . material. . . . [The plaintiff] adequately *alleged* a claim for vicarious infringement[, but] . . . after full discovery, the evidence does not bear out [the plaintiff's] allegations . . . ."), *aff'd*, 847 F.3d 657 (9th Cir. 2017).

drawn to defendant's internet service "because of lax policing of . . . piracy" were sufficient).

## CONCLUSION

It is **ORDERED** that Defendant's Motion to Dismiss Plaintiffs' Second Amended and Supplemental Complaint, **Doc. 213**, is **DENIED**.

DATED: March 14, 2025      BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge