# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-1901-DDD-MEH

AFTER II MOVIE, LLC, et al.,

    Plaintiffs,

v.

WIDEOPENWEST FINANCE, LLC,

    Defendant.

## PLAINTIFFS' SHORT STATEMENT IDENTIFYING NATURE OF DISPUTE

Pursuant to this Court's Orders [Doc. ##212, 216], Plaintiffs provide a short statement identifying the nature of their disputes with Defendant WideOpenWest ("WOW").

### 1. WOW failed to obey the Court's order to produce its DMCA database.

This stage of the case is limited to whether WOW terminated the accounts of customers that repeatedly used its service to infringed copyright protected content.  To this end, on April 17, 2023, Plaintiffs requested documents sufficient to show WOW's actual DMCA enforcement and policies.  On 7/11/2023, Plaintiffs filed a first motion to compel because "Defendant still has not produced basic information such as its DMCA database…" or documents sufficient to "…to tie the customer ID to the IP address". Doc. #163, p.3.  On 11/14/2023, the Court granted this part of Plaintiffs' motion to compel and ordered directed WOW "to produce this database".  Doc.# 186.  But instead of producing the database as ordered by the Court, WOW produced two piecemeal spreadsheet excerpts from its DMCA database (each 15,000 rows) (WOW028677 and WOW028678) one business day before Christmas in a document dump (12/21/2023).

1

WOW took the position that the two piecemeal spreadsheet excerpts were sufficient for tying all IP addresses to customer ID/account numbers. *See* Ex. "1". However, five months earlier on July 12, 2023 WOW produced a 90,000+ row spreadsheet (WOW000144) to show what graduated tier of its purported termination process it had placed certain customers by customer number. Plaintiffs served WOW with interrogatory #15 on 11/13/2023 explicitly asking *how* to determine the IP addresses assigned to the account numbers shown in WOW000144 and gave an example of one account number to illustrate this point. When WOW finally responded to interrogatory #15 on 1/12/2024 its response was, "The IP addresses assigned to account numbers can be determined by reviewing WOW028677 and WOW028678. A *small number of account numbers* are not present in these documents, including the account number identified in this interrogatory…". 60,000 (90k-30k) is *not a small number.* Nonetheless Plaintiffs were in the blind because they had no way of knowing if possibly the 30,000 rows in WOW028677 and WOW028678 somehow showed all but "a small number" of account numbers as asserted by WOW. Plaintiffs mistakenly gave credence to WOW's interrogatory response under oath. Not until the April 30, 2024 deposition of one of WOW's 30b6 representatives (Teri Blackstock) when Mrs. Blackstock admitted that it was impossible to match the IP addresses with the account numbers in WOW000144 just from those two spreadsheets could Plaintiffs know they had been deceived. *See* Ex. "2".

Suddenly three days later (Friday evening May 3, 2024), after consistently maintaining the ridiculous position for nearly six months that Plaintiffs could associate all account numbers in the 90,000+ row spreadsheet (WOW000144) with IP addresses by just these two spreadsheets, WOW's counsel produced 14 spreadsheets (over 2.5 GB document dump) while casually noting

2

"…we asked Teri Blackstock to pull the other x_wow2 spreadsheets she mentioned in her deposition earlier this week. Those are also included in the linked production…"

Plaintiffs cannot understate the prejudice they have suffered from WOW's late disclosure of the complete DMCA database. (1) Because discovery ended 5/21/2024, Plaintiffs were given less than 18 days to attempt to conjoin these 14 gargantuan spreadsheets and finally link IP addresses to customer account numbers for conducting proper analysis of WOW's DMCA system; and (2) Plaintiffs were not able to conduct analysis ahead of depositions and use this analysis as basis for further discovery to WOW or depositions of WOW's 30b6 witnesses because WOW waited until 3 weeks were left in discovery to finally disclose the complete DMCA database in flagrant violation of this Court's order of 11/14/2023. *See* Doc. #186.

At the same time, WOW has boasted about the list of purported termination dates by account numbers it produced on June 23, 2023 (WOW000114-141). However, without the ability to tie IP addresses to account numbers, Plaintiffs were robbed of any opportunity to vet the accuracy of this document. Indeed, through brute force, Plaintiffs were able to confirm that at least one of the account numbers in this document has an inaccurate termination date. WOW should not be able to hide the ball from Plaintiffs until three weeks before the end of discovery cut-off to put itself in a position to declare itself the winner. Because WOW willfully violated the Court's order to produce the database, the Court should strike WOW's safe harbor defense or, at the least, strike WOW000114-141 and any other DMCA database documents WOW purports to show as evidence of terminations of customers as evidence and prohibit WOW from raising this these purported terminations and customer actions as evidence in support of its safe harbor or in general discovery.

