# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| AFTER II MOVIE, LLC, et al., ) | |
| ) | |
| Plaintiffs, ) | Case No. 1:21-cv-01901-DDD-MEH |
| ) | |
| vs. ) | |
| ) | |
| WIDEOPENWEST FINANCE, LLC, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S STATEMENT REGARDING DISPUTES TO BE HEARD IN MAY 30, 2024 DISCOVERY CONFERENCE

Pursuant to the Court's May 15, 2024 Minute Order (ECF No. 212), Defendant WideOpenWest Finance, LLC ("WOW") provides this brief statement regarding the disputes the parties intend to raise. The parties met and conferred about these matters by Zoom conference on May 16, 2024.

As to discovery disputes raised by Plaintiffs, the following represents WOW's educated guesses regarding the matters Plaintiffs intend to raise in the May 30 conference. Following the parties' meet and confer, WOW repeatedly asked Plaintiffs to identify the issues they intend to pursue, but Plaintiffs refused. *See* Ex. 1, Email Chain "RE: After II v WOW."

The issues addressed in this statement are as follows:

1. Plaintiff Screen Media Ventures' Failure to Meet Obligations under Rule 30(b)(6)[1] (p. 2);

2. Plaintiffs' Complaints about WOW's DMCA Database Production (p. 4);

3. Plaintiffs' Request for Four More Hours of Deposition Time with Traci Hart (p. 7); and

4. Plaintiffs' Complaints about Stephen Swanson's Testimony on 30(b)(6) Topic 21 (p. 9).

---

[1] Screen Media's 30(b)(6) deposition took place two days after Plaintiffs contacted the Court to request a discovery conference.

1. **<u>Plaintiff Screen Media Ventures' Failure to Meet Obligations under Rule 30(b)(6)</u>**

WOW asks the Court to order Plaintiff Screen Media Ventures (or "SMV") to produce an adequately prepared Rule 30(b)(6) witness for deposition. On March 19, 2024 (ECF No. 201), the Court ordered Screen Media and the other Plaintiffs to produce a corporate representative to testify about the discovery rule as detailed in three 30(b)(6) topics (*see* Ex. 2, Amended Notice):

**Topic 2:** the facts underlying Screen Media's discovery rule position

**Topic 4:** Screen Media's answer to WOW's Interrogatory No. 9 regarding the discovery rule

**Topic 5:** Screen Media's communications with non-party YTS and its principal, who Screen Media contends supplied the information that first put Screen Media on notice of its claims against WOW

Screen Media claims to be relying on the discovery rule with respect to alleged infringement of 125 of its 327 works in suit (which represent 85% of the total works in suit in this case).

The facts relevant to the discovery rule[2] are the date when Screen Media knew or had reason to know of the injury giving rise to its claims (here, the alleged sharing of Screen Media's works over peer-to-peer networks by users of WOW's internet service), and Screen Media's diligence in seeking to discover the facts underlying its claims. *See Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004). Screen Media's obligation to prepare a witness to testify to these facts encompasses facts known by counsel. *See, e.g.*, *In re Vitamins Antitrust Litig.*, 216 F.R.D. 168, 172 (D.D.C. 2003) (Rule 30(b)(6) required party "to produce one or more 30(b)(6) witnesses who were thoroughly educated about the noticed deposition topics with respect to any and all facts

---

[2] The Supreme Court recently declined to decide whether the discovery rule applies in copyright cases. *See Warner Chappell Music, Inc. v. Nealy*, 144 S. Ct. 1135, 1139 (2024); *see also id.* at 1140-41 (Gorsuch, J., dissenting) (the Copyright Act "almost certainly does not tolerate a discovery rule" considering that the rule "ordinarily appl[ies] only in cases of fraud or concealment" and the Court has "long warned lower courts . . . against taking any more expansive approach") (cleaned up).

2

known to [the party] or its counsel, regardless whether such facts are memorialized in work product protected documents or reside in the minds of counsel").

