# EXHIBIT F

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:21-cv-1901-DDD-MEH

AFTER II MOVIE, LLC, et al.,

    Plaintiffs,

v.

WIDEOPENWEST FINANCE, LLC,

    Defendant.

---

### PARTIES' SHORT STATEMENT IDENTIFYING NATURE OF DISPUTE

---

*Plaintiffs' Position Statement*

Pursuant to this Court's Order [Doc. #255], Plaintiffs provide a short statement identifying the nature of their disputes with Defendant WideOpenWest ("WOW"). Plaintiffs are the owners of copyrights for various motion pictures (the "Works") such as *Hellboy*, *I Feel Pretty*, *Dallas Buyer's Club* and *The Last Full Measure*. WOW is an Internet service provider touting itself "as one of the biggest broadband providers in the country." *About WOW!*, https://www.wowway.com/experience/about [last accessed on 1/23/2025]. Plaintiffs sued WOW for secondary liability for mass piracy of Plaintiffs' Works by users of WOW's Internet services.

Discovery in this case is bifurcated into a first stage limited to WOW's DMCA safe harbor defense (17 U.S.C. §512(a) and (i)). Plaintiffs raise the following discovery disputes related to this first stage. Note the Court has already ruled that these discovery requests are relevant to this stage. *See* Docs. ##186 and 220.

**A. WOW's objections to interrogatories 16-18 should be overruled.**

On 6/17/2024, Plaintiffs served WOW interrogatories 16-18 as permitted by the Court's Order [Doc. #220] of 5/30/2024. In July, the Parties recognized that the case would have to be stayed due to the bankruptcy of Plaintiff Screen Media Ventures, LLC ("SMV") and agreed that "WOW's interrogatory answers will be due the day after the stay is lifted. *See* Doc. #254-3 (July 18, 2024, email from WOW's counsel to Plaintiff's counsel).

On 12/20/2024, at WOW's insistence, the Court lifted the stay except as to Plaintiff SMV. *See* Doc. #251. Thus, WOW's answers to interrogatories 16-18 were due on

12/21/2024. But WOW did not serve interrogatory answers and objections until 1/15/2025 more than six months after receiving them from Plaintiffs. *See* Plaintiffs' Ex. "1". Per Rule 33(b)(4), WOW's objections are waived for being untimely. WOW does not dispute that its responses were untimely. Rather, WOW merely states that "WOW is not withholding any information on the basis of its objections." Plaintiffs' Ex. "2". However, WOW's objection to interrogatory 18 states that it is treating the interrogatory as two towards Plaintiffs' limit. The Court should overrule WOW's objections or deem them waived.

**B. WOW must confirm that it disclosed all revenue it received from its subscribers (not customers of its subscribers) assigned the 367 IP addresses and disclose any missing revenue.**

On 11/13/2023, the Court ordered WOW to "disclose the revenue for all 367 [subscribers] including the pre-2018 subscribers." *See* Order on Plaintiffs' Motion to Compel, Doc. #186 at 4.

On 5/3/2024, WOW produced purported revenue for the 367 subscribers it identified. For one of the 367 subscribers (WOW identified as Gretchen Jones assigned IP address 75.76.180.219), WOW states it received $2,559.32 in revenue. *See* Plaintiffs' Ex. "3".

Plaintiffs previously noticed a subpoena on Gretchen Jones on 2/14/2025 that was served on 4/24/2024 (*prior* to 5/21/2024 discovery cutoff) requesting *inter alia* her communications with WOW concerning piracy. Ms. Jones asserted through counsel that she was not and never had been a customer of WOW. Because her assertion contradicted WOW's disclosure of Ms. Jones as the subscriber assigned IP address 75.76.180.219 and from whom it received revenue, Plaintiffs asked Ms. Jones' counsel for a declaration.

On 5/24/2024, Ms. Jones provided a declaration stating under penalty of perjury that she was never a customer of WOW, but a customer of a different ISP called MediaCom. *See* Plaintiffs' Ex. "4".

On 5/24/2024, Plaintiffs raised the issue of a WOW deponent's testimony that WOW had not produced gross revenue it received from at least two subscribers but rather revenue from sub-accounts of the two subscribers (i.e., customer of WOW's customer) and Ms. Jones in a discovery dispute letter to the Court. *See* Doc. #220.

