
1

```
1              IN THE UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLORADO
2
     CIVIL ACTION NO. 21-cv-01901-DDD-MEH
3    _____

4    AFTER II MOVIE, LLC, ET AL.,

5              Plaintiffs,

6    v.

7    WIDEOPENWEST FINANCE, LLC,

8              Defendant.

9    _____

10             Proceedings before CYRUS Y. CHUNG, United States

11   Magistrate Judge, for the District of Colorado, commencing

12   at 2:04 p.m. on April 22, 2025, in the United States

13   Courthouse, Denver, Colorado.

14   _____

15   WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE

16   HEREIN TYPOGRAPHICALLY TRANSCRIBED...

17   _____

18                         APPEARANCES

19        KERRY CULPEPPER, Attorney at Law, appearing on

20   behalf of the Plaintiffs.

21        ANGELA KENNEDY, Attorney at Law, appearing on

22   behalf of Defendant.

23   _____

24                      DISCOVERY CONFERENCE

25
```

```
 1                    P R O C E E D I N G S
 2              (Whereupon, the within electronically recorded
 3    proceedings are herein transcribed, pursuant to order of
 4    counsel.)
 5              THE COURT:  Calling Case 21-cv-1901, After II
 6    Movie, LLC against WideOpenWest Finance, LLC.  I'll take
 7    appearances of counsel, starting with the plaintiff.
 8              MR. CULPEPPER:  Good afternoon, Your Honor.  Kerry
 9    Culpepper, appearing on behalf of the plaintiffs.
10              THE COURT:  Good afternoon, Mr. Culpepper.  And
11    for the defendant?
12              MS. KENNEDY:  Good morning -- or afternoon, Your
13    Honor.  Angela Kennedy for defendant WideOpenWest.
14              THE COURT:  Good afternoon, Ms. Kennedy.
15              We are here for a discovery dispute that has to do
16    with a certain document that -- or certain documents that
17    were shown to the 30(b)(6) representative for the bankruptcy
18    trustee for, I think it's Screen Media Ventures, LLC.  Is
19    that right, Ms. Kennedy?
20              MS. KENNEDY:  That's correct, Your Honor.
21              THE COURT:  Okay.  And Ms. Kennedy, why don't you
22    go to the lectern, since you're the only one in the room
23    here.  Mr. Culpepper will be able to hear you a little bit
24    better --
25              MS. KENNEDY:  Okay.
```

**PATTERSON TRANSCRIPTION COMPANY**
scheduling@pattersontranscription.com

```
 1              THE COURT:  -- since the microphone will be closer
 2   to your face there.
 3              All right.  So, as I understand it, there was an
 4   offer, Mr. Culpepper, of sharing a version of the memo or
 5   memos with the defendant in this case, but it was contingent
 6   upon the summary judgment deadline being extended.  That
 7   wasn't agreed to, and so, here we are.
 8              I'm not sure what those two things have to do with
 9   each other.  So what would be the problem here in sharing a
10   redacted version of the memo that had any things that you
11   think are privileged in there blacked out?
12              MR. CULPEPPER:  Thank you.  I assume you're asking
13   me -- Kerry Culpepper speaking.  You're asking me, correct,
14   Your Honor?
15              THE COURT:  I am.
16              MR. CULPEPPER:  Yes.  All right.  First, it's
17   important to point out that opposing counsel and I, we are
18   opposing counsel in two other cases.  So I'm very familiar
19   with opposing counsel's tactics, and I'm sure opposing
20   counsel will say the same.
21              Now, that ties into this memo.  Based on my
22   experience, I'm fairly confident that once I provided him a
23   redacted version of the memos -- when I say "him," I'm
24   referring to opposing counsel -- opposing counsel would have
25   requested a privilege log, because substantially the entire
```

