IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01901-DDD-CYC

AFTER II MOVIE, LLC,
BADHOUSE STUDIOS, LLC,
BODYGUARD PRODUCTIONS, INC.,
DALLAS BUYERS CLUB, LLC,
LF2 PRODUCTIONS, INC.,
LHF PRODUCTIONS, INC.,
MILLENNIUM FUNDING, INC.,
MILLENNIUM IP, INC.
MILLENNIUM MEDIA, INC.,
MON, LLC,
NIKOLA PRODUCTIONS, INC.,
OUTPOST PRODUCTIONS, INC.,
PARADOX STUDIOS, LLC,
RAMBO V PRODUCTIONS, INC.,
VENICE PI, LLC.,
VOLTAGE HOLDINGS, LLC.,
WONDER ONE, LLC,
HITMAN TWO PRODUCTIONS, INC.,
CINELOU FILMS, LLC,
CHASE FILM NEVADA, LLC,
JOLT PRODUCTIONS, INC.,
AFTER PRODUCTIONS, LLC,
AFTER WE FELL PRODUCTIONS, LTD,
TIL PRODUCTIONS, INC.,
THE GUARD PRODUCTIONS, LTD,
AFTER EVER HAPPY PRODUCTIONS, LTD, and
GEORGE L. MILLER, Chapter 7 Trustee of Screen Media Ventures, LLC,

      Plaintiffs,

v.

WIDEOPENWEST FINANCE, LLC,

      Defendant.

---

**ORDER**

---

**Cyrus Y. Chung, United States Magistrate Judge.**

The plaintiffs, owners of copyrights for various movies, move for discovery sanctions against defendant Wideopenwest Finance, LLC ("WOW"), an internet service provider. ECF No. 266. There are three rationales advanced for the motion, but all are insufficient. One relies upon a unilateral understanding of an order that the order's language does not compel. Another is simply tardy, and the third seeks spoliation sanctions for documents that may not have existed at the time this lawsuit was filed. The motion, ECF No. 266, which has a public entry at ECF No. 267, is therefore **DENIED**.

## BACKGROUND

On July 13, 2021, a group of plaintiffs, most of which are part of the current set of plaintiffs, commenced this action against the defendant, alleging that despite the defendant receiving notice that many of its subscribers were illegally sending and receiving the plaintiffs' copyrighted works, the defendant turned a blind eye to this practice. ECF No. 1 ¶ 46. In the currently-operative Second Amended Complaint, the above-captioned plaintiffs (with a Chapter 7 Trustee later substituting for a bankrupt plaintiff, ECF No. 253) assert claims for contributory and vicarious copyright infringement, in violation of 17 U.S.C. §§ 106 and 501, as well as secondary liability for violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1202. ECF No. 204 ¶¶ 201–233.

After a stay in the case, in April 2023, then-Chief Magistrate Judge Michael E. Hegarty entered a scheduling order commencing an initial period of "expedited discovery" regarding the defendant's DMCA safe-harbor defense. ECF No. 142 at 8. That defense "provide[s] protection from liability for: (1) transitory digital network communications; (2) system caching; (3)

information residing on systems or networks at the direction of users; and (4) information location tools." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007). But

> [t]o be eligible for any of the four safe harbors at [17 U.S.C.] §§ 512(a)–(d), a service provider must first meet the threshold conditions set out in § 512(i), including the requirement that the service provider:
>
>> [H]as adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides for the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

*Id.* (quoting 17 U.S.C. § 512(i)(1)(A)).

The parties had several discovery disputes delaying the once-expedited timeline for discovery. *See* ECF Nos. 154, 158, 160, 183, 185, 190, 193, 195, 201, 220. During a June 28, 2023 hearing, Judge Hegarty granted the plaintiffs permission to file a motion to compel regarding select discovery issues. ECF No. 169 at 14; *see* D.C.COLO.MJ VI (requiring magistrate judge permission to file discovery motions). The plaintiffs did so on July 11, 2023, ECF No. 162-1, resulting in a ruling some four months later, in which Judge Hegarty ruled:

> Plaintiffs request Defendant's Digital Millennium Copyright Act ("DMCA") database. ECF 162-1 at 4–5. Defendant states that it has produced "WOW's DMCA database records." ECF 177 at 21. This is either moot or, if Defendant's statement is factually incorrect, the Court directs it to produce this database.

ECF No. 186 at 1 (the "Database Order"). Judge Hegarty also ruled that "Defendant should . . . disclose the revenue for all 367" subscribers alleged to be pirating the plaintiffs' property "including the pre-2018 subscribers." *Id.* at 4 (the "Revenue Order").