**2. WOW failed to obey the Court's order to disclose the revenue for all 367 subscribers.**

To show Defendant's motive for failing to terminate the accounts for repeat infringers, on 4/17/2023, Plaintiffs served interrogatory no. 8 related to WOW's revenue and noticed a deposition on revenue from customers (topic 26). On 11/13/2023, the Court granted Plaintiffs' motion to compel and stated, "Defendant should prepare a witness to discuss this topic at the deposition for the 367 subscribers and disclose the revenue for all 367 including the pre-2018 subscribers." Doc.# 186. However, in true document dump fashion, WOW waited until Friday evening May 3, 2024, before the Tuesday deposition to produce a document showing the purported revenue (together with the DMCA database data dump). Despite being served the notice and interrogatory in April of 2023, WOW's 30B6 representative (Traci Hart) admitted that WOW waited until late March/early April to prepare the revenue document. *See* Ex. #3, p.3. And for two customers[1], WOW's 30B6 representative (Traci Hart) took the position that since these two are business customers that have a master account and multiple-sub accounts, WOW would not disclose the revenue because the IP address at issue was related to one of the sub-accounts rather than the master account. *See* Ex.#4. This tortured interpretation is inconsistent with this Court's order to "disclose the revenue for all 367…subscribers". And recently Plaintiffs have obtained evidence from another purported customer (Gretchen Jones) in this document that contradicts the information WOW presented concerning revenue from Mrs. Jones. Namely, Mrs. Jones will state under oath that she has never been a customer of WOW. *See* Ex. #5[2]. It appears that despite Mrs.

---

[1] For a third customer, WOW produced a spreadsheet asserting that it only received $25 from this customer for one month in 2018, but another document produced by WOW shows that this person was a WOW customer in 2017. Moreover, the same customer produced a declaration stating that she is still a WOW customer now. Yet Ms. Hart maintained her confidence in the accuracy of WOW's assertion that it only received $25 in revenue from this customer. In the limited time Plaintiffs were provided this document, this was an example of a discrepancy they were able to locate.

[2] Plaintiffs have attached the declaration of Mrs. Jones that they just received minutes before the noon deadline. It appears that WOW is attempting to conceal the fact that many of its customers at issue are actually large businesses/small ISPs that have their own customers.

4

Jones being a customer of WOW's customer not WOW, WOW is attempting to falsely portray her as WOW's customer to conceal the revenue it receives from its large business customers (and thus its motive for not terminating the account) by only disclosing information of customer's customers.

Because WOW willfully violated the Court's order to produce the revenue for these subscribers and failed to timely produce the revenue documents, the Court should rule that WOW has failed to establish a safe harbor for all customers (not customer's customer) for which it failed to disclose the revenue.

### 3. WOW should be ordered to produce Ms. Hart for an additional 3 hour deposition.

WOW presented Ms. Hart as a witness in her individual capacity as well as in her capacity as a 30b6 witness. However, WOW took the position that Plaintiffs could not have the full 7 hours to depose Ms. Hart in her individual capacity. WOW's position is without merit. The Court should order WOW to produce Mr. Hart again for an additional 3 hours at WOW's expense.

### 4. WOW fails to present 30b6 witnesses to discuss its agreements with distributors that allow its customers to watch live sports and films on demand.

On 4/17/2023, Plaintiffs noticed a deposition concerning topic #22: WOW's negotiations or agreements with any live sports distributor, film studio or distributor that allows WOW's customers to watch live sports, films on-demand, including information about the profits that WOW receives from any such agreement or WOW's profits from customer's purchases to watch live sports or films on-demand. On 11/13/2023, the Court granted Plaintiffs' motion to compel and ordered Defendant to produce documents on "Disparate Practices When Enforcing Policies to its Benefit in Comparison to its Purported DMCA Policy". Doc. #186, p.3. Defendant served objections stating: "WOW has no documents or communications responsive to these requests", Ex. "6", and stated that its 30b6 representative for this topic would be Ms. Kelly Arnold. *See* Ex. "7".