Against this backdrop, Screen Media's corporate representative, Mr. David Fannon, was completely unable to testify about topics 2, 4, and 5. As detailed in the attached highlighted transcript (Ex. 3), Mr. Fannon knew nothing about how or when SMV learned of the alleged infringement at issue in this case. More specifically, Mr. Fannon:

- Had not previously seen, and did not know anything about, the YTS records that Screen Media claims (in its answer to Interrogatory No. 9, Ex. 4) gave Screen Media its first knowledge of its claims against WOW (Ex. 3 at 26-28);

- Did not know, and had not tried to find out, what company detected the infringement of Screen Media's works at issue in this case—i.e., the infringement that Screen Media hired someone to detect but that Screen Media claims not to have learned about until 2020 (*id.* at 75);

- Was not familiar with, and could not identify when or from whom Screen Media received, the documents identified in Screen Media's answers to Interrogatory No. 9 as representing the instances of infringement for which Screen Media is asserting the discovery rule (*id.* at 42-46, 48, 49-52, 57-61);

- Did not know, and had not tried to find out, when or for what purpose Screen Media had worked with the monitoring company Facterra, which is identified in Plaintiffs' Second Amended Complaint as the company that detected the infringement of Screen Media's works (*id.* at 52-53, 56-57, 81, 84-85);

- Did not know, and had not tried to find out, anything about Screen Media's relationship with the monitoring company MaverickEye, which Screen Media identified in its May 14, 2024 supplemental interrogatory answer (Ex. 5) as a company that detected infringement for which Screen Media is asserting the discovery rule (Ex. 3 at 37-40, 64); and

- Did not know, and had not tried to find out, when or for what purpose Screen Media had worked with the monitoring company Irdeto, which is identified in Plaintiffs' Second Amended Complaint as a company that may have sent DMCA notices on Screen Media's behalf (*id.* at 72, 74-75, 77-78).

Mr. Fannon was unable to testify about these matters because he did virtually nothing to prepare for the deposition. Mr. Fannon testified that he:

3

- Only "glanced at" Screen Media's original interrogatory answer regarding the discovery rule and could not say if he had reviewed Screen Media's supplemental answer (*id.* at 23-25, 40);

- Did not review any other documents in preparation for the deposition (*id.* at 16);

- Did not talk to anyone within Screen Media or its parent in preparation for the deposition, including employees directly responsible for anti-piracy matters (*id.* at 13, 17); and

- Spent less than one hour preparing for the deposition with counsel (*id.* at 17).

Considering Mr. Fannon's complete inability to testify about topics 2, 4, and 5, WOW requests that the Court order Screen Media to produce an adequately prepared corporate representative and to compensate WOW for the fees and costs associated with the second deposition. *See In re Appl. of Michael Wilson & Partners*, No. 1:06-cv-2575, 2009 WL 1193874, at *4-5 (D. Colo. Apr. 30, 2009) (ordering the same relief where company's designee was unable to provide the requested information and "engaged in little to no preparation for the deposition, even on the circumscribed topics to be covered"); *Starlight Int'l Inc. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999) ("Fed. R. Civ. P. 37(d) permits the imposition of sanctions when a party or person designated under Rule 30(b)(6) fails to appear . . . . Producing an unprepared witness is tantamount to failure to appear at a deposition.").

## 2. Plaintiffs' Complaints about WOW's DMCA Database Production

In the parties' May 16 meet and confer, Plaintiffs told WOW that Plaintiffs intend to ask this Court to strike WOW's DMCA safe harbor defense on grounds that WOW delayed in producing information from its DMCA system—the software system that processes the copyright infringement complaints ("notices") that WOW receives by email. As an initial matter, because a ruling on an affirmative defense is a dispositive matter, a motion requesting such relief would have to be referred for a report and recommendation pursuant to Local Rule 72.3(c). *See, e.g.*, *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 111 (S.D.N.Y. Oct. 26, 2005).