On 5/29/2024, WOW produced revenue information for the two subscribers.

On 5/30/2024, the Court ordered *inter alia*:

> The Parties shall confer on what revenue information has and has not been produced, and Defendant shall disclose any additional revenue information to Plaintiffs if Plaintiffs are entitled to it.

Doc. #220.

WOW has never addressed the issue of Ms. Jones or otherwise confirmed that besides the two subscribers at issue, the revenue numbers it produced for the remaining subscribers is indeed revenue for the subscribers and not revenue from a customer of its subscriber. In connection with the Parties' meet and confer, Plaintiffs' counsel asked, "Are there other business accounts for which WOW improperly calculated out the sub-account?" on 1/13/2025. Plaintiffs' Ex. "2" at 3. WOW refused to directly answer the question, and instead stated "Plaintiffs were only entitled to revenue information regarding the 367 subscribers Plaintiffs identified." Id. at 1. This is incorrect. WOW provided the subscriber identifications in response to Plaintiffs' First Request for identification of the subscribers assigned the 367 IP addresses at the times of infringements. WOW cannot avoid disclosing the revenue for the *true* subscriber it assigned IP address 75.76.180.219 by misidentifying a *false* subscriber. If WOW's true subscriber is a smaller ISP, WOW should identify the ISP and all the revenue it received from the ISP.

### C. The Court should overrule WOW's objection to Request for Admission ("RFA") 75.

On April 22, 2024, Plaintiffs served RFA #75 requesting WOW to "Admit that between the period of January 1, 2016 to May 1, 2023, WOW adjusted multiple subscribers who were on the t4 tier down one tier to t3 for good behavior and these subscribers again reached the t4 tier and had their service terminated for continued notices." *See* Plaintiffs' Ex. "5" at 2.

WOW's 30(b)(6) witnesses Traci Hart and Kelly Arnold admitted during their depositions that multiple subscribers were adjusted down from the termination (t4) threshold back to (t3) for good behavior, but some went on to be terminated for continuing to be the subject of copyright infringement notices. *See* Plaintiffs Ex. "6" and "7".

WOW responded as follow: "RESPONSE: WOW objects to this request as vague and ambiguous and also to the extent "good behavior" is vague and undefined. Subject to these objections, and to the extent the request is understood, WOW denies that it adjusted multiple subscribers down one tier and then terminated all these same subscribers for continued notices." *See* Plaintiffs' Ex. "5" at 2.

To avoid admitting what WOWs' witnesses clearly admitted to during their deposition, WOW reinterpreted RFA 75 as requiring it to admit that *every* subscriber downgraded a tier for good behavior had to have again reached the termination tier and been terminated. This interpretation is unreasonable. Plaintiffs request that the Court overrule WOW's objections and order it to answer the RFA as written.

**D.  The Court should order WOW to answer RFA 77 as corrected or otherwise grant Plaintiffs leave to amend RFA 77.**

On April 22, 2024, Plaintiffs served RFA #77 requests WOW to "Admit that between the period of January 1, 2016 to Dec. 31, 2016, WOW informed at least one subscriber that "stuttershit" was a popular piracy website. *See* AFTER10486-AFTER10487."

AFTER10486-AFTER10487 is an email communication dated Aug. 3, 2017 between WOW employee Christine Bendorf and a WOW subscriber where Ms. Bendorf states, "There are a ton more sites that I know are popular. You might want to search for popular bit torrenting sites. Piratebay, popcorn, stuttershit……..these are some more examples."  Plaintiffs' Ex. "8".

WOW response was "Denied."  *See* Plaintiffs' Ex. "5" at 2.

During the Parties' meet and confer, WOW's counsel pointed out that RFA #77 refers to 2016 but the email communication refers to 2017.  Plaintiffs' counsel pointed out that the mentioning of 2016 instead of 2017 was a typographical error that was apparent in view of referenced document AFTER10486-AFTER10487.  However, WOW has refused to recognize the typographical error or consent to Plaintiffs amending RFA #77. *See* Plaintiffs' Ex. "2" at 2.