1  thing would have had to have been redacted, because it's
2  basically completely my discussions of the law and my
3  discussions of the application of law, the facts at a high
4  level, and privileged discussions of what we think opposing
5  counsel (indiscernible - audio cut out) the person who takes
6  the time to redact the documents and took it to him.
7         THE COURT:  Sorry, your phone cut out mid-sentence
8  there.  So whatever the last sentence you just said, I
9  didn't get that.
10        MR. CULPEPPER:  Can you hear me now, Your Honor?
11        THE COURT:  I can, yes.
12        MR. CULPEPPER:  I'm sorry, I don't know why that
13 happened.  But basically this would have been the first --
14 the first in a string of -- of incidents that would have
15 flown out of this.
16        We -- I'm pretty confident opposing counsel would
17 have demanded the privilege log and would have raised
18 questions about whether or not the information in the
19 memorandum is privileged.  And in view of the fact that we
20 did not believe that the defendant was entitled to copies of
21 these memorandums in the first place, we did not believe we
22 were entitled -- we were obligated to give to him.
23        But based on our experience, we offered him that
24 we would provide that to him if we were granted the
25 necessary extension to do what we know what would be needed

1  to do to let this play out.

2          So that's how the two things relate to another.
3  This would not have been a simple exercise.  This would have
4  been the beginning of a sequence of events.

5          THE COURT:  Well, it seems like we're at the
6  beginning of an exercise in any event, Mr. Culpepper.  But
7  let's see, I don't remember who brought this to my
8  attention.  Ms. Kennedy, was this you who brought me this --
9  to my attention or was it Mr. Culpepper who did?

10         MS. KENNEDY:  We filed -- or we initiated the
11 dispute resolution process.

12         THE COURT:  All right.  Then let me make -- let me
13 hear you on as to -- as to why the memo should be -- I think
14 it's two memos -- the memo should be turned over.  And then,
15 Mr. Culpepper, I'll hear you as to why they should not be.

16         MS. KENNEDY:  Thank you, Your Honor.  I think at
17 bottom, this case involves -- or this dispute involves what
18 we learned to be two memos that were provided to a 30(b)(6)
19 witness.  The witness testified that he relied on the
20 information that he was provided in these memos, that this
21 was factual information.  And we -- you know, we have no
22 reason to know that there is privileged information or
23 attorney work product on that document, or those documents,
24 other, you know, than based on the witness's testimony.

25         THE COURT:  Well, Mr. Culpepper says there's stuff

1  in there.
2          MS. KENNEDY:  That's, yeah, a point well taken.
3  And other than, you know, the claims of Mr. Culpepper,
4  which, as he recognizes, are appropriately handled through a
5  privilege log.  So we would submit that under the Federal
6  Rule of Evidence 612, that factual information that a
7  30(b)(6) witness relies upon in testifying on behalf of a
8  corporation is discoverable and should be produced.
9          And so, you know, I don't think -- this isn't
10 about whether the witness was adequately prepared or
11 reopening discovery.  You know, this -- these memos would go
12 hand in hand with the deposition testimony, which was,
13 frankly, superficial.
14         And so our request is to try to understand more of
15 the factual information on which the witness was relying in
16 providing testimony about how Screen Media Ventures
17 learned -- or first learned of the detection of alleged
18 infringement, and really just who -- what information was
19 provided to SMV about this detection, when that was
20 provided, and -- and to whom that was provided.
21         So those are kind of fundamental details that
22 plaintiffs are relying on for their discovery rule argument
23 that, you know, we're still trying to understand what the
24 basis for that is.
25         THE COURT:  All right.  You want to have some

```
 1   ability to test not necessarily the veracity, but the
 2   completeness of the representations made to you by the
 3   30(b)(6) witness.  Is that, more or less, correct, Ms.
 4   Kennedy?
 5             MS. KENNEDY:  That's correct, Your Honor.
 6             THE COURT:  Okay.  Anything further?
 7             MS. KENNEDY:  No, Your Honor.
 8             THE COURT:  Okay.  Mr. Culpepper.
 9             MR. CULPEPPER:  Thank you, Your Honor.  I'm
10   hearing an echo for some reason.
11             Mr. Meyer (ph) testified as to all the questions
12   he had.  He testi- -- he pointed to separate documents as an
13   independent basis for what he was saying.
14             Now, as far as their complaint that Mr. Meyer's
15   testifying what he was told by someone else, that that's
16   exactly what Judge Hegarty instructed plaintiffs to do in
17   the discovery conference last year.  And to be frank, it's
18   exactly what Mr. Howenstine, opposing counsel, said should
19   be done.
20             If you look at Plaintiffs' Exhibit 3, particularly
21   the bottom of page 11 -- that's the hearing transcript --
22   and there's a quote from Mr. Howenstine when he says that
23   the information could be easily supplied to Mr. Fannon, who
24   was the CEO of Screen Media, so that Mr. Fannon could answer
25   the questions.
```