Discovery closed on May 21, 2024. ECF No. 193. A stay due to one plaintiff's bankruptcy entered from July 19 to December 20, 2024. ECF Nos. 236, 251. After Judge Hegarty's retirement, the undersigned became the assigned magistrate judge. ECF No. 252. This motion followed, and the district judge referred it to the undersigned. ECF No. 269.

3

## ANALYSIS

The plaintiffs advance three arguments for discovery sanctions.

**I.      Compliance with the Database Order**

The plaintiffs first contend that the defendant violated the Database Order. ECF No. 266 at 12–15. The Federal Rules of Civil Procedure provide that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). "Of course, by its own terms, Rule 37(b)(2) requires that a party actually failed to obey a discovery order to trigger the court's discretion to sanction." *Elkharwily v. Mayo Holding Co.*, No. CV 12-3062 (DSD/JJK), 2014 WL 12597508, at *2 (D. Minn. Dec. 17, 2014). And "[s]anctions . . . for violation of an order are only appropriate if the order stated in specific and clear terms what acts were required or prohibited." *Consumer Fin. Prot. Bureau v. Brown*, 69 F.4th 1321, 1330 (11th Cir. 2023) (internal quotation marks omitted).

The Database Order is not such an order. The plaintiffs assume that Judge Hegarty, in ordering the production of the "database," ECF No. 186 at 1, unambiguously ordered "database scripts" and all electronic tables associated with the database. ECF No. 266 at 13. The defendant's production of spreadsheets of customer data from that system, they say, fell short. ECF No. 266 at 12–14.

But Judge Hegarty, it appears, did not share the plaintiffs' understanding. He "assumed there is this thing called a DMCA database" when he issued the Database Order, which "might have been out of ignorance." ECF No. 230 at 44. When inquiring about compliance with the Database Order, he asked about "data up to 2021," *id.* at 46, as opposed to an entire system that needed to be "put . . . together" by "an IT guy." *Id.* at 48. That focus on information, rather than a whole system, was understandable, given that "database" is often understood as "[a] compilation of information arranged in a systematic way and offering a means of finding specific

4

elements it contains, often today by electronic means," as opposed to the computer scripts that animate the database. Database, Black's Law Dictionary (12th ed. 2024).

Nor did the plaintiffs' pleadings illuminate for Judge Hegarty the difference between their concept of "DMCA database" and what the defendant produced. They never defined in their motion to compel, for example, the "basic information" constituting the "DMCA database" or how it was more than spreadsheets, ECF No. 162-1 at 4; that lack of precision is reflected in Judge Hegarty's ambivalence about whether the producing "database records" rendered the issue of producing the database "moot." ECF No. 186 at 1. Indeed, the words "database script," of which the plaintiffs now complain, appear nowhere in the transcript of the hearing preceding the plaintiffs' motion to compel, *see* ECF No. 169, the motion to compel itself, ECF No. 162-1, Judge Hegarty's Order granting the motion in part, ECF No. 186, or in the transcript of the May 30, 2024 hearing further addressing compliance with the Database Order, ECF No. 230.

In their reply, the plaintiffs shift tactics, contending that the defendant's delay in producing the spreadsheets alone justifies sanctions. ECF No. 289 at 8–9. But arguments raised for the first time in a reply are waived. *RDA Hotel Mgmt. Co. v. Hudson Specialty Ins. Co.*, No. 1:19-CV-02145-DDD-NYW, 2021 WL 12298481, at *3 (D. Colo. Apr. 15, 2021). Moreover, the case the plaintiffs cite to indicate that this delay is worthy of sanctions relies on Rule 37(c)(1), which makes evidence exclusion mandatory "unless the failure was substantially justified or is harmless," not Rule 37(b)(2). ECF No. 289 at 9; *see Voyager Indem. Ins. Co. v. Zalman N., Inc.*, 668 F. Supp. 3d 990, 998 (C.D. Cal. 2023) ("Voyager . . . seeks to have the evidence . . . excluded from consideration under Rule 37(c)(1)'s sanction for the failure to disclose required information.").

5

In sum, while the plaintiffs may have subjectively believed that the Database Order compelled production of scripts and tables beyond what the defendant produced, the record does not demonstrate that Judge Hegarty actually intended to compel such production. Under such circumstances, imposing sanctions on the defendant for a failure to comply with a standard that the Court itself did not know existed would be improper.