5

WOW's assertion that it has no such documents on topic #22 (live sports and video on demand agreements) was unquestionably false. *See* Ex. "8", p2. (("This Month on Demand") and p.7 ("Unbeatable live sports and local programming")[3]. When Plaintiffs' counsel confronted Ms. Arnold with this evidence during her deposition of April 22, 2024, WOW's counsel interrupted the questions and falsely asserted that topic #22 was outside of the scope. *See* Ex. "12". Despite later admitting that "she's clearly not prepared for it…" and downplaying this failure and waste of Plaintiffs' time as "slipped through the cracks", Defendant refused to bring forth another witness on this topic. *Id.*

Because WOW willfully violated the Court's order to allow discovery to proceed on this topic by refusing to put forth a witness, the Court should order a negative inference that WOW enforces its DMCA policies more aggressively for the benefit of intellectual property owners with whom it partners to provide sports or films on demand to customers.

### *5. WOW fails to present a 30b6 witness to discuss its ability to monitor, suspend or terminate customer's service (13) and to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes (21).*

WOW took the position that topics 13 and 21 are redundant and provided Stephen Swanson to discuss topic 13. *See* Exs. "6"-"7". Mr. Swanson agreed that redundant was not a legal term and understood redundant to mean that topics 13 and 21 were duplicates. *See* Ex. "9", pp. 5-6. However, Mr. Swanson conceded that he could not talk about WOW's ability to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes (21). *See id.*, pp. 1, 6. Therefore, WOW has not set forth a witness to discuss

---

[3] Ironically, WOW characterized Plaintiffs' argument about WOW having exactly these types of agreements as "false" and asked the Court to approach it "with serious skepticism". Doc.#186, p.3. Exhibit 8 shows the wisdom of the Court's decision to "trust the litigation process". *Id.*

whether it has the ability to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes as set forth in topic 21. Accordingly, the Court should issue a negative inference that WOW has the ability to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes as set forth in topic 21.

### *6. WOW disobeys the Court's order to answer RFAs .*

On March 19, 2024, the Court ordered Defendant to serve Amended Responses to Plaintiffs' First RFAs nos. 5-15 and 42.  *See* Doc. #201.  However, Defendant did not serve its responses until April 22, 2024.  *See* Doc. #214-1.  Thus, Defendant's answers were not served within the 30 days provided by Rule 36.  Further, as explained in Plaintiffs' motion to modify the scheduling order, despite clear instructions from the court to use control F, Defendant continues to take an approach with respect to RFAs nos. 38-41 that contradicts documents it produced in discovery, particularly WOW0045525-WOW0045529.  The Court should deem any of 5-15 and 42 that Defendant has denied as admitted.

### *7. WOW's failure to take any timely steps to preserve relevant evidence caused its business partner Momentum to delete highly relevant evidence.*

 On Jan. 19, 2022, this Court granted Plaintiffs' request for a Cable Act Order and ordered Defendant to produce names of customers' of IP addresses identified in Plaintiffs' first document request over Plaintiffs' opposition.  *See* Doc. #56.  In response, WOW stated that it cannot disclose certain customers because its former business partner Momentum had already deleted the data. WOW refused to disclose the date that the relationship was terminated until the Court granted Plaintiffs' motion to compel on this issue.  *See* Doc. #186, p.4.  During Plaintiffs deposition of Traci Hart, it was revealed that WOW waited until March 17, 2022 to even contact Momentum

7

despite having the IP addresses the previous year.  Accordingly, Plaintiffs request a negative inference that WOW failed to implement a safe harbor policy for those IP addresses deleted by Momentum.

### 8. WOW fails to be truthful in sworn documents.

WOW has repeatedly used obstructive tactics to conceal the truth.  WOW's supplemental response to interrogatory #1 served on May 21 is illustrative of these tactics.  WOW waited to the last day of discovery to finally admit that its written policy was not the policy at all – that its staff had a free hand to change graduated tiers of customers.   There is no excuse for WOW not disclosing this in its first interrogatory response.  This supplement was only made after Plaintiffs strung this information together after studying tens of thousands of documents.

### 9. WOW fully deposed David Fannon on the authorized topics.

Despite the limited scope of the deposition to Plaintiffs' witnesses, WOW proceeded to ask Screen Media Venture LLC's 30b6 witness Mr. Fannon legal questions and hypotheticals – something Court explicitly said not to.  WOW's concerns about Plaintiffs prep of 30b6 witnesses is unfounded.

 DATED: Kailua-Kona, Hawaii, Mar. 23, 2024.

/s/ Kerry S. Culpepper
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:    (808) 464-4047
Facsimile:     (202) 204-5181
E-Mail:         kculpepper@culpepperip.com

F. Christopher Austin
Weide & Miller, Ltd.
10655 Park Run Drive, Suite 100
Las Vegas NV 89144
Telephone:    702.382.4804

Facsimile: 702.382.4805 Fax
E-Mail: caustin@weidemiller.com
*Attorneys for Plaintiffs*