4

In any event, Plaintiffs are manufacturing accusations of discovery misconduct because they want to avoid litigating WOW's safe harbor defense. Plaintiffs do not claim that there is relevant DMCA data they did not receive. Plaintiffs do not claim that any of WOW's Rule 30(b)(6) designees were not properly prepared to discuss that evidence. Plaintiffs do not ask—and have never asked—for more deposition time with any WOW witness regarding the DMCA data WOW produced.[3] Plaintiffs have no explanation for how they have been prejudiced by any alleged delay in the production of evidence or why the draconian relief they are seeking is warranted.

Plaintiffs' accusation that WOW unreasonably delayed in producing DMCA data is also untrue. Below is a table depicting the dates and contents of WOW's DMCA data productions.

| Date | Volume | Description | Bates |
|---|---|---|---|
| June 8, 2023 | 16 Excel Spread-sheets | DMCA database materials:<br>• *u_cs_dmca_violation_queue*<br>• *u_cs_dmca_violation_queue (1)*<br>• *u_cs_dmca_violation_queue (2)*<br>• *u_cs_dmca_violation_queue (3)*<br>• *u_cs_dmca_violation_queue (4)*<br>• *u_cs_dmca_violation_queue (5)*<br>• *x_wow2_dmca_complainant*<br>• *x_wow2_dmca_email_response*<br>• *x_wow2_dmca_manual_mac_address_override*<br>• *x_wow2_dmca_task*<br>• *x_wow2_dmca_violation_queue*<br>• *x_wow2_dmca_violation_queue (1)*<br>• *x_wow2_dmca_violation_queue (2)*<br>• *x_wow2_dmca_violation_queue (3)*<br>• *x_wow2_dmca_violation_queue (4)* | WOW000099-113 |
| July 12, 2023 | 3 Excel Spread-sheets | DMCA database materials:<br>• *incidents table*<br>• *lease log spreadsheet*<br>• *customer violation totals table* | WOW000142-144 |
| November 17, 2023 | 6 Files | DMCA materials:<br>• *Perftech logs*<br>• *Sys_journal_field (notes from DMCA calls)* | WOW004724-4737 |

---

[3] As discussed in a separate section, Plaintiffs are asking for additional time with one WOW witness, Traci Hart, but that dispute does not relate to these DMCA materials.

5

| March 19, 2024 | 10 Excel Spread-sheets | DMCA database materials: tables tying customer accounts to IP addresses:<br>• *u_cs_dmca_violations*<br>• *u_cs_dmca_violations (1)*<br>• *u_cs_dmca_violations (2)*<br>• *u_cs_dmca_violations (3)*<br>• *u_cs_dmca_violations (4)*<br>• *u_cs_dmca_violations (5)*<br>• *u_cs_dmca_violations (6)*<br>• *u_cs_dmca_violations (7)*<br>• *u_cs_dmca_violations (8)*<br>• *u_cs_dmca_violations (9)* | WOW04 2624-42633 |
|---|---|---|---|
| May 3, 2024 | 15 Excel Spread-sheets | DMCA database materials: additional tables tying customer accounts to IP addresses (2021-present)<br>• *x_wow2_dmca_violation*<br>• *x_wow2_dmca_violation (1)*<br>• *x_wow2_dmca_violation (2)*<br>• *x_wow2_dmca_violation (3)*<br>• *x_wow2_dmca_violation (4)*<br>• *x_wow2_dmca_violation (5)*<br>• *x_wow2_dmca_violation (6)*<br>• *x_wow2_dmca_violation (7)*<br>• *x_wow2_dmca_violation (8)*<br>• *x_wow2_dmca_violation (9)*<br>• *x_wow2_dmca_violation (10)*<br>• *x_wow2_dmca_violation (11)*<br>• *x_wow2_dmca_violation (12)*<br>• *x_wow2_dmca_violation (13)* | WOW04 5524-45538 |

As depicted in this table, the bulk of WOW's DMCA data was produced nearly a year ago, in June and July of 2023. There were two subsequent productions of note.

First, on March 19, 2024, in connection with the last discovery conference before the Court, WOW produced additional database tables that more directly depict the relationship between customer accounts and IP addresses, in response to complaints from Plaintiffs about the difficulty of connecting one to the other.