WOW's response is deficient because its denial is based upon the apparent typographical error.  *See Caruso v. Coleman Co.,* No. 93-CV-6733, 1995 U.S. Dist. LEXIS 7934, 1995 WL 347003, at *3 (E.D. Pa. 1995) (determining that a response was deficient where the request for admission contained typographical errors, the denial was "because of those errors," and "[n]o other explanation or answer was given").

Plaintiffs request that the Court either order WOW to answer RFA 77 in line with the 2017 date referred to in AFTER10486-AFTER10487 or order WOW to answer RFA77 as amended to end the time frame at Dec. 31, <u>2017</u>.

DATED: Kailua-Kona, Hawaii, Feb. 5, 2024.

<u>/s/ Kerry S. Culpepper</u>
Kerry S. Culpepper
CULPEPPER IP, LLLC
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawaii 96740
Telephone:   (808) 464-4047
Facsimile:    (202) 204-5181
E-Mail:         kculpepper@culpepperip.com

F. Christopher Austin

Lex Tecnica, Ltd.
10161 Park Run Dr., Ste. 150
Las Vegas, NV 89145
Telephone:   (702) 610-9094
E-Mail: chris@lextecnica.co

*Attorneys for Plaintiffs*

*Defendant's Position Statement*

Plaintiffs' complaints about WOW's discovery responses lack merit. But more than that—none of the issues raised or the relief sought would appear to have any impact on the issues in the case. Rather, Plaintiffs appear to be manufacturing disputes in order to provide a basis for continuing to extend the deadlines in this case. WOW has answered all of Plaintiffs' interrogatories in full, provided all of the revenue information (and witness) it was required to provide, and has sufficiently responded to Plaintiffs' 70+ requests for admission. Plaintiffs are wasting the parties' time and the Court's resources in raising these issues.

**Interrogatory Nos. 16-18**

WOW has fully answered Interrogatory Numbers 16-18. While WOW included general objections in its responses, it did not withhold any information subject to its objections. *See generally*, Pls' Ex. 1. Rather, the objections are general in nature, in order to state WOW's position as to the relevance of the information sought, the impact of that information on Plaintiffs' claims, and its understanding of the scope of the requests. *See id.* Indeed, at least one of Plaintiffs' interrogatories was patently objectionable, in that it consisted of two interrogatories in one (making four total interrogatories, when Plaintiffs were only permitted to serve three interrogatories after the close of discovery, *see* ECF No. 220 at p. 2). WOW nevertheless answered both parts of Interrogatory No. 18 in full.

Plaintiffs have raised no complaints about WOW's substantive responses to these interrogatories being incomplete or otherwise deficient. They only oppose the general objections accompanying these responses. Under this Court's precedent and the precedent of other courts, Plaintiffs' complaints should be overruled. *See, e.g., White v. Deere & Co.*, No. 1:13-cv-02173-PAB-NYW, 2015 WL 1385210, at *8 (D. Colo. Mar. 23, 2015) (denying motion to compel related to objected-to but fully-answered interrogatories); *Calder v. Blitz U.S.A., Inc.*, No. 2:07–cv–387–TC–PMW, 2010 WL 2639971, at *3 (D. Utah June 28, 2010) (rejecting complaints about general objections because "it is commonplace for parties responding to discovery requests to include general objections along with their substantive responses as a way of avoiding possible waiver of those objections"); *Bayview Loan Servicing, LLC v. Boland,* 259 F.R.D. 516, 518 (D. Colo. 2009) (the burden is on the proponent of additional discovery to prove that the opposing party's answers are incomplete); *Tango Transport, L.L.C. v. Transport Intern. Pool, Inc.*, No. 08–0559, 2009 WL 2390312 at * 3 (W.D.La. July 31, 2009) (rejecting complaints about objections to interrogatories being untimely because the moving party made "no argument as to how the answers are substantively inadequate").

To the extent Plaintiffs complain that these requests are untimely, Defendant disagrees. Discovery in this matter closed on May 21, 2024. On May 30, 2024, the Court entered an order allowing Plaintiffs "to serve three (3) additional interrogatories on the topic of Defendant's ability to monitor, suspend or terminate customer's service, and its ability to remotely reset or otherwise monitor any equipment which it provides to its customers." (ECF No. 220 at p. 2).