1        This problem came up because a key witness passed
2   away a few weeks before the deposition last year.
3        But going back to what Ms. Kennedy said. When she
4   is describing how Mr. Meyer testified, I think she's
5   painting a broad brush when she says Mr. Meyer testified
6   that he got everything through these memos.
7        He was asked the leading question by opposing
8   counsel, and he said, Oh, I think so. He didn't say that he
9   is -- all his answers to these questions are based upon
10  these privileged memorandums. In fact, he repeatedly
11  pointed to, for example, the search that was conducted by
12  the IT department of Chicken Soup for the Soul for documents
13  that -- for which they weren't able to find any documents.
14       So I just -- I would disagree with Mrs. Kennedy's
15  characterization of Mr. Meyer's testimony. And I would
16  reiterate that these are privileged doc- -- privileged
17  memorandums that include my discussion of the law, my
18  strategy for dealing with the deposition, and any discussion
19  of facts is in the context of application of law to that
20  facts.
21       THE COURT: Isn't there a portion in Mr. Meyer's
22  transcript where he's asked fairly directly -- it says:
23       You know, did Mr. Culpepper provide you with a
24  memo sort of summarizing the information that you'd need to
25  know for the deposition?

9

1          He says, Yes.

2          And it's a memo you received by email?

3          He says, Yes.

4          And then it contains factual information that is

5   responsive to these topics that's in the deposition notice?

6          And he says, I believe so.  I haven't looked at it

7   recently.

8          So why doesn't Rule 612 make it so that Ms.

9   Kennedy is entitled to get that?

10         MR. CULPEPPER:  Because this -- as I'm hearing,

11  this is a privileged memorandum.  Mr. Meyer is not a lawyer.

12  He -- you know, he was asked this question.  He -- to be

13  frank, he probably didn't understand the significance of it

14  or what the meaning of it.

15         Yes, a memor- -- a privileged memorandum is going

16  to include facts, because the discussion of the law is going

17  to be applied to the facts in the case.  So any -- the

18  discussion of the facts inside these privileged memorandums

19  is in the context of the discussion of the law and how the

20  law is applied to those facts.

21         THE COURT:  Well, I mean, there's some portion of

22  the memo, at least -- presumably, you weren't making an

23  offer that was empty, so there's some portion of the memo

24  that is not privileged and relates to the facts that are at

25  issue here.  So why isn't she at least entitled to that?

1          MR. CULPEPPER:  Well, because the discovery has
2    closed inside the case.  The defendant has already filed
3    their motion for summary judgment.  But then to obtain a
4    copy of any type of document that's protected by a work
5    product or a privilege, they would need to show a
6    substantial need.
7          And I would think that if they had a substantial
8    need for this information, for the summary judgment motion,
9    they would have asked for an extension on time to file their
10   brief so that they could have received these documents.
11   They did not.  The defendant made their discovery rule
12   argument in the opening brief, and I believe we should
13   proceed from there.
14         I just want to reiterate, these memorandums
15   include my thoughts on the facts in this case and how the
16   law applies and legal strategy.
17         THE COURT:  So there are a couple of cases, and
18   neither party cited them to me, but I went and I looked
19   because I wanted to find the answer to this question.
20         So there's a case Baxter International,
21   Incorporated against Becton, Dickinson & Company.  That's
22   2019 West Law 6258490 out of the Northern District of
23   Illinois, from November of 2019, where the Court there notes
24   that the parties have a heightened need to discovery
25   documents used to prepare a 30(b)(6) witness, and it is

11

1    particularly heightened when a corporation uses privileged

2    documents to prepare its witness, and that prohibiting the

3    cross-examining party from seeing those documents because of

4    privilege would encourage parties to use privileged

5    documents to prepare witnesses as a means of limiting the

6    preparation of the cross-examiner.