## II.      Compliance with the Revenue Order

The plaintiffs' second argument complains that the defendant violated the Revenue Order by failing to disclose revenue it received from subscribers associated with certain IP addresses. Although the defendant asserted that it did not know the identity of the subscribers for those IP addresses, the plaintiffs say that emails and lease logs procured during discovery indicate that those subscribers are known. ECF No. 266 at 16.

Even if true, this plaint comes too late. "Although Rule 37(b)(2) does not establish any time limits within which a motion for sanctions must be filed," *Brandt v. Vulcan, Inc.*, 30 F.3d 752, 756 (7th Cir. 1994), "a Rule 37 motion for sanctions should be filed without unreasonable delay." *Lancaster v. Indep. Sch. Dist. No. 5*, 149 F.3d 1228, 1237 (10th Cir. 1998). Here, the defendant produced the lease logs that are the basis for the plaintiffs' assertion in July 2023. ECF No. 266-1 ¶ 24. The Revenue Order came in November 2023. ECF No. 186 at 4. No event in the fifteen months between that order and the plaintiffs' motion appears to bear on this issue — indeed, while two discovery hearings in May 2024 and February 2025 specifically addressed subscriber revenue information, *see* ECF No. 230 at 50–56; ECF No. 298 at 13–37, the plaintiffs never referenced these IP addresses during those hearings. To the contrary, when the undersigned indicated that it appeared that revenue information was complete for all of the defendant's customers, save the one who was contested in the February 2025 hearing, the

6

plaintiffs agreed. ECF No. 298 at 34. For aught that appears, then, the plaintiffs simply sat on this issue for fifteen months, only to raise it for the first time nine months after the close of discovery. Given that a sanctions "request . . . more than six months after the alleged infraction" is "an unreasonable delay," *Williams v. U-Haul Co. of Colo.*, 71 F. App'x 786, 788 n.3 (10th Cir. 2003), it is difficult to see how the delay in this case does not also qualify as unreasonable.

Entertaining the request for sanctions at this point also prejudices the defendant. Discovery has long since closed and, had the plaintiffs brought this issue to the fore prior to their current motion for sanctions, the defendant could have resolved it by disclosing any relevant revenue information it had. Indeed, that is precisely what the defendant did regarding other customers who were the subject of discovery disputes about the Revenue Order. *See* ECF No. 298 at 35–36 (noting that the defendant "produced revenue for two of the bulk subscribers" when plaintiffs raised issue). This belated attempt to sanction the defendant robs them of that pathway.

The short of it is that the plaintiffs' contentions regarding the defendant's alleged failure to abide by the Revenue Order by failing to produce revenue with respect to the subscribers for three IP addresses should have been raised earlier. At this point, well past the end of the discovery period and over a year after any facts relating to the argument were disclosed, the delay in bringing the sanctions motion is unreasonable.

### III.     Spoliation

The plaintiffs' final argument posits that the defendant failed to preserve subscriber information for certain IP addresses associated with a third party, Momentum Telecom. ECF No. 266 at 17–22. The Federal Rules of Civil Procedure provide that "[i]f electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced

7

through additional discovery, the court" either "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or" may order more extreme sanctions "only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation." Fed. R. Civ. P. 37(e)(1)–(2). "[T]he moving party[] has the burden of proving, by a preponderance of the evidence, [that] Defendants failed to preserve evidence or destroyed it." *Pittman v. King*, No. 20-cv-03371-PAB-NRN, 2024 WL 4866548, at *2 (D. Colo. Nov. 22, 2024) (citing *Zbylski v. Douglas Cnty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015)). The plaintiffs fail to carry their burden here.

To start, the plaintiffs "must show that . . . the 'alleged spoliator . . . had a duty to preserve material evidence.'" *Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 105 (E.D. Va. 2018) (quoting *Turner v. United States*, 736 F.3d 274, 282 (4th Cir. 2013)). "This inquiry has two components: (1) whether [the alleged spoliator] should have reasonably anticipated litigation related to [the case]; and (2) whether he should reasonably have known that the evidence he deleted might be relevant to such litigation." *Id.* The plaintiffs certainly satisfy the first component. They point, for example, to a March 15, 2021 cease-and-desist letter they sent to the defendant, the defendant's April 12, 2021 response to that letter invoking the DMCA's safe-harbor defense, and service of the complaint in this case on July 15, 2021. ECF No. 266 at 18. And "in the copyright context, a cease-and-desist letter triggers a duty to preserve, especially when the content of that cease-and-desist clearly indicated that litigation was on the table." *In re Frontier Commc'ns Corp.*, 666 B.R. 260, 285 (Bankr. S.D.N.Y. 2025).