Then, on April 30, 2024, Plaintiffs deposed WOW 30(b)(6) representative Teri Blackstock about the DMCA data that WOW had produced. In that deposition, it came to light that WOW's

6

March 19 production had not included information from 2021 to present, because of a system conversion. In other words, it was necessary to pull two different sets of tables to cover the full 2018-present timeframe, which Ms. Blackstock had not appreciated when she gathered data for the March 19 production. WOW produced that additional data the same week, on May 3, 2024. Because Ms. Blackstock explained that the additional tables would be the same in form and content as the tables produced on March 19, Plaintiffs have never claimed to need additional deposition time with Ms. Blackstock to discuss WOW's May 3 production.

Finally, it is worth noting that Ms. Blackstock was prepared, in her April 30 deposition, to discuss how one can connect individual account numbers to IP addresses from the data produced by WOW in June and July of 2023. But Plaintiffs' counsel did not ask Ms. Blackstock any questions on that subject. Plaintiffs' counsel appeared to be more focused on creating a dispute about the sufficiency of WOW's document production than on discovering relevant information or seeking to understand the DMCA materials produced by WOW.

In sum, Plaintiffs have received everything to which they are entitled, and they have no grounds for claiming that WOW unreasonably delayed in producing relevant documents. Again, Plaintiffs have never claimed to need additional time to depose any WOW witness about these matters. There is certainly no legal basis here for the draconian relief Plaintiffs are requesting.

### 3. Plaintiffs' Request for Four More Hours of Deposition Time with Ms. Traci Hart

Plaintiffs had seven full hours of deposition time with witness Traci Hart, a WOW employee who was designated as a 30(b)(6) witness on two topics with marginal relevance (at best) to WOW's safe harbor defense: revenue information WOW produced for approximately 300 subscribers accused of infringement, and WOW's procedures for responding to civil and law enforcement subpoenas. Plaintiffs have identified two reasons for additional deposition time with Ms. Hart: (1) she "refused to disclose the revenue of" two bulk accounts (i.e., accounts with

7

numerous sub-accounts that are rolled up into one master account, such as a university with separate sub-accounts for various departments, facilities, housing, and so on); and (2) although Ms. Hart testified for more than seven hours, Plaintiffs claim that was not enough time for Plaintiffs' counsel to complete their deposition of her in her individual capacity.

As to the first issue, WOW has agreed to provide Plaintiffs with the total revenue for the two customers at issue. Ms. Hart did not have that information at the deposition because when WOW's accounting department was asked to gather revenue information for the specified accounts, they were unable to determine how to segregate total revenues from the bulk account to those sub-accounts. WOW expects to produce this information before the May 30 hearing.

As to the second issue, seven full hours was more than enough time for Plaintiffs to complete the deposition, and they have not identified any specific reason why they need more time. WOW accommodated Plaintiffs' late start time of 11am CDT (at Plaintiffs' counsel's insistence, because he lives in Hawaii) with the understanding that the deposition would conclude at or near seven hours, to ensure a reasonable end time in Ms. Hart's time zone. *See* Ex. 6, Hart Dep. Tr. at 125; Ex. 7 at 1 ("the depositions will start at 10am MT (9am PT) and the 30b6 deposition on Wednesday [*sic*] and go 7 hours"); Ex. 8, April 29, 2024 Email Thread, at 9.

Additionally, Plaintiffs did not use their time with Ms. Hart wisely. Although Ms. Hart's designated 30(b)(6) topics—customer revenue and WOW's subpoena practices—have little if any relevance to WOW's safe harbor defense, Plaintiffs spent over ***four hours*** questioning her on those matters. This included numerous questions and exhibits regarding subpoenas in unrelated criminal cases, as well as questioning about unrelated newspaper articles and other topics outside the scope of the 30(b)(6) deposition. *See* Ex. 6 at 54-65. This was how Plaintiffs chose to use their time.

8

Nevertheless, Plaintiffs still had approximately three and a half hours with Ms. Hart in her individual capacity and asked her questions about twenty different exhibits.