Plaintiffs served interrogatory numbers 16-18 on June 19, 2024. WOW's original deadline to respond was July 18, 2024. However, on July 16, 2024, WOW requested an extension to July 29 to respond. In response, Plaintiffs' counsel indicated it was seeking a 90-day stay of all

deadlines in the case (including the deadline to respond to the interrogatories) due to SMV's bankruptcy. WOW proposed that its interrogatory answers would be due the day after the stay is lifted. Plaintiffs agreed to "an interim extension of the deadline pending resolution of the parties' request for a stay" but did not respond to WOW's proposal regarding the ultimate deadline.

Since that time, the parties have engaged in significant correspondence regarding the bankruptcy proceedings, scheduling, and other discovery disputes, resolving most of them informally. When Plaintiffs asked for responses to the Interrogatories on January 7, 2025, WOW said it could provide responses on January 15, 2025, and it met that deadline. *See* Pls' Ex. 1 at pp. 4-5. Furthermore, Judge Hegarty's December 20, 2024 Order is unclear on whether or when the stay was actually lifted. *See* ECF No. 251. WOW accordingly disagrees that the responses were untimely, but in any event, Plaintiffs' request would be of no effect: WOW has already answered the requests in full, and WOW would be permitted to make the same sorts of objections it is making now at trial about the relevance and impact of the answers to the requests, regardless of whether these objections are sustained for purposes of the discovery responses.

**Revenue**

Plaintiffs have also requested that Defendant "clarify if it has disclosed all revenue it received from the 367 customers (and has not segregated out revenue from customer of customers) and disclose any customer revenue not yet disclosed." *See* Jan. 24, 2025 Email from K. Culpepper to Court.

This request arises out of a 30(b)(6) topic related to total revenue WOW received from the subscribers whom Plaintiffs have accused of copyright infringement. The parties and the Court ultimately agreed this topic was limited to the 367 subscribers Plaintiffs identified from the outset of this case. *See* ECF No. 186 at p. 4.

In November 2023, the Court clarified that WOW should prepare a witness to discuss the topic and to "disclose the revenue for all 367 including the pre-2018 subscribers." ECF No. 186 at pp. 3-4 (citing ECF No. 178 at p. 10). WOW has done precisely that. On May 3, 2024, WOW produced a table containing the revenue amounts WOW received per customer for the 367 customers at issue. WOW subsequently produced a corporate representative, Traci Hart, to testify on this topic. When Plaintiffs raised a follow-up question after the deposition, WOW provided a formal statement explaining how revenue was calculated for the two bulk customers at issue.

Now, Plaintiffs ask WOW to clarify that WOW "has not segregated out revenue from customer of customers." WOW has already done what it was required to do: it provided the revenue for the 367 subscribers that Plaintiffs identified. Indeed, WOW has done more than it was asked in seeking to address this topic—particularly considering that Plaintiffs never issued written discovery seeking this information. WOW is not withholding any customer revenue for the 367 customers at issue. It provided a table of the revenue received per customer for the specified time period, as that information was maintained in the ordinary course of WOW's business and to the best of WOW's knowledge. If Plaintiffs wanted more information, they could have served requests for production or interrogatories. They did not. Instead, they issued a deposition topic. Plaintiffs should not be permitted to have a second (or third) bite at the apple nearly a year after discovery closed in this matter.

**Request for Admission Nos. 75 and 77**

Plaintiffs challenge WOW's response to Request for Admission Number 75 and ask for permission to amend Request for Admission Number 77. Plaintiffs had the opportunity to craft appropriate, clear requests for admission, and failing to do so, seek to correct their requests now. Plaintiffs' requests should be denied.

a. *RFA No. 75*

Under Rule 36(a)(2), each matter in a request for admission must be separately stated. "Each request for admissions must be direct, simple and limited to singular relevant facts." *Herrera v. Scully*, 143 F.R.D. 545, 549 (S.D.N.Y. 1992) (citations and internal quotations omitted); *see also* Wright & Miller, 8B Fed. Prac. & Proc. Civ. § 2258 (3d ed.) ("Each request for an admission should be phrased simply and directly so that it can be admitted or denied without explanation."). In addition, requests for admission should not be used "to uncover evidence," as Plaintiffs appear to be trying to do. *See Aptive Env't, LLC v. Town of Castle Rock, Colorado*, No. 17-CV-01545-MSK-MJW, 2017 WL 11487106, at *3 (D. Colo. Dec. 22, 2017) ("Plaintiff appears to be using requests for admissions to uncover evidence, which is an improper purpose.").