7           And it notes that without access to those

8    documents, the cross-examining party can't know whether the

9    testimony was ignoring or misinterpreting certain

10   information contained within the documents because they have

11   nothing to test it against.

12           And again, in Adidas America, Incorporated against

13   TRB Acquisitions, LLC, 324 FRD 389, that's a District of

14   Oregon case out of 2017.  And then they apply a balancing

15   test there and apply certain rebuttable presumptions to

16   30(b)(6) witnesses, in particular, with respect to the

17   application of Federal Rule of Evidence 612.

18           Based on Sporck against Peil, 759 F.2d 312, a

19   Third Circuit case out of 1985, and it says that there is a

20   presumption that when a corporation or its attorneys choose

21   to refresh a corporation's knowledge with selected documents

22   that the witness is using that writing to refresh his

23   memory, that the witness is using the writing for the

24   purpose of testifying when they are relying on documents

25   selected by corporation or counsel, and that there's a

12

1  heightened concern when these documents contain pure opinion
2  or core work product, but they're ordered those documents to
3  be produced when they were shown to the 30(b)(6)
4  representative, regardless of privilege or work product
5  protection.
6       The idea being that if you're going to prepare a
7  30(b)(6) witness and you show them privileged material to
8  prepare them in order to make them have enough memory to
9  respond to the questions that they need to in a 30(b)(6)
10 Deposition, you do so at your own peril.
11      So why shouldn't I follow those cases, Mr.
12 Culpepper?
13      MR. CULPEPPER:  If I -- if I was hearing Your
14 Honor -- I was trying to take notes on the citations of the
15 case.  We -- first I would say that opposing counsel never
16 raised those two cases to us.  We did our analysis on their
17 position based on the New Mexico case that was cited to us.
18 So that wasn't an argument that was ever raised to us.
19      These documents aren't a compi- -- well, the memo
20 is not a compilation of documents, if I heard you correctly.
21 It was a discussion of the law, the discovery rule, how the
22 facts apply to the discovery rule, and what we thought
23 defendant's strategy would be in this case and how the
24 preparation should go.  And, you know, I'll leave that
25 there.

1          But just our position is that these aren't -- it's
2    not a compilation of documents.  Well, I think I've made my
3    point there, and I'm prepared to answer any questions Your
4    Honor has about the memorandums.
5          THE COURT:  I mean, Ms. Kennedy.
6          MS. KENNEDY:  I would just state that in addition
7    to the cases that Your Honor cited, we cited a 10th Circuit
8    case applying a very similar principle, that -- stating that
9    the rule of evidence, meaning Rule 612, applies regardless
10   of whether the documents provided to the witness are
11   protected by attorney/client privilege or attorney work
12   product.
13         And, again, to the extent plaintiffs' counsel is
14   relying on the fact that these memos contain privileged
15   information, our position would be that by showing those
16   documents to the witness, those privilege -- or claims of
17   privilege are waived.
18         THE COURT:  I don't know how -- I don't know if
19   I'm prepared today to go so far as to say that they are
20   entirely waived.  But Mr. Culpepper, I think at the very
21   least, then whatever version you were going to prepare
22   before to turn over to the defendant in this case, that
23   includes whatever facts were being used to -- to refresh the
24   30(b)(6) deponent's memory, or to fill his memory, as the
25   case might be, those are things that the defense is going to