But it is doubtful that they satisfy the second component. "What is not clear at present is whether [the defendant] should have anticipated preserving" large swathes of IP-address information "*specifically*" simply because copyright litigation was on the table. *Id.* at 286.

8

Indeed, in an opinion published just three weeks before this motion in a case involving the same plaintiffs' counsel also alleging secondary and vicarious copyright-infringement claims against a DMCA safe-harbor defense, a court denied a similar Rule 37(e) sanctions motion based on a failure to preserve information associating IP addresses with customers, finding that "[t]here [was] no evidence in the record before the Court . . . that adequately show[ed] that [the defendant] knew or should have known *in 2020* to preserve these sources of information." *Id.* This was despite a cease-and-desist letter that "contain[ed] an 'unmistakable threat of litigation,'" and emails between plaintiffs' counsel and the defendant in that case "about discovery that would need to be taken . . . including discovery specifically concerning a litany of IP addresses" all taking place in 2020. *Id.*

Instead, the court found such evidence once litigation-related documents specifically "cover[ed] IP address assignment history." *Id.* Here, the cease-and-desist letter "identified four specific exemplary [IP] addresses of Defendant that each were the subject of over 95 DMCA notices," ECF No. 266-1 ¶ 6, and the complaint listed roughly a dozen more, *see* ECF No. 1, but none of these were the IP addresses at issue in this motion. Indeed, the first alert that widespread IP-address information could be relevant to this litigation came on November 8, 2021, when the plaintiffs sent a data preservation letter indicating that subscriber data needed to be preserved. ECF No. 266-1 ¶ 10. By that time, the defendant's contractual relationship with Momentum Telecom had ended, ECF No. 266-3 at 18, and the plaintiff adduces no evidence indicating that it still had control over data stored by Momentum Telecom at that date. To be sure, a party need not specifically enumerate each IP address to give rise to a duty to preserve data associated with the IP address, but the plaintiffs do not indicate what should have tipped off the defendant to the need for widespread preservation of IP-address subscriber data prior to 2021 — and it is their

9

burden to do so to seek sanctions. Judge Hegarty ultimately did find that the data was relevant "even if only slightly," ECF No. 56 at 3, but is far from clear sanctioning the defendant based on such a thin reed would be appropriate. *Cf. Coastal Bridge Co. v. Heatec, Inc.*, 833 F. App'x 565, 575 (5th Cir. 2020) (finding abuse of discretion for sanctions for spoliation of evidence "of questionable relevance").

More fundamentally, Rule 37(e) "does not apply when information is lost before a duty to preserve arises." Fed. R. Civ. P. 37(e) advisory committee's note to 2015 amendment. Thus, a moving party must "show by a preponderance of evidence that there were documents to produce" to succeed on a Rule 37(e) motion. *Strand v. USANA Health Scis., Inc.*, No. 2:17-cv-00925-HCN-JCB, 2020 WL 13889837, at *3 (D. Utah June 26, 2020), *report and recommendation adopted* (Sept. 10, 2020). Here, the plaintiff submitted no evidence indicating that any of the subscriber information existed in 2021 when this case was filed. To the contrary, the IP addresses in question were all more than a year old by the time the plaintiffs filed their complaint, ECF No. 278 at 13; *see* ECF No. 278-1 ¶ 8, and the defendant has submitted evidence indicating that Momentum's record-retention period is 366 days. ECF No. 278-7 at 2. The plaintiffs protest that the defendant did not include this information in an interrogatory response, ECF No. 289 at 5, but the interrogatory did not ask about Momentum's record-retention policies. *See* ECF No. 266-3 at 16. They also point to a single email from March 18, 2022 where a Momentum record from 2019 was retrieved to say that the retention period does not exist. ECF No. 289 at 5; *see* ECF No. 289-3. But there could be a myriad of reasons why that particular record was retrievable while others were not, none of which the plaintiffs explain or explore and, again, it is the plaintiffs' burden to prove that the information was actually lost. Here, where the most direct evidence indicates that the supposedly spoliated information did not exist at the time

10

this lawsuit commenced, the Court cannot sanction the defendant for a failure to make the information come back into existence.

## CONCLUSION

For the foregoing reasons, the plaintiffs' Motion for Sanctions Under Rule 37, ECF No. 266, which has a public entry at ECF No. 267, is **DENIED**. The parties shall bear their own fees and costs.

Dated this 9th day of September, 2025 at Denver, Colorado.

BY THE COURT:

_____
Cyrus Y. Chung
United States Magistrate Judge