Because seven total hours of deposition time was completely reasonable and sufficient under the circumstances, and because Plaintiffs have not shown any specific need for additional time, the Court should deny Plaintiffs' request for four additional hours with Ms. Hart.

**4. Plaintiffs' Complaints about Mr. Stephen Swanson's Testimony on 30(b)(6) Topic 21**

Plaintiffs have complained about WOW witness Stephen Swanson's inability to testify on topic 21 of their 30(b)(6) notice, concerning WOW's "ability to remotely reset or otherwise monitor any equipment it provides to customers, including but not limited to routers and cable boxes." Plaintiffs have not asked WOW to produce another representative on this topic. Rather, they contend, without any authority and little explanation, that the Court should grant an "adverse inference" of some unspecified nature on this topic.

Plaintiffs' request is baseless because WOW never agreed to produce a witness on topic 21, and Plaintiffs accepted that. Topic 21, together with WOW's response, reads as follows:

> **21. WOW's ability to remotely reset or otherwise monitor any equipment that it provides to customers, including but not limited to routers and cable boxes.**
>
> **Response:** WOW objects to this Topic as seeking information that is not relevant to WOW's DMCA safe harbor defense or to any other issue in this case. To the extent this Topic seeks arguably relevant, discoverable information, it is redundant to Topic No. 13.
>
> Based on these Objections, WOW will not designate a Rule 30(b)(6) witness to testify regarding this Topic.

*See* Ex. 9, Responses to Plaintiffs' 30(b)(6) Notice, at 16-17. When the parties met and conferred about WOW's objections, Plaintiffs raised no concerns about this response. *See* Ex. 10, March 15, 2024 Email Thread, at 3-4 (identifying the objections and responses Plaintiffs challenged).

9

WOW therefore did not designate a witness for topic 21 when it provided Plaintiffs with its 30(b)(6) designations. Ex. 11, April 16, 2024 Email Thread, at 6.

Prior to Mr. Swanson's deposition, Plaintiffs never indicated they would expect a witness to be prepared to discuss Topic 21. And after Mr. Swanson's deposition concluded, Plaintiffs did not ask WOW to prepare and produce a witness to discuss Topic 21. Instead, Plaintiffs waited until days before the close of safe harbor discovery to follow up on this issue. Plaintiffs' silence and delay should not be rewarded with another deposition on a topic that is not relevant to WOW's DMCA safe harbor defense, which is the focus of this phase of discovery.

Furthermore, Mr. Swanson was prepared to testify about Plaintiffs' topic 13, which concerns "WOW's ability to monitor, suspend, or terminate customers' internet services." Ex. 9 at 12. To the extent topic 21 encompasses any relevant information, it is redundant to topic 13. Yet Plaintiffs barely explored topic 13 with Mr. Swanson at all. Instead, they chose to present Mr. Swanson with a technical document regarding the "DOCSIS" modem standard and asked him questions about this document and modem compatibility in general. *See* Ex. 12, Swanson 30(b)(6) Dep Tr., at 35-38. Because those matters are not within the scope of topic 13 and are irrelevant, Mr. Swanson reasonably was not prepared to talk about them. *See id.* at 43.

Plaintiffs have no legitimate complaint about Mr. Swanson's deposition, let alone a complaint that would warrant some unspecified "adverse inference" about WOW's control over its customers' modems.

*****************************************************************************

Counsel for WOW will be prepared to discuss these and any other matters raised by Plaintiffs in the May 30 discovery conference.

10

Dated: May 24, 2024 Respectfully submitted,

By: */s/ Zachary C. Howenstine*
Richard L. Brophy
Zachary C. Howenstine
Angela B. Kennedy
Margaret R. Szewczyk
Melanie E. King
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
zhowenstine@atllp.com
akennedy@atllp.com
mszewczyk@atllp.com
meking@atllp.com

Kathryn E. Ford
ARMSTRONG TEASDALE LLP
4643 S. Ulster St., Suite 800
Denver, Colorado 80237
(720) 200-0676
kford@atllp.com

*Attorneys for Defendant WideOpenWest Finance, LLC*

11