In RFA No. 75, Plaintiffs requested that WOW admit that an entire category of subscribers reached the "tier 4" tier of WOW's DMCA process and, as a result, had their internet service terminated:

> **Request for Admission No. 75:**   Admit that between the period of January 1, 2016 to May 1, 2023, WOW adjusted multiple subscribers who were on the t4 tier down one tier to t3 for good behavior and these subscribers again reached the t4 tier and had their service terminated for continued notices.
>
> **RESPONSE:** WOW objects to this request as vague and ambiguous and also to the extent "good behavior" is vague and undefined. Subject to these objections, and to the extent the request is understood, WOW denies that it adjusted multiple subscribers down one tier and then terminated all these same subscribers for continued notices.

This was not something WOW could categorically admit. Accordingly, WOW objected to and denied the request. WOW's response was sufficiently responsive under Rule 36, in that it explained the reasons for its denial.

Moreover, at this stage of the litigation, WOW is "entitled to properly respond [to an RFA] with a simple denial and be deemed in compliance with Rule 36." *Morgan v. Haynes*, No. 06-CV-00680-EWN-CBS, 2006 WL 8455283, at *3–4 (D. Colo. Oct. 31, 2006). While WOW believes

the evidence at trial would support its response, this Court explained in *Morgan v. Haynes* that prior to trial, there is no vehicle for "proving" or "disproving" a response to a request for admission. *See id.* (citations omitted). Rule 36 does not provide a mechanism for determining whether responses to requests for admission are warranted by the evidence before trial, rather it only provides a mechanism for determining whether the request was sufficiently answered. *See* Fed. R. Civ. P. 36(a)(6); *Michael v. Wes Banco Bank*, No. 5:04-cv-00046, 2006 WL 1705935, *2 (N.D.W.Va. 2006) (finding that for purposes of determining compliance with Rule 36, courts "should focus on the specificity of the response and not on whether the response is correct."); *United States v. Operation Rescue*, 111 F. Supp.2d 948, 968 (S.D. Ohio 1999) (finding that a party may not seek a pretrial determination of the accuracy of opponent's denial, asserting that evidence does not support denial). If requests for admission are sufficiently answered, the only recourse is a post-trial motion for expenses—and that is only if the matter denied is proven at trial. *See Morgan*, 2006 WL 8455283, at *4.

    b. RFA No. 77

Plaintiffs also ask that they be permitted to amend their RFA No. 77, stating they intended to write a different date (Dec. 31, 2017) than the one that appears in the request (Dec. 31, 2016).

> **Request for Admission No. 77:** Admit that between the period of January 1, 2016 to Dec. 31, 2016, WOW informed at least one subscriber that "stuttershit" was a popular piracy website. *See* AFTER10486-AFTER10487.
>
> **RESPONSE: Denied.**

Given the timing of Plaintiffs' requests and the belated notice of this typographical error, WOW cannot agree to a newly-served amended request for admission nearly a year after the close of discovery. As WOW has noted to Plaintiffs in several meet and confers, the document cited speaks for itself. As drafted, WOW cannot admit the RFA.

Dated: Feb. 4, 2025

Respectfully submitted,
By: */s/ Angela B. Kennedy*
Angela B. Kennedy
Richard L. Brophy
Zachary C. Howenstine
Margaret R. Szewczyk
Melanie E. King
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621–5070
rbrophy@atllp.com
zhowenstine@atllp.com
akennedy@atllp.com
mszewczyk@atllp.com
meking@atllp.com
*Attorneys for Defendant WideOpenWest Finance, LLC*