14

1  be entitled to in this case under Rule 612, and under Adidas
2  America, Inc. against TRB Acquisitions, LLC again, 324 FRD
3  389; as well as Baxter International 2019 Westlaw 6258490.
4          And so I realize that some portion of it is going
5  to be purely legal strategy.  You know, I think if you want
6  to redact those, then we can fight about whether those
7  things -- whether 612 has waived the privilege with respect
8  to those particular documents by showing them to the
9  witness.
10         But, Ms. Kennedy, let me -- I'm not ordering you
11 to do this.  But if we can avoid a fight about Mr.
12 Culpepper's internal thoughts about how legal strategy ought
13 to go, then I think this case has been -- is a little bit
14 long in the tooth already.  And if you all don't have to
15 come back in front of me to litigate that, then that is my
16 preference.  Again, I'm not ordering anything with respect
17 to that.
18         But I will order that the memo, as redacted, be
19 turned over to the defense.  I think -- I can't recall the
20 date, the operative date that was requested.  What was the
21 date, Ms. Kennedy?
22         MS. KENNEDY:  I don't believe we actually
23 requested -- oh, well, yeah.  No later than April 29th.
24         THE COURT:  Yep.
25         MS. KENNEDY:  Because that is the day our

```
 1   response -- or plaintiffs' response is due.
 2            THE COURT:  So I will order that a redacted
 3   version of the memo be turned over by April 29th.  Those
 4   redactions, Mr. Culpepper, if something is mixed in, if
 5   there is a fact mixed in with a little bit of legal
 6   analysis, then you may have to err on the side of making
 7   sure that it's evident what facts are being given to the
 8   30(b)(6) witness, rather than trying to cover things up.
 9            And I don't mean that in any sort of pejorative
10   manner.  I don't mean that you are trying to hide the ball,
11   but rather than redacting things aggressively in the
12   interest of trying to protect everything that might
13   considerably be -- might be considered privileged.
14            So that is my ruling in terms of the memorandum.
15            Any further record that you need to make, Mr.
16   Culpepper?
17            MR. CULPEPPER:  No, Your Honor.  Just, I want to
18   make clear I understand the last sentence you said.  You
19   said any fact that's mixed with legal analysis err on the
20   side of disclosure?
21            THE COURT:  Of disclosure.  That's right.
22            MR. CULPEPPER:  Your Honor is not ruling that
23   plaintiffs have waived the attorney/client privilege, right?
24            THE COURT:  Not yet, no.
25            MR. CULPEPPER:  I understand.  And that plaintiffs
```

1  would not waive that privilege by disclosing the information
2  consistent with your instructions?
3          THE COURT:  That's right.  I would not constitute
4  that as a waiver.  I think the case law is also -- it also
5  doesn't interpret the fact that Rule 612 is compelling the
6  disclosure of the writings to be an overall waiver of
7  attorney/client privilege as to the subject matter.  I think
8  that's pretty clear from the case law as well.
9          So it is a limited disclosure.  It is disclosure
10 of this memo.  And the reason that you would be leaving
11 things unredacted isn't because you are waiving the overall
12 privilege of the memo, but because you are attempting to
13 follow my order that writings used to refresh the witness's
14 recollection need to be produced pursuant to Federal Rule of
15 Evidence 612.
16         And so you are not waiving -- it's not a bigger
17 waiver than what's -- than the lack of redaction as to those
18 particular sentences, if that's clear enough.
19         MR. CULPEPPER:  That's clear, Your Honor.  And one
20 question, you know, this -- it's not just to you, to Ms.
21 Kennedy.  Ms. -- defendant requested this be turned over by
22 April 29th, 2025.  I believe that initial request was before
23 the deadline for plaintiffs to file their -- their brief was
24 extended.
25         Ms. Kennedy, you can correct me if I'm wrong.  I

1    bring that up because, in view of that fact, I would request
2    that this April 29th deadline be extended a little bit, at
3    least a few days after that, because the -- right now,
4    plaintiffs' summary judgment brief is due April 29.
5             THE COURT:  I don't understand what those things
6    have to do with each other, Mr. Culpepper.
7             MR. CULPEPPER:  Mrs. Kennedy, I believe -- and she
8    can correct me if I'm wrong.  Originally, they wanted a
9    deadline of April 29th, which would have been after
10   plaintiffs' summary judgment brief was due.
11            Now, in the interim between that time, the
12   deadline for plaintiffs to file their brief was extended.
13   So they -- I don't think there's any harm in making a
14   deadline for this redacted document to be produced a little
15   after April 29th so that plaintiffs could continue to focus
16   on their summary judgment brief that's due April 29th.
17            THE COURT:  Okay.  I think I got it now.
18            MR. CULPEPPER:  So I'm just asking for a few more
19   days.
20            THE COURT:  Ms. Kennedy, do you know which
21   deadline we're referring to here?
22            MS. KENNEDY:  Yeah.  So we made the request after
23   his -- after plaintiffs' deadlines were already extended.
24   And so given that we've already had to file our motion for
25   summary judgment without this information, we were trying to

1  minimize the prejudice by receiving the document on the same
2  day that the response is due so we have enough time to
3  respond to whatever we learn in that document.
4          THE COURT:  Is that date April 29th?
5          MS. KENNEDY:  Yes.
6          THE COURT:  So Mr. Culpepper, I think -- I'm
7  looking back at the docket.  So back in February, I had set
8  a date of March 21st for dispositive motions and then April
9  18th for responses.  So that date passed.  And then until
10 May 9th to follow a final reply.  Then I asked for a
11 separate filing for this -- I think the four-part
12 cross-motions briefing that we had talked about.
13         And then I granted a motion at -- I think there
14 was a motion for a briefing schedule, wasn't there.
15         MS. KENNEDY:  There was, Your Honor.  That was
16 recent -- or plaintiffs recently filed a motion to amend
17 that scheduling order, which Judge Domenico granted.
18         THE COURT:  Judge Domenico did it.  Okay.
19         MS. KENNEDY:  I think it was April 14th, or some
20 sometime around there, that he granted that motion.
21         THE COURT:  Oh, I see it.  Okay.  So it says:  The
22 plaintiffs may file a combined response to the motion for
23 parcel partial summary judgment and cross-motion for summary
24 judgment on or before April 29th.
25         So I think that's the date to which your deadline

1  was extended.  So that's the date that it looks like Ms.
2  Kennedy is looking for, Mr. Culpepper.
3           I'm inclined to stick with April 29th, given that
4  that's the date there.
5           I don't know how long this memo is.  I don't know
6  how long it'll take to redact it, but, you know, if it
7  doesn't -- depending on how long it is, then it shouldn't
8  take you too much away from your motion for summary
9  judgment.
10          MR. CULPEPPER:  Okay, I understand, Your Honor.
11          THE COURT:  Okay.  Any further record to make, Mr.
12 Culpepper?
13          MR. CULPEPPER:  I have nothing further, Your
14 Honor.
15          THE COURT:  Okay.  Ms. Kennedy, any further record
16 to make?
17          MS. KENNEDY:  No, Your Honor.
18          THE COURT:  Any other business that you think we
19 need to take care of today?
20          MS. KENNEDY:  I don't think so.
21          THE COURT:  Mr. Culpepper, any further business we
22 need to take care of today?
23          MR. CULPEPPER:  I don't believe so, either, Your
24 Honor.
25          THE COURT:  Okay.  Then we'll be in recess on this

```
 1   case.

 2              (WHEREUPON, the hearing concluded at 2:31 p.m.)

 3

 4

 5                    TRANSCRIBER'S CERTIFICATE

 6              I certify that the foregoing is a correct

 7   transcript, to the best of my knowledge and belief (pursuant

 8   to the quality of the recording) from the record of

 9   proceedings in the above-entitled matter.

10

11   /s/Dyann Labo                      April 30, 2025

12   Signature of Transcriber               Date

13

14

15

16

17

18

19

20

21

22

23

24